# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

Case No. 6:17-cv-218-ORL-28-TBS

| | |
|---|---|
| FLORIDA ABOLITIONIST and JANE DOE,<br><br>Plaintiffs,<br><br>-against-<br><br>BACKPAGE.COM, LLC, EVILEMPIRE.COM, BIGCITY.COM, CARL FERRER, MICHAEL LACEY, and JAMES LARKIN,<br><br>Defendants. | Local R. 3.01(h) – Dispositive Motion |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

   I.    THE COMPLAINT LACKS FACTUAL ALLEGATIONS FOR ITS CLAIMS ...... 2

   II.   SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS ........................................ 4

      A.  Plaintiffs Fundamentally Misunderstand the CDA and Section 230. ........................ 4

      B.  None of Plaintiffs' Factual Allegations, Even if Taken as True, Affect
          Immunity Under Section 230(c)(1). .............................................................................. 6

      C.  Plaintiffs Cannot Plausibly Recast Defendants' Editorial Practices as
          Content Creation. ........................................................................................................ 8

   III.  PLAINTIFF DOE CANNOT RELY ON THE *PSI REPORT* TO SALVAGE
        HER UNTIMELY DEFAMATION CLAIM. ........................................................ 12

CONCLUSION ...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ............................................................................3, 10

*Baker v. Firestone Tire & Rubber Co.*,
    793 F.2d 1196 (11th Cir. 1986) ....................................................................................4

*Bright v. Firestone Tire & Rubber Co.*,
    756 F.2d 19 (6th Cir. 1984) ..........................................................................................4

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
    519 F.3d 666 (7th Cir. 2008) ........................................................................................6

*Cone Corp. v. Fla. Dep't of Transp.*,
    921 F.2d 1190 (11th Cir. 1991) ....................................................................................3

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ......................................................................................................2

*Davis v. FEC*,
    554 U.S. 724 (2008) ......................................................................................................2

*Doe ex rel. Doe v. Backpage.com, LLC*,
    104 F. Supp. 3d 149 (D. Mass. 2015) ........................................................................11

*Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) ...........................................................................5, 10, 11

*Dowbenko v. Google, Inc.*,
    582 F. App'x 801 (11th Cir. 2014) ..............................................................................8

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .................................................................................7, 9

*e-Ventures Worldwide, LLC v. Google, Inc.*,
    No. 14-cv-00646, ECF No. 153 (M.D. Fla. Feb. 8, 2017) .........................................6

*FTC v. Accusearch, Inc.*,
    570 F.3d 1187 (10th Cir. 2009) ....................................................................................9

*FTC v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016) ......................................................................................... 9, 10

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) ........................................................................................ 9, 10

*J.S. v. Vill. Voice Media Holdings, LLC*,
    No. 12-2-11362-4 (Pierce Cty. Wash. Super. Ct. May 26, 2017) ...................................... 11

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ......................................................................................... 7, 9

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ............................................................................................ 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................ 2

*M.A. v. Village Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011) ............................................................................ 8, 9

*Moving & Storage, Inc. v. Panayotov*,
    2014 WL 949830 (D. Mass. Mar. 12, 2014) ....................................................................... 6

*Murphy v. Cadillac Rubber & Plastics, Inc.*,
    946 F. Supp. 1108 (W.D.N.Y. 1996) ................................................................................... 3

*National Numismatic Certification, LLC v. eBay, Inc.*,
    2008 WL 2704404 (M.D. Fla. July 8, 2008) ....................................................................... 6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ............................................................................................... 7

*Nicklaw v. CitiMortgage, Inc.*,
    839 F.3d 998 (11th Cir. 2016) ............................................................................................ 2

*Pearce v. E.F. Hutton Grp., Inc.*,
    653 F. Supp. 810 (D.D.C. 1987) ......................................................................................... 4

*Perkins v. Silverstein*,
    939 F.2d 463 (7th Cir. 1991) .............................................................................................. 3

*PSI v. Ferrer*,
    199 F. Supp. 3d 125 (D.D.C. 2016) ..................................................................................... 4

*Reno v. ACLU*,
    521 U.S. 844 (1997) ............................................................................................... 5, 8

*Roca Labs, Inc. v. Consumer Opinion Corp.*,
    140 F. Supp. 3d 1311 (M.D. Fla. 2015) ................................................................. 8, 9

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989) ..................................................................................... 3

*Sell v. Zions First Nation Bank*,
    2006 WL 322469 (D. Ariz. Feb. 9, 2006) ................................................................ 3

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*,
    2010 WL 1799456 (D.N.J. May 4, 2010) ................................................................ 6

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ............................................................................ 7, 8, 12

*Whitney Info. Net., Inc. v. Xcentric Ventures, LLC*,
    2008 WL 450095 (M.D. Fla. Feb. 15, 2008) ...................................................... 7, 8, 9

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .................................................................................... 3

**State Cases**

*Wagner, Nugent v. Flanagan*,
    629 So. 2d 113 (Fla. 1993) ..................................................................................... 12

**Federal Statutes**

47 U.S.C. § 230 .................................................................................................... *passim*

**State Statutes**

Florida Statutes § 770.07 ............................................................................................ 12

**Rules**

Federal Rules of Civil Procedure
    10(c) ..................................................................................................................... 3, 4
    12(b)(1) ..................................................................................................................... 3
    12(b)(6) ................................................................................................................ 3, 4

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................................... 6

**Other Authorities**

Claire McCaskill, Minority Ranking Member PSI, *Our fight against sex trafficking website Backpage*, K.C. STAR, Feb. 14, 2017, http://www.kansascity.com/opinion/readers-opinion/guest-commentary/article132727529.html ..................................................................................... 4

Internet Freedom and Family Empowerment Act, H.R. 1978, 104th Cong. (1995) .............................................................................................................. 5

Robert Corn-Revere, *New Age Comstockery,* 4 COMMLAW CONSPECTUS 173 (1996) ................................................................................ 5

## INTRODUCTION

The most notable thing about the Opposition to Defendants' Motion to Dismiss is what isn't there. There still is no factual allegation that Defendants were involved in any way with—or even knew of—the single advertisement by which Plaintiff Jane Doe claims to have been victimized. *See* Mot. to Dismiss ("Mot.") 2-3, 7-8. Doe is not even mentioned until page 15 of the Opposition's narrative, and then only in conclusory allegations that Defendants "knowingly participated in and benefitted financially from" her exploitation. Opp. to Mot. to Dismiss ("Opp.") 15. Evidently aware that such bare allegations fall far short of federal pleading requirements, Plaintiffs' rest their entire case on a staff report of the Senate Permanent Subcommittee on Investigations ("*PSI Report*"), which purports to find Backpage.com knowingly facilitated prostitution by having an Escorts section on its online advertising platform. *Id*. 1-4, 7, 20.

But there are several major problems with this diversionary tactic. Most notably, after a 20-month investigation and "review of over one billion pages of documents," Compl. ¶ 8, Plaintiffs cannot point to a single example to suggest Backpage.com (or any Defendant) created in whole or in part *any* advertisement, much less the one that allegedly featured Doe. Instead, Plaintiffs merely recapitulate the same allegations that courts across the country have rejected as a basis for website liability under Section 230 immunity: that the general design and purpose of the website facilitates criminal activity, that Backpage.com is on notice of or profits from illegal activity, and that editorial policies that block third parties from posting certain material are somehow acts of "content creation." Dismissal is equally required here.

## ARGUMENT

I.     THE COMPLAINT LACKS FACTUAL ALLEGATIONS FOR ITS CLAIMS

Plaintiffs acknowledge—as they must—that "[a]t this stage of the litigation, the factual allegations … in the Complaint must govern the legal sufficiency of [the] claims." Opp. 3.  But as Defendants explained (Mot. 7-8, 16-21), beyond conclusory allegations that "Backpage takes an active role in creating the content of" ads it hosts, *e.g.*, Compl. ¶ 48, Plaintiffs do not allege any Defendant created or developed the content of the single ad that allegedly resulted in Doe's victimization.  Plaintiffs vaguely allege Backpage "creates" and "develops" content of certain "Sponsored Ads," *id.* ¶ 37, but do not claim the ad involving Doe was a Sponsored Ad, or that Backpage.com edited the ad involving Doe in any manner, nor do they attempt to connect any of the other harms alleged to any ads supposedly created by Backpage.com.  The Opposition does not meaningfully address this.

This is fatal to Plaintiffs' claims, because Article III standing requires "causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] independent action of some third party not before the court.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted); *see also Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) ("causation" is an element of the "'irreducible constitutional minimum of standing'") (citation omitted).  Furthermore, Plaintiffs must establish they have standing to raise *each claim* they assert.  *Davis v. FEC*, 554 U.S. 724, 734 (2008) ("'[S]tanding is not dispensed in gross.'") (citation omitted); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  Plaintiffs' claims thus falter at the outset for lack of standing and must be dismissed

for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  *See, e.g.*, *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991).

Plaintiffs' claims also fail under Fed. R. Civ. P. 12(b)(6), because Section 230 provides immunity against "'any cause of action that would make service providers liable for information originating with a third-party user.'"  *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).  *See* Mot. 9-23.  Plaintiffs seeking to overcome Section 230 immunity must show not that defendant was responsible for creating and developing *some* content, but for creating or developing the *specific illegal* content at issue.  Mot. 20-21.  *See infra* § II.C.  And they must plead "nonconclusory factual content" plausibly suggestive of a claim entitling them to relief.  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1267 (9th Cir. 2016).  Here, however, the Complaint contains no such allegation about the Doe ad—or any other advertisement on Backpage.com.  Instead it tries to rely on general allegations about the website and its editorial policies.

Plaintiffs' attachment of the *PSI Report* to their Opposition to support these general allegations cannot cure the Complaint's deficiencies, for several reasons.  First, a committee report is not the type of "written instrument" that may be incorporated into a pleading, because it is not "a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement."[1]  Second, such congressional reports are commonly excluded from consideration, as

---

[1] *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996). *See Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3d Cir. 1989); *Sell v. Zions First Nation Bank*, 2006 WL 322469, at *5 (D. Ariz. Feb. 9, 2006) (report by court-appointed receiver containing information that "expanded" on pleadings is "not a 'written instrument' within the meaning of Rule 10(c)"); *Perkins v. Silverstein*, 939 F.2d 463, 467 n.2 (7th Cir. 1991) (articles and

3

they represent "heated conclusions of a politically motivated hearing." *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986).[2]  In such cases, courts generally do not consider whether such a congressional document can be incorporated into pleadings—they examine whether it should be admitted into evidence *at all*.[3]  But the most important problem of attempting to leverage the *PSI Report* is this:  It says *nothing* about allegations involving Plaintiff Doe, and its general "findings" about Backpage.com all involve practices that various courts have found immunized under Sections 230.  Whether those cases predate the *PSI Report* means nothing, because the truth of the allegations in those cases has always been assumed for purposes of Rule 12(b)(6) motions.

## II.  SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS

### A.  Plaintiffs Fundamentally Misunderstand the CDA and Section 230.

Plaintiffs' argument that Section 230 cannot reasonably be interpreted to provide immunity because the Communications Decency Act was adopted to "clean up the Internet"

---

commentary "are not the type of documentary evidence or 'written instrument[s]' which Fed. R. Civ. P. 10(c) intended to be incorporated into, and made a part of, the complaint").

[2] In this case, the subcommittee expressly rejected Backpage.com's offer of millions of pages of documents evidencing its cooperation with law enforcement. *PSI v. Ferrer*, 199 F. Supp. 3d 125, 131-32 (D.D.C. 2016), *vacated as moot*, 856 F.3d 1080 (D.C. Cir. 2017). The resulting report created a false but preordained narrative.  *See* Claire McCaskill, Minority Ranking Member PSI, *Our fight against sex trafficking website Backpage*, K.C. STAR, Feb. 14, 2017, http://www.kansascity.com/opinion/readers-opinion/guest-commentary/article132727529.html (expressing "hopeful[ness] that the results of our investigation will give future cases against Backpage [] legal ammunition").

[3] *E.g.*, *Pearce v. E.F. Hutton Grp., Inc.*, 653 F. Supp. 810, 813-16 (D.D.C. 1987) ("Given the obviously political nature …, it is questionable whether any report by a committee or subcommittee of [Congress] could be admitted under rule 803(8)(C) against a private party."); *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22-23 (6th Cir. 1984) (*per curiam*) (excluding House subcommittee report as inadmissible).

reveals a fundamental misunderstanding of the law. Opp. 13-14 & n.8. They cite Senator James Exon, author of the bill to prohibit "indecent" speech on the Internet, without further explaining that the provisions *he* proposed were unambiguously invalidated by the Supreme Court in *Reno v. ACLU*, 521 U.S. 844, 882 (1997) ("The CDA, casting a far darker shadow over free speech, threatens to torch a large segment of the Internet community."). The provision that became Section 230 was added to the legislation in the House *after* Senator Exon's initial proposal, with a very different purpose: to promote free expression online, to free intermediaries from the threat of liability for hosting third-party speech, and to encourage websites to make editorial judgments without risking liability.[4]

Plaintiffs' flawed understanding of the CDA explains their other erroneous assumptions, including the claim that "any entitlement to immunity for [Defendants'] conduct *must* rely on Section 230(c)(2)" and its "good faith" requirement. Opp. 11 (emphasis in original). Contrary to this claim, Sections 230(c)(1) and 230(c)(2) perform very different functions. Section 230(c)(1), which applies in this case, bars imposing liability on service providers for alleged harm arising from content posted by a third party, as Plaintiffs claim here. Section 230(c)(2) shields service providers from liability to third parties whose content the provider blocks or removes. Section 230(c)(2) simply has no application here, as the First Circuit held in *Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 22-23 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017) (Section 230(c)(2) protections are independent of 230(c)(1), and plaintiff's attempt to focus on Section 230(c)(2) is an "end run").

---

[4] Internet Freedom and Family Empowerment Act, H.R. 1978, 104th Cong. (1995). *See also* Robert Corn-Revere, *New Age Comstockery*, 4 CommLaw Conspectus 173-74, 186-87 (1996) (tracing CDA's legislative history and predicting invalidation of Exon provisions).

The two provisions' separate purposes are clear even in cases Plaintiffs cite. Opp. 10-12. In *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), for example, the court described Section 230(c)(1)'s immunity as "general," while (c)(2) ensures a service provider who filters out offensive material "'is not liable *to the censored customer*.'" *Id.* at 670-71 (emphasis added) (citation omitted). Likewise, the plaintiff in *e-ventures Worldwide, LLC v. Google, Inc.*, No. 14-cv-00646, ECF No. 153, at 6 (M.D. Fla. Feb. 8, 2017), sought to hold Google liable "for removing e-ventures' own content," which the provider said violated its content guidelines. The court explained the difference between (c)(1) and (c)(2) immunity, describing the latter provision with its good faith requirement as "more specific."[5] And in part of the decision Plaintiffs ignore, the court dismissed all claims, holding that "whether certain websites are contrary to Google's [] guidelines and thereby subject to removal" are editorial choices protected by the First Amendment "whether they are fair or unfair, or motivated by profit or altruism." *Id.* at 9.

### B. None of Plaintiffs' Factual Allegations, Even if Taken as True, Affect Immunity Under Section 230(c)(1).

Plaintiffs list seven factual allegations as support for the argument that Defendants "create develop, and edit content, and modify content provided by others for unlawful purposes." Opp. 3-4. Shorn of repetition, however, they boil down to three allegations that center on Backpage.com's general editorial practices:

---

[5] All other cases Plaintiffs cite are to the same effect. Opp. 11 & n.5. *See National Numismatic Certification, LLC v. eBay, Inc.*, 2008 WL 2704404 (M.D. Fla. July 8, 2008) (reviewing eBay's policy for listing coins sold on auction site as "certified"); *Moving & Storage, Inc. v. Panayotov*, 2014 WL 949830 (D. Mass. Mar. 12, 2014) (enforcing policies to remove online reviews); *Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, 2010 WL 1799456 (D.N.J. May 4, 2010) (spam-blocking policy).

- Defendants allegedly edited the text of advertisements, deleting material using filters and manually to conceal evidence of criminal activity;

- Defendants allegedly took material posted on Backpage.com to create both sponsored advertisements and ads on affiliate websites; and

- Defendants allegedly helped traffickers evade detection by stripping metadata from photographs and refusing to implement identity verification.

Even if accepted as true, all of these allegations seek to hold Defendants liable for content posted by third parties, and courts have repeatedly held Section 230(c)(1) bars such claims.

Courts have time and again rejected arguments that a website's overall design, functionality, and editorial practices can be a basis for liability.[6] Courts also uniformly reject arguments that a website may be liable based on allegations it "encouraged" or "promoted" illegal postings.[7] Thus, in *Whitney Info. Net., Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, at *10, *13 (M.D. Fla. Feb. 15, 2008), this Court held Section 230 foreclosed defamation claims against the operator of www.ripoffreport.com, a website devoted to exposing scams, even where evidence showed the operator itself "created categories, such as 'con artists,' 'corrupt companies' and 'false TV advertisements,' from which a poster must make a

---

[6] *E.g.*, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009) (rejecting "structure and design" argument to hold website did not require users to input illegal content as necessary condition of use); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420, 422 (1st Cir. 2007) ("decisions regarding the 'construct and operation' of [a defendant's] web sites" are immunized, including those enabling "individuals to spread misinformation more credibly").

[7] *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1174 (9th Cir. 2008) (*en banc*) ("encouragement" theories would eviscerate Section 230 because "a clever lawyer" always "could argue that *something* the website operator did encouraged the illegality."); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 414 (6th Cir. 2014) (rejecting encouragement theory, and noting "[m]any websites not only allow but also actively invite and encourage users to post particular types of content," which might be "unwelcome to others").

7

selection to categorize his or her report as part of the submission process." Moreover, the Court held "Defendants should not be treated as information content providers … based on [] content monitors having [] discretion to delete or redact reports that contain 'blatantly illegal, inappropriate, or offensive materials.'" *Id*. at *9 n.24. *See also Roca Labs, Inc. v. Consumer Opinion Corp*., 140 F. Supp. 3d 1311, 1324 (M.D. Fla. 2015) (operator of website "enjoys complete [CDA] immunity … from any action brought … as a result of the postings of third party users"); *Dowbenko v. Google, Inc*., 582 F. App'x 801, 804-05 (11th Cir. 2014).

Plaintiffs cannot avoid Section 230 by asserting Defendants knew or should have known of third parties' illegal uses Backpage.com or EvilEmprire.com. "It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech." *Lycos*, 478 F.3d at 420; *see also M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1044, 1050-54 (E.D. Mo. 2011) (Section 230 immunity applies to Backpage.com, even though plaintiff alleged Backpage "had knowledge" that postings "were ad[s] for prostitution" and "illegal sexual contact with minors."). Courts reject such theories of notice-based liability for good reason: It would subject websites to a "heckler's veto" anytime anyone objects, because it would always be safer for online providers to remove content rather than risk liability—a sure way to chill online speech, contrary to longstanding federal policy. *See Reno*, 521 U.S. at 880.

### C.     Plaintiffs Cannot Plausibly Recast Defendants' Editorial Practices as Content Creation.

Just as Plaintiffs misapprehend the purpose of Section 230, they misstate what the Act defines as an "information content provider." The issue is not, as Plaintiffs frame it, whether Defendants "created at least some of the content on their websites." Opp. 7. Rather, applica-

8

tion of Section 230 turns on who created and developed the *specific content that allegedly caused the Plaintiff's harm*. *Whitney Info.*, 2008 WL 450095, at *12 ("[T]he issue … is whether Defendants are responsible, in whole or in part, for the creation or development of the particular postings … that are the subject of this lawsuit."). *See M.A.*, 809 F. Supp. 2d at 1051-53. A website like Backpage.com may be held liable *only* to the extent that it created or developed "*specific content* that was the *source* of the alleged liability." *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1198-99 (10th Cir. 2009) (emphasis added).

Plaintiffs' attempt to cast Backpage.com as a content creator badly misrepresents the holdings in various cases, including *Roommates.com*, 521 F.3d at 1172, *Accusearch*, 570 F.3d at 1199, *Roca Labs*, 140 F. Supp. 3d at 1320, *Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016), and *FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016), which each ***support*** immunity here. The Ninth Circuit in *Roommates.com* suggested Section 230 immunity might be lost if a website "*require[s]* users to input illegal content," but held "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post [] is perforce immune[.]" 521 F.3d at 1170-71, 1175 (emphasis added). This Court in *Roca Labs* applied *Roommates.com* to find reposting or tweeting defamatory posts, editing or modifying them, adding handles or links, and optimizing search results do not "develop" content, and that immunity applies unless a website is "'responsible for what makes the displayed content allegedly unlawful.'" 140 F. Supp. 3d at 1319-22 (quoting *Jones*, 755 F.3d at 410). Cases that denied immunity involved claims that an operator hired people to create illegal content.[8]

---

[8] *Huon*, 841 F.3d at 733 ("Huon has plausibly alleged that Gawker employees created the defamatory comments[.]"); *Accusearch*, 570 F.3d 1199 ("Accusearch solicited requests for

In this case, Plaintiffs never allege (nor could they allege) that Backpage supplied any content or created any ads that harmed the Plaintiffs. To the contrary, the Complaint states that the harms Doe sustained resulted from a single ad *created by the third-party criminals* who abused and trafficked her. *See* Compl. ¶¶ 97-98 (trafficker "created an advertisement for Ms. Doe on Backpage."). Plaintiffs rest heavily on conclusory allegations that Defendants engaged in content creation—principally by "authoring" certain "Sponsored Ads." *See* Opp. 4 (citing, *inter alia*, Compl. ¶¶ 37-39). But, as Defendants have shown, these are merely allegations that Backpage engaged in "editing" under a different name. *See* Compl. ¶¶ 37-38 (allegations of "enhanc[ing]," "rewriting," "reorganizing" user-created ads); *see also* Mot. 12-19 & nn.9, 11-12 (citing cases refusing to credit conclusory allegations on motions to dismiss). These same allegations have been rejected before, most recently in *Doe No. 1*, 817 F.3d at 20. *See* Mot. 12-14 & App. A.[9]

Plaintiffs try to brush aside the courts' rejection of virtually identical theories of publisher liability in *Doe No. 1*, by pointing to the First Circuit's passing observation in a footnote that plaintiffs in that case had "forsworn" any claim that "Backpage's activities amount to creating the content of the advertisements." Opp. 1, 7 (citing *Doe No. 1*, 817 F.3d at 19 n.4) (quotation marks omitted). But that reads far too much into the footnote. The

---

such confidential information and then paid researchers to obtain it."); *LeadClick Media*, 838 F.3d at 176 ("LeadClick recruited affiliates for [LeanSpa] that used false news sites.").

[9] *Doe No. 1* also rejected plaintiffs' claims that use of photos in online ads violated copyright. 817 F.3d at 29 ("the photograph was posted by a third party who no longer has any sway over [plaintiff], and Backpage is not alleged to post material or create advertisements entirely of its own accord"). *See Almeida*, 456 F.3d at 1322-25 (dismissing Florida right of publicity claim without need to resolve application of Section 230).

district court in *Doe No. 1* had addressed the *same* Sponsored Ads that form the principal basis for Plaintiffs' allegations of content creation in this case, noting that "[t]he creation of sponsored ads with excerpts taken from the original posts reflects the illegality (or legality) of the original posts *and nothing more*." *Doe ex rel. Doe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 157 (D. Mass. 2015) (emphasis added). Moreover, the First Circuit's decision affirming the district court made clear the same sorts of allegations of editing are classic publisher functions protected by Section 230.[10]

In a last gasp, Plaintiffs suggest a state trial court's recent denial of summary judgment to Backpage in *J.S. v. Village Voice Media Holdings, LLC*, No. 12-2-11362-4 (Pierce Cty. Wash. Super. Ct. May 26, 2017), somehow presages a sea-change in the federal law of Section 230 immunity, because it is a decision adverse to Backpage post-dating the *PSI Report*. *See* Opp. 2, 7 & Exh. B. However, there is no indication in the trial court's two-page form order, *see id.*, Exh. B, that denial of summary judgment had anything to do with the *PSI Report*. In any event, the order contains no reasoning—much less any compelling reason—to question the black letter legal principles that have been routinely applied in the cases cited by Backpage. In particular, the First Circuit in *Doe No. 1*, 817 F.3d at 21 n.5,

---

[10] *Doe No. 1*, 817 F.3d at 20. Plaintiffs' efforts to distinguish *Doe No. 1* are particularly unpersuasive given Plaintiff Florida Abolitionist's prior advocacy. Indeed, when the disappointed plaintiffs in *Doe No. 1* sought Supreme Court review of the First Circuit's decision, Florida Abolitionist and other advocacy groups made abundantly clear they *disagreed with* the First Circuit's decision. *See* Br. for *Amici Curiae* Florida Abolitionist et al., in support of certiorari in *Doe No. 1*, No. 16-276 (Sup. Ct.) at 8-9 ("*Doe Amicus Br.*") (criticizing First Circuit interpretation of Section 230 as "misguided"). The Supreme Court denied review, and the First Circuit decision thus remains good law—whether Plaintiffs agree with it or not.

rejected the legal reasoning of *J.S.* as inconsistent with well-established precedent. *E.g.*, *Lycos*, 478 F.3d at 420.

### III. PLAINTIFF DOE CANNOT RELY ON THE *PSI REPORT* TO SALVAGE HER UNTIMELY DEFAMATION CLAIM.

The Plaintiffs' attempt to excuse their lengthy delay in filing a defamation claim by pointing to the *PSI Report* and claiming Backpage.com engaged in "intentional concealment," Opp. 19-20, is both disingenuous and wrong as a matter of law. Although Plaintiffs would have the Court believe they could (and would) have filed their Complaint sooner were it not for the "concealment" the *PSI Report* supposedly uncovered, this ignores that Plaintiff Florida Abolitionist had leveled the same allegation several months earlier.[11] But the point is irrelevant, as the statute of limitations for a defamation action begins to run upon publication, not discovery. *See* Fla. Stat. § 770.07; *Wagner, Nugent v. Flanagan*, 629 So. 2d 113 (Fla. 1993). Plaintiffs' request to salvage their untimely defamation claim should be rejected.[12]

### CONCLUSION

For the reasons provided above and in Defendants' Motion, this Court should dismiss the Complaint in its entirety.

---

[11] In its amicus brief—filed in October 2016—that unsuccessfully urged the Supreme Court to hear *Doe No. 1*, Florida Abolitionist argued an earlier Senate subcommittee staff report "strongly suggests that Backpage has altered advertisements for the purpose of concealing evidence of criminality." *Doe Amicus Br.* at 21. That Florida Abolitionist had previously made the same allegations (represented by the same counsel for Plaintiffs here) eviscerates any claim that Plaintiffs were somehow unaware of relevant facts that came to light only when the *PSI Report* issued this year. Besides, Doe has not alleged her ad was altered.

[12] Consistent with Defendants' request—which the Court granted—for leave to reply to issues raised in Plaintiffs' Opposition that Defendants could not reasonably have anticipated, we do not address all of the myriad other flaws in Plaintiffs' claims as a matter of state law.

Dated: July 3, 2017

Respectfully submitted,

Robert Corn-Revere *(pro hac vice)*
*Lead Trial Counsel*
Ronald G. London *(pro hac vice)*
**Davis Wright Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
　　　　ronnielondon@dwt.com

Lawrence G. Walters
Florida Bar No.: 0776599
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (408) 774-6151
Email: Larry@FirstAmendment.com
Email: Paralegal@FirstAmendment.com

Attorneys for Defendants

13

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed through the CM/ECF system on July 3, 2017, which will serve a copy by email on the following: Karen C. Dyer, Esq., kdyer@bsfllp.com, Boies, Schiller, Flexner, LLP, 121 South Orange Avenue, Suite 840, Orlando, FL 32801; David Boies, Esq., dboies@bsfllp.com, Boies, Schiller, Flexner, LLP, 333 Main Street, Armonk, NY 10504; Karen Chesley, Esq., kchesley@bsfllp.com, Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022; Joanna Wright, Esq., jwright@bsfllp.com, Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022; Lawrence G. Walters, Esq. Larry@FirstAmendment.com, Walters Law Group, 195 W. Pine Ave., Longwood, FL 32750-4104. Notice will be provided via email to Alexander Boies, Esq. (aboies@bsfllp.com), Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022, and via U.S. Mail to Penny Venetis, Esq., Legal Momentum, 16 East 34th Street, New York, NY 10016.

                                                              Robert Corn-Revere