# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FLORIDA ABOLITIONIST and JANE DOE,
      Plaintiffs,

v.
      Case No: 6:17-cv-218-Orl-28TBS

BACKPAGE.COM LLC,
EVILEMPIRE.COM, BIGCITY.COM,
CARL FERRER, MICHAEL LACEY and
JAMES LARKIN,
      Defendants.

## ORDER

Plaintiffs Jane Doe and Florida Abolitionist bring this action against Defendants Backpage.com LLC, EvilEmpire.com, BigCity.com, Carl Ferrer, Michael Lacey, and James Larkin, alleging six claims under Florida law and one claim under 18 U.S.C. § 1595, which provides a federal civil remedy for sex trafficking victims. Before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 42), Plaintiffs' Opposition (Doc. 52), and Defendants' Reply (Doc. 58). As set forth below, Defendants' motion is granted in part and denied in part, and Plaintiffs will be allowed to replead their claims.

I.    **Background**

As alleged in the Complaint, Defendant Backpage.com LLC owns and operates the website that does business as Backpage.com, and Defendants EvilEmpire.com and BigCity.com are websites whose content, services, and features are controlled by Backpage.com LLC. (Compl., Doc. 1, ¶¶ 11–13). Defendant Carl Ferrer is the CEO of Backpage.com LLC, and Defendants Michael Lacey and James Larkin are owners of

Backpage.com LLC. (Id. ¶¶ 14–16). Defendants operate an online classified advertising service on Backpage.com, and during the time period at issue in this case advertisements could be placed on the website in categories including "Adult Services"—such as escort services—and "Dating."[1]

Plaintiff Jane Doe "was trafficked on Backpage in . . . 2013 and repeatedly raped as a result of the advertisement placed on Backpage." (Id. ¶ 18). She was twenty-six years old at that time. (See id. ¶ 100 (stating that in 2017 Plaintiff Doe was thirty years old)). Plaintiff Florida Abolitionist is a non-profit 501(c)(3) organization "whose mission is to end human trafficking," (id. ¶ 17), and which provides services to trafficking victims, (id. ¶ 111). Florida Abolitionist estimates that at least half of the victims it serves were trafficked via Backpage. (Id. ¶ 114).

The Complaint alleges seven counts, each of which is against all Defendants—four brought solely by Doe and three brought by both Plaintiffs. Doe alone brings claims of sex trafficking under 18 U.S.C. § 1595[2] (Count I), "distributor or publisher liability" (defamation) (Count II), common law invasion of privacy or right to publicity (Count IV), and violation of Section 540.08, Florida Statutes (commercial exploitation of a person's name or personality) (Count V). Both Doe and Florida Abolitionist bring claims of outrage (Count III), civil conspiracy (Count VI), and negligence (Count VII).

In their motion to dismiss, Defendants assert that Plaintiffs lack standing to bring

---

[1] According to the Complaint, in January 2017 the "Adult Services" section was removed and advertisements in that section were shifted to the "Dating" section. (Doc. 1 ¶¶ 74–75). This occurred one day prior to a public hearing before a U.S. Senate Subcommittee that was investigating Backpage.com. (See Doc. 1 ¶¶ 72–73).

[2] In Count I, the Complaint refers to 18 U.S.C. § 1591—a criminal provision—rather than 18 U.S.C. § 1595, which provides a civil remedy for victims of sex trafficking. The Complaint elsewhere refers to § 1595, (see Doc. 1 at 6), and it is apparent that § 1595 is the basis for this claim.

2

their claims and that therefore the case should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendants also argue that 47 U.S.C. § 230—part of the Communications Decency Act of 1996—bars Plaintiffs' claims. And Defendants contend that even aside from § 230, Plaintiffs' claims should be dismissed for failure to state a claim on which relief can be granted. Plaintiffs oppose all of Defendants' arguments and request leave to amend their complaint in the event the Court finds any of their claims deficiently pleaded.

## II. Standing (Rule 12(b)(1))[3]

Federal courts are courts of limited jurisdiction, and "Article III [of the U.S. Constitution] restricts the jurisdiction of federal courts to litigants who have standing to sue." Nicklaw v. CitiMortgage, Inc., 839 F.3d 998, 1001 (11th Cir. 2016). "Article III standing . . . enforces the Constitution's case-or-controversy requirement. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1277 (2014).

"To have standing under Article III, a plaintiff 'must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.'" Wollschlaeger v. Governor of Fla., 848 F.3d 1293, 1303–04 (11th Cir. 2017) (quoting Lexmark, 134 S. Ct. at 1386). Defendants argue that Plaintiffs lack standing because they have not sufficiently alleged a causal connection between their injuries and

---

[3] Although Defendants raise the issue of standing at page twenty-four of their motion—after fifteen pages of argument about their assertions of Communications Decency Act "immunity"—the Court addresses standing first. See, e.g., AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1359 (11th Cir. 2007) ("Standing . . . 'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" (quoting Dillard v. Baldwin Cty. Comm'rs, 225 F.3d 1271, 1275 (11th Cir. 2000)).

3

Defendants' actions.[4] The Court disagrees.

As noted above, in order for Plaintiffs to have standing their injuries must be "fairly traceable" to the actions of the Defendants. "'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing." Resnick v. AvMed, Inc., 693 F.3d 1317, 1323 (11th Cir. 2012) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). And "[e]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." Id. at 1324; see also Wollschlaeger, 848 F.3d at 1304 ("'Proximate causation,' however, 'is not a requirement of Article III standing[.]'" (alteration in original) (quoting Lexmark, 134 S. Ct. at 1391 n.6)). Plaintiff Doe alleges that after an advertisement offering her for sexual services was posted on Backpage.com on March 30, 2013, she was raped and sold at least five times in a period of twelve hours. (Compl. ¶ 9). She alleges in each count that she suffered physical and psychological injuries based on the posting of the advertisement on Backpage.com. This is sufficient to satisfy the "fairly traceable" requirement for Article III standing at this stage of the case as to each of Plaintiff Doe's claims. Defendants' assertions as to the insufficiency of Doe's pleading of causation bear on whether she has stated causes of action under Rule 12(b)(6) rather than on whether she has standing to bring these claims against Defendants in the first instance. Cf. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." (emphasis removed)).

The Complaint also sufficiently alleges that Plaintiff Florida Abolitionist has standing

---

[4] Defendants do not contend that Plaintiffs have not satisfied the "injury in fact" or "redressability" aspects of standing.

4

to bring its claims. "An organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'" La Asociación de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting Fair Hous. of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002)); accord Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1341 (11th Cir. 2014) ("[A]n organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982))). The Complaint alleges that Defendants' conduct with regard to the advertisements posted on the websites has led to an increase in sex trafficking, which has required Florida Abolitionist to divert its resources to treatment of victims rather than to its mission of ending human trafficking. (Compl. ¶¶ 10 & 114). The Complaint further alleges that "Florida Abolitionist estimates that at least half of the victims it serves were trafficked via Backpage." (Id. ¶ 114). These are sufficient allegations of an injury "fairly traceable" to the actions of Defendants to support Florida Abolitionist's standing on each of its claims at this stage of the case.

In sum, Plaintiffs have sufficiently alleged standing. Defendants' motion to dismiss is denied insofar as it asserts lack of subject-matter jurisdiction under Rule 12(b)(1).

### III. Failure to State a Claim (Rule 12(b)(6))

#### A. Legal Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## B. The Communications Decency Act

The main focus of Defendants' motion to dismiss is on 47 U.S.C. § 230(c)(1), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." And § 230(e)(3) provides that "[n]o cause of action may be brought and no liability may be imposed under any state or local law that is inconsistent with" § 230. Defendants contend that these provisions afford them "immunity" to all of Plaintiffs' claims or otherwise bar them.

As earlier noted, § 230 is part of the Communications Decency Act of 1996 (CDA). The Ninth Circuit explained the history of the CDA, § 230, and § 230(c)(1)[5] in particular in Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003):

> The primary goal of the [CDA] was to control the exposure of minors to indecent material. Parts of the [CDA] have since been struck down as unconstitutional limitations on free speech, but the section at issue here,

---

[5] Another paragraph of § 230—§ 230(c)(2), titled "Civil liability"—provides: "No provider or user of an interactive computer service shall be held liable on account of—(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in [paragraph (A)]." Defendants do not rely on this portion of § 230 in defending against Plaintiffs' claims. Although Plaintiffs insist that § 230(c)(2) is implicated here, the Court confines its discussion to the provisions upon which Defendants base their motion.

6

§ 230, remains intact.

> . . . The specific provision at issue here, § 230(c)(1), overrides the traditional treatment of publishers, distributors, and speakers under statutory and common law. As a matter of policy, "Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others." Absent § 230, a person who published or distributed speech over the Internet could be held liable for defamation even if he or she was not the author of the defamatory text, and, indeed, at least with regard to publishers, even if unaware of the statement. Congress, however, has chosen to treat cyberspace differently.

333 F.3d at 1026–27 (internal citations omitted).

Defendants argue that as website operators, they are merely providers of an "interactive computer service" and that—contrary to § 230(c)(1)—Plaintiffs are attempting to treat them "as the publisher or speaker of . . . information provided by [other] information content provider[s]"—those who post the ads on Defendants' websites. Plaintiffs, on the other hand, maintain that Defendants are not merely providers of an "interactive computer service" but also qualify as "information content providers" for the ads at issue here.

"Information content provider" is defined in § 230(f)(3) as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." An entity can be both an "interactive computer service" provider and an "information content provider." Thus, at issue is whether Defendants merely provided an interactive computer service or were also "responsible, in whole in part, for the creation or development" of the advertisements on the website such that they were "information content providers" as well.

Some courts characterize the "protection" of § 230(c)(1) as "a broad immunity," but this view is not universal. Compare, e.g., Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009), with Chicago Lawyers' Committee for Rights Under Civil

7

Law, Inc. v. Craigslist, 519 F.3d 666, 669 (7th Cir. 2008), and Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100 (9th Cir. 2009) ("Neither [§ 230(c)(1)] nor any other [subsection] declares a general immunity from liability deriving from third-party content . . . . [Section 230(c)(1)] precludes liability only by means of a definition."). And some courts regard § 230(c)(1) as an affirmative defense that need not be overcome by a complaint's allegations and is not the proper subject of a Rule 12(b)(6) motion to dismiss. See, e.g., Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003) (discussing the procedural posture issue but noting that the parties did not raise it and declining to "fuss[] over procedural niceties to which the parties are indifferent"). Some courts have found that even if it is affirmative defense, the issue of the applicability of § 230(c)(1) can be resolved on a 12(b)(6) motion if it is clear from the face of the complaint. See, e.g., Ricci v. Teamsters Union Local 456, 781 F.3d 25, 28 (2d Cir. 2015) ("Although [p]reemption under the Communications Decency Act is an affirmative defense, . . . it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint." (alterations in original) (internal quotation omitted)); accord Green Grp. Holdings, LLC v. Schaeffer, 2016 WL 6023841, at *8 (S.D. Ala. Oct. 13, 2016); e-ventures Worldwide, LLC v. Google, Inc., 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016).

Although Defendants assert that they are "immune from" this suit under § 230(c)(1), the Court concludes that even if § 230(c)(1) is something other than an affirmative defense and can be properly addressed on a Rule 12(b)(6) motion, factual issues preclude a ruling on the § 230(c)(1) issue at this stage of the case. See, e.g., FTC v. LeanSpa, LLC, 920 F. Supp. 2d 270, 275 (D. Conn. 2013) ("The Court cannot conclude from the face of the Amended Complaint that the LeadClick defendants are entitled to immunity under the CDA."); Cybersitter, LLC v. Google Inc., 905 F. Supp. 2d 1080, (C.D. Cal. 2012) ("Because

8

Defendant's entitlement to immunity under the CDA depends on whether Defendant 'developed' or materially contributed to the content of these advertisements, it is too early at this juncture to determine whether CDA immunity applies."); Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 418 F. Supp. 2d 1142, 1145 (D. Ariz. 2005) ("Taking Plaintiff's allegations as true, Defendants are not entitled to immunity under the CDA at this stage of the case." (citation omitted)). Plaintiffs have alleged facts suggesting that Defendants materially contributed to the content of the advertisements, and thus the issue of CDA immunity cannot be resolved on a Rule 12(b)(6) motion to dismiss in this case.

### C. Pleading Sufficiency Aside from the CDA

Although Plaintiffs have sufficiently alleged facts establishing their standing and overcoming a finding of CDA "immunity" at this stage of the case, Plaintiffs' claims nevertheless must be repleaded. First, the Complaint is of the "shotgun" variety, in which each count incorporates all prior paragraphs, lumps all Defendants together in nearly all allegations, and makes it difficult for the Court to determine which allegations the Plaintiffs are relying on for each of their counts. Moreover, the Complaint refers to entities as "Defendants" who are not identified as Defendants in the caption of the case and apparently have not been served with process. (See Compl. at 6 (referring to "Defendant Dartmoor Holdings LLC," "Defendant Classified Solutions LTD," and "Defendant Website Technologies, LLC")).

Additionally, the only federal claim asserted in the Complaint—Count I—does not state a claim for which relief can be granted. Defendants note that Count I does not include a plausible allegation that Defendants saw the ad concerning Plaintiff Doe and knew it related to illegal sex trafficking. And the Complaint's allegations largely describe Defendants' alleged actions of masking advertisements of minors by creating content that

obscures the fact that they are minors. Yet Plaintiff Doe was not a minor at the time of the events at issue—she was twenty-six years old. (See Compl. ¶ 100). Thus, Plaintiffs have not yet sufficiently alleged a plausible federal claim. Although Plaintiffs allege that this Court has diversity jurisdiction over their state law claims, they do so only conclusorily and do not identify the citizenship of any party. (See id. ¶ 21).

Plaintiffs request, and will be allowed, leave to amend so that they can attempt to remedy their pleading deficiencies. The other arguments made in Defendants' 12(b)(6) motion may be asserted again, if applicable, after repleading by Plaintiffs.

## IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 42) is **GRANTED in part** and **DENIED in part**. The motion is denied insofar as it is brought under Rule 12(b)(1) and is **GRANTED** insofar as it is brought under Rule 12(b)(6).

2. The Complaint is dismissed **without prejudice**, and Plaintiffs are granted leave to replead their claims. Plaintiffs may file an amended complaint **on or before April 30, 2018**. Failure to file an amended complaint by this deadline may result in dismissal of Plaintiffs' claims with prejudice without further notice.

**DONE** and **ORDERED** in Orlando, Florida, on March 31, 2018.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

10