# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Case No. 6:17-cv-218-ORL-28-TBS

|  |  |  |
|---|---|---|
| FLORIDA ABOLITIONIST, INC.; JANE DOE #1; JANE DOE #2; and SUSAN ROE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -against- | ) ) | Local R. 3.01(h) – Dispositive Motion |
| BACKPAGE.COM LLC; CARL FERRER; MICHAEL LACEY; JAMES LARKIN; WEBSITE TECHNOLOGIES, LLC; IC HOLDINGS LLC; DARTMOOR HOLDINGS LLC; CAMARILLO HOLDINGS LLC; ATLANTISCHE BEDRIJVEN CV; KICKAPOO RIVER INVESTMENTS, LLC; AMSTEL RIVER HOLDINGS LLC; POSTFASTER LLC; CLASSIFIED SOLUTIONS LTD; MEDALIST HOLDINGS, INC; AD TECH BV; UGC TECH GROUP CV; POSTING SOLUTIONS LLC; AND CEREUS PROPERTIES LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b) (6)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    Original Complaint. ................................................................................... 3

    B.    First Amended Complaint. .......................................................................... 5

STANDARDS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) .................... 7

ARGUMENT ..................................................................................................................... 7

I.     PLAINTIFFS' FIRST AMENDED COMPLAINT DOES NOT CURE THE
      PLEADING DEFICIENCIES THAT REQUIRED DISMISSAL............................. 7

II.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW. ..................................... 11

    A.    The Right-of-Publicity Claims Fail. ............................................................. 11

    B.    The Defamation Claim Is Time-Barred, and the Doe Plaintiffs' Other
        Claims Based on Publication are Barred by the Single Action Rule. ............. 12

    C.    The Outrage and Negligence Claims are Not Sufficiently Pled. ................... 14

    D.    The Civil Conspiracy Claim Fails. ................................................................ 17

    E.    The Sex Trafficking Claim Fails. .................................................................. 18

    F.    The RICO and RICO Conspiracy Claims are Facially Flawed. .................... 20

        1.    Plaintiffs Fail to Plead Cognizable RICO Injuries. ............................. 20

        2.    Plaintiffs Plead No RICO Causation. .................................................. 22

        3.    The RICO Claims Fail to Allege "Operational or Management
            Control." ........................................................................................... 24

        4.    The RICO Claims Fail to Satisfy Rules 9(b) and 9(f). ........................ 25

    G.    The Claim for Aiding and Abetting Involuntary Servitude Fails. .................. 27

    H.    The Loss of Consortium Claim Fails. ............................................................ 29

    I.    Plaintiffs' Requests for Injunctive Relief Must Be Stricken. ........................ 30

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L. v. Shorstein*,
    2017 WL 526618 (M.D. Fla. Feb. 9, 2017) ....................................................18

*Absolute Activist Value Master Fund Ltd. v. Devine*,
    233 F. Supp. 3d 1297 (M.D. Fla. 2017)................................................20, 25

*Ainsworth v. Norris*,
    469 F. App'x 775 (11th Cir. 2012) ..................................................................30

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ..............................................................11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................7

*Backpage.com, LLC v. Cooper*,
    939 F. Supp. 2d 805 (M.D. Tenn. 2015)............................................................2

*Backpage.com, LLC v. Dart*,
    807 F.3d 229 (7th Cir. 2015) ....................................................................2, 19

*Backpage.com, LLC v. Lynch*,
    216 F. Supp. 3d 96 (D.D.C. 2016) ..........................................................19, 27

*Backpage.com, LLC v. Lynch*,
    No. 1:15-cv-2155, ECF No. 13 (D.D.C. filed Apr. 15, 2016) ..........................18

*Backpage.com, LLC v. McKenna*,
    881 F. Supp. 2d 1262 (W.D. Wash. 2012).......................................................19

*Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*,
    2008 WL 1817294 (M.D. Fla. Apr. 22, 2008)................................................18

*Best Deals on TV, Inc. v. Naveed*,
    2007 WL 2825652 (N.D. Cal. Sept. 26, 2007) ........................................25, 26

*Blair v. NCL (Bahamas) Ltd.*,
    212 F. Supp. 3d 1264 (S.D. Fla. 2017) ....................................................14, 16

*Byrd v. Hustler Magazine*,
    433 So. 2d 593 (Fla. 4th DCA 1983) ...........................................................................13

*Casio Computer Co. v. Sayo*,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) .................................................................25

*Church v. City of Huntsville*,
    30 F.3d 1332 (11th Cir. 1994) ......................................................................................30

*Cohen v. Board of Supervisors*,
    707 P.2d 840 (Cal. 1985) ...............................................................................................19

*Connor v. Halifax Hosp. Med. Ctr.*,
    135 F. Supp. 2d 1198 (M.D. Fla. 2001) .........................................................................21

*Dart v. Craigslist, Inc.*,
    665 F. Supp. 2d 961 (N.D. Ill. 2009) .............................................................................19

*Doe v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016)......................................................................................11, 12

*Ellis v. Warner*,
    2017 WL 634287 (S.D. Fla. Feb. 16, 2017) .......................................................20, 25, 26

*Elonis v. United States*,
    135 S. Ct. 2001 (2015).................................................................................................28

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ..................................................................................16, 17

*Franklin v. Curry*,
    738 F.3d 1246 (11th Cir. 2013) ......................................................................................7

*Fridovich v. Fridovich*,
    598 So. 2d 65 (Fla. 1992).............................................................................................13

*Fuentes v. Mega Media Holdings, Inc.*,
    721 F. Supp. 2d 1255 (S.D. Fla. 2010) .........................................................................11

*Gates v. Foley*,
    247 So. 2d 40 (Fla. 1971).............................................................................................29

*Giordano v. Romeo*,
    76 So. 3d 1100 (Fla. 3d DCA 2011) .............................................................................12

*Gomez v. Pfizer, Inc.*,
   675 F. Supp. 2d 1159 (S.D. Fla. 2009) ....................................................................15, 29

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ..............................................................................7, 16

*Hassell v. Bird*,
   --- P.3d ---, 2018 WL 3213933 (Cal. July 2, 2018) ...............................................29

*Hayward v. Lee Cty. Sheriff's Office*,
   2017 WL 6550866 (M.D. Fla. Oct. 30, 217) ...........................................................18

*Hemi Grp., LLC v. City of N.Y.*,
   559 U.S. 1 (2010) ....................................................................................................21, 23

*Herrick v. Grindr, LLC*,
   2018 WL 566457 (S.D.N.Y. Jan. 25, 2018) ...........................................................17

*Holmes v. Secs. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ................................................................................................21, 23

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
   731 F.3d 556 (6th Cir. 2013) .....................................................................................22

*K.M. ex rel. D.M. v. Publix Super Markets, Inc.*,
   895 So. 2d 1114 (Fla. 4th DCA 2005) ....................................................................15, 16

*Kamau v. Slate*,
   2012 WL 5390001 (N.D. Fla. Oct. 1, 2012) ..........................................................13, 14

*Kidwell v. Florida Comm'n on Human Relations*,
   2017 WL 176897 (M.D. Fla. Jan 17, 2017)...............................................................7, 8

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999).......................................................................................22

*LaGrasta v. First Union Secs., Inc.*,
   358 F.3d 840 (11th Cir. 2004) ...................................................................................13

*LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*,
   951 F. Supp. 1071 (S.D.N.Y. 1996)...........................................................................24

*Lawson v. Rubin*,
   2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) .....................................................22, 23, 24

*Lorber v. Winston*,
   962 F. Supp. 2d 419 (E.D.N.Y. 2013) ............................................................25

*Magnum v. Archdiocese of Phila.*,
   253 F. App'x 224 (3d Cir. 2007) ...................................................................22

*Marine v. Burch*,
   2013 WL 5187302 (N.D. Fla. Sept. 12, 2013) ...............................................30

*Merrick v. Radisson Hotels Int'l, Inc.*,
   2007 WL 1576361 (M.D. Fla., May 30 2007) ...............................................14

*Miljkovic v. Shafritz & Dinkin, P.A.*,
   791 F.3d 1291 (11th Cir. 2015) ...............................................................7, 16

*Nunn v. Satrom*,
   2012 WL 12914317 (D.N.D. Oct. 26, 2012) .................................................25

*Nye & Nissen v. United States*,
   336 U.S. 613 (1949)........................................................................................29

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
   2010 WL 1408391 (M.D. Fla. Apr. 6, 2010) ...........................................17, 18

*Republic of Panama v. BCCI Holdings (Lux.) S.A.*,
   119 F.3d 935 (11th Cir. 1997) ......................................................................20

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)........................................................................................24

*Smith v. California*,
   361 U.S. 147 (1959)........................................................................................27

*Stanfield v. SunTrust Bank*,
   2016 WL 899279 (M.D. Fla. Mar. 2, 2016) .................................................15

*Trujillo v. Banco Cen. Del Ecuador*,
   17 F. Supp. 2d 1334 (S.D. Fla. 1998) ...........................................................14

*United States v. Newman*,
   490 F.2d 139 (3d Cir. 1974)...........................................................................29

*United States v. Seabrooks*,
   839 F.3d 1326 (11th Cir. 2016) .....................................................................29

*United States v. Spinney,*
    65 F.3d 231 (1st Cir. 1995)......................................................................................29

*United States v. X-Citement Video, Inc.,*
    513 U.S. 64 (1994)..................................................................................................28

*University of Md. v. Peat, Marwick, Main & Co.,*
    996 F.2d 1534 (3d Cir. 1993).................................................................................24

*Valdes v. GAB Robbins N. Am., Inc.,*
    924 So. 2d 862 (Fla. 3d DCA 2006) .....................................................................14

*Vibe Micro, Inc. v. Shabanets,*
    878 F.3d 1291 (11th Cir. 2018) ..........................................................................7, 10

*Virgilio v. Ryland Grp.,*
    680 F.3d 1329 (11th Cir. 2012) .........................................................................15, 16

*Viridis Corp. v. TCA Global Credit Master Fund, L.P.,*
    155 F. Supp. 3d 1344 (S.D. Fla. 2015) ..............................................................25, 26

*Wagner, Nugent v. Flanagan,*
    629 So. 2d 113 (Fla. 1993).....................................................................................13

*West 79th St. Corp. v. Congregation Kahl Minchas Chinuch,*
    2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004).......................................................25

**Statutes**

18 U.S.C.
    § 2...........................................................................................................................6, 29
    § 1584........................................................................................................................6
    § 1591..........................................................................................................4, 6, 18, 20
    § 1595..........................................................................................................6, 10, 18
    §§ 1961-1968 ...........................................................................................................6
    § 1964(c) ...........................................................................................................20, 21

47 U.S.C.
    § 230........................................................................................................1, 2, 4, 5, 10
    § 230(c)(1) ..............................................................................................................4
    § 230(e) ....................................................................................................................6

Fla. Stat.
   § 95.11(4)(g) ..................................................................................................12
   § 540.08..................................................................................................4, 11
   § 540.08(1)................................................................................................11
   § 770.07.....................................................................................................13

## Rules

Fed. R. Civ. P.
   9(b).........................................................................................20, 25, 26, 27
   9(f)..................................................................................................25, 27
   12(b)(6) ..............................................................................................1, 7, 10
   12(1).........................................................................................................4
   12(6).........................................................................................................4

## Other Authorities

*Free Speech Online*, Jan. 10, 2017, Center for Democracy & Technology,
   https://cdt.org/press/backpage-com-succumbing-to-govern ................................................2

H.R. Rep. No. 115-572 (Feb. 20, 2018).................................................................20

Restatement (Second) of Torts.........................................................................16

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Medalist Holdings, Inc. ("Medalist"), Camarillo Holdings LLC ("Camarillo"), Cereus Properties LLC ("Cereus"), Michael Lacey, and James Larkin (collectively, the "Medalist Defendants") hereby move to dismiss all counts alleged against them in the First Amended Complaint ("FAC").[1]

## INTRODUCTION

In this case, an advocacy organization and two Jane Does, one newly added along with her mother as Plaintiffs, allege the women were victimized (separately) by third-party criminals who involved them in sex trafficking by posting on the classified ad website Backpage.com, and that the site's general operation harmed the organization's constituency and taxed its resources.  When the Court dismissed the Complaint as originally filed, it held that although the organization and Doe #1 had standing, and avoided, at least at the pleading stage, the immunity conferred on interactive computer services by Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230"), their claims nonetheless had to be repled.  Order (Dkt. 85), 3-10 ("Dismissal Order").  It held the Complaint was "of the 'shotgun variety, in which each count incorporates all prior paragraphs, lumps all Defendants together in nearly all allegations, and makes it difficult … to determine which allegations" are relied on "for each of the[] counts." *Id*. 9; *cf. id*. 9-10 (the only federal count involved child trafficking, yet Doe #1 was not a minor).  The Dismissal Order also held the

---

[1]  Undersigned counsel initially represented all defendants in this case, which in the original Complaint were Backpage.com, LLC, BigCity.com, EvilEmpire.com, Carl Ferrer, and Lacey and Larkin, but counsel filed and the Court granted a motion to withdraw as to Backpage.com, LLC and Ferrer (Dkts. 101-103).  The undersigned thus represent only Lacey, Larkin, and the newly added corporate Medalist Defendants.  The First Amended Complaint dropped BigCity.com and EvilEmpire.com as defendants.

substantive grounds advanced for dismissal apart from Section 230 immunity, which the Court did not reach, could be reasserted as to any repled complaint. *Id.* 10.

The First Amended Complaint arising from the opportunity the Court granted to amend adds two new Plaintiffs (Doe #2 and her mother), a half-dozen new counts, and more than a dozen new defendants. Also, in place of prior heavy reliance on a Senate Report targeting Backpage.com, Plaintiffs seek to capitalize on intervening pleas by Ferrer and Backpage.com, LLC to federal criminal charges, and on a related indictment. And yet, the "shotgun pleading" problems the Court identified have not all been fixed and, if anything, are exacerbated by piling on new defendants and claims. At the same time, the shortcomings of the various causes of action identified in the motion to dismiss the original Complaint persist. Because Plaintiffs have not remedied the failings the Court cited in dismissing the original Complaint, the First Amended Complaint also must be dismissed; and as Plaintiffs have squandered the opportunity provided to replead, this time dismissal should be with prejudice.

## BACKGROUND

Backpage.com was an online classified ad service through which users could post ads in various categories, including buy/sell/trade, real estate, jobs, and dating. *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2015). It also had a category for "adult" services (such as escorts), which—after years of government pressure, including what the Seventh Circuit called an unconstitutional effort to "crush Backpage," *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015)—was shuttered in January 2017.[2]

---

[2] FAC ¶¶ 51, 97. *See Backpage.com Succumbing to Government Is Blow to Free Speech Online*, Jan. 10, 2017, Center for Democracy & Technology, https://cdt.org/press/backpage-com-succumbing-to-government-is-blow-to-free-speech-online.

In April 2018, as a result of further government pursuit, the website shut down entirely.  *See*
*infra* 5, 30.  *See also* FAC ¶ 170.[3]  Both the original Complaint and the First Amended Com-
plaint rest entirely on the former Backpage.com website hosting ads and, more specifically,
ads posted by third parties alleged to have involved Plaintiffs Does #1 and #2, as well as
Florida Abolitionist's constituency generally, in unlawful sex trafficking.

### A.    Original Complaint.

In the original Complaint, Plaintiffs Florida Abolitionist, which identifies itself as an
organization "whose mission is to end human trafficking," FAC ¶¶ 36, 157, and Doe #1, who
alleges she was victimized by traffickers who created and posted an ad on Backpage.com
through which she was sold for sex, *id.* ¶¶ 142-46, sought to hold Backpage.com and its
current and former principals liable for ads on the site that were created and submitted by
third parties.  Compl. ¶¶ 1, 17-18, 97-98; *see also* FAC ¶ 17, 36, 38, 144-45.  It named as
defendants Backpage.com, LLC, related websites EvilEmpire.com and BigCity.com, and
Carl Ferrer, Michael Lacey, and James Larkin.  Doe #1 alleged that in March 2013 her
mother "sold her [] for sex," that third party traffickers took photos of her without her
consent, "created an ad[]" of her, and posted it on Backpage.com to "sell[] [her] for sex,"
whereupon Doe #1 was raped by third parties who responded to the ad.  Compl. ¶¶ 95-98;
*accord* FAC ¶¶ 142-45.  Florida Abolitionist claimed that, because of Backpage.com, it
"diverted its resources from its main mission" which has thereby been "frustrated."  Compl.
¶¶ 17, 103, 110; *accord* FAC ¶¶ 16, 36, 157, 164.  Plaintiffs did not allege any of the named

---

[3]  Medalist Defendants do not reiterate the history and prior operation of Backpage.com
as fully as in the original motion to dismiss (Dkt. 42), given these ensuing developments.

defendants created or developed the content of the single ad alleged to have resulted in Doe #1's victimization.  Based on this the Complaint asserted seven causes of action.[4]

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6).  *See* Dkt. 42. They challenged Plaintiffs' standing, primarily based on lack of particularized injury fairly traceable to actions of the defendants, given that third parties created and posted all ads cited as causing Plaintiffs' harms.  *Id*. § II.A.  Defendants also claimed immunity under Section 230(c)(1)'s mandate that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  *Id*. § I (quoting 47 U.S.C. § 230(c)(1)).[5]  Certain claims also were challenged as time-barred, and all were asserted to fail as a matter of law, for various reasons.  *Id*. § II.B-F.

As noted, the Court dismissed the Complaint.  It held Florida Abolitionist and Doe #1 have standing in that, at the pleading stage, general averments alleging traceability, and even indirect causation, suffice.  Dismissal Order, 4-5.  It further held that although Backpage.com provided interactive computer service, "factual issues preclude[d] a ruling on the § 230(c)(1) issue at this stage of the case," because Plaintiffs alleged the website materially contributed to the content of ads targeted in the Complaint.  *Id*. 8-9.  But, as noted, the Court held the

---

[4]  The original counts were for civil liability under the federal criminal anti-trafficking statute, 18 U.S.C. § 1591 (Count I), while the rest were under Florida law:  "distributor or publisher liability" for allegedly "defamatory matter" (Count II); "outrage" (Count III); common law invasion of privacy or right of publicity (Count IV); statutory right of publicity (Fla. Stat. § 540.08) (Count V); civil conspiracy (Count VI); and negligence (Count VII).

[5]  The invocation of Section 230 immunity cited how the Complaint's allegations of content-creation by Backpage.com were conclusory and not connected to Doe #1's ad, and that they relied on the website's general operation and editorial functions, despite well-established Section 230 authority that websites can be liable only to the extent they create or develop specific content that is a source of alleged liability.  *Id*. *See also infra* note 12.

Complaint still had to be repled given its "shotgun" approach and "lumping together" of defendants and facts in each of its counts.  *Id*. 9-10.[6]  All other bases for dismissal that defendants asserted were left to "be asserted again, if applicable, after repleading."  *Id*. 10.

      **B.**      **First Amended Complaint.**

      The First Amended Complaint largely leaves intact all of the factual allegations—and their shortcomings—from the original Complaint (though changes verb tenses given Backpage.com's shutdown), and retains all prior causes of action, while making various additions and thematic adjustments.  It adds two new Plaintiffs, Doe #2 and "Susan Roe," her mother.  Allegations for Doe #2 are largely similar to those pled for Doe #1, other than alleging her experience occurred when she was a minor—*i.e.*, in early 2016, Doe #2 encountered third-party traffickers who took photos of her and used them to create an ad on Backpage.com, through which she was subsequently offered for sex, after which she was raped by multiple other third-parties who responded.  FAC ¶¶ 14, 39, 150-52.  Ms. Roe's connection to these allegations, and the only claim specific to her, is loss of consortium of Doe #2.  *See id*. ¶¶ 15, 40 & Count XIII.  The First Amended Complaint also adds defendants.  Where, in the original Complaint, in addition to individual defendants, the only corporate defendant was Backpage.com, LLC,[7] the First Amended Complaint names over a dozen more corporate entities—specifically, three corporate Medalist Defendants, and a variety of entities owned and/or controlled by Ferrer and affiliated with Backpage.com, LLC.  *See id*. ¶¶ 18-35.

---

    [6]  The Court also noted the lone count under federal law, which was the sole basis for its jurisdiction, alleged child trafficking despite Doe #1 being an adult at all relevant times.  *Id*.

    [7]  BigCity.com and EvilEmpire.com did not exist as legal entities, but were affiliated websites.  They are no longer named in the First Amended Complaint.  *See supra* note 1.

The First Amended Complaint also more than doubles the number of causes of action. It retains from the original Complaint, virtually verbatim other than adding Doe #2, each of the six state causes of action (though it renumbers them). *Id*. Counts VII-XII.  It also retains the remaining preexisting claim under the federal criminal trafficking statute, but as substantially revised, and repled under 18 U.S.C. § 1595 rather than § 1591. *Id*.  Count I.  Plaintiffs newly add claims for aiding and abetting involuntary servitude under the Thirteenth Amendment and 18 U.S.C. §§ 2 & 1584, *id*. Count VI; several claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, *id*. Counts II-V; *see also id*. ¶¶ 117-141; *cf. id*. ¶ 42 (newly alleging jurisdiction based on RICO), and the loss of consortium claim.  *Id*. Count XIII.  Significant portions of new or substantially rewritten passages in the First Amended Complaint not dedicated to new parties or claims focus on federal criminal pleas by Ferrer and Backpage.com, LLC, and a criminal indictment that names Lacey and Larkin, along with other owners of the former parent of Backpage.com, and certain of the website's former operational personnel.  *See id*. ¶¶ 3, 5-6, 170-73.[8]

But while the First Amended Complaint adds considerably to the original Complaint, it does comparatively less to address the reasons the Court dismissed it.  For example, all state law claims are still alleged against "All Defendants" (newly expanded to encompass all 18, rather than just the four named originally).  *Id*. Counts VII-XII.  *See also id*. Count XIII (new, same).  All allegations in these Counts continue to be addressed to what "Defendants" did generically, without identifying what any one (or any subset) of them is alleged to have

---

[8]  Other additions address Public Law 115-164, adopted in April 2018, which among other things amended 18 U.S.C. § 1591 and Section 230(e). *Id*. ¶¶ 4, 174-75.

6

done specifically.  *See id*. ¶¶ 206-31. The RICO claims take a similar approach, where each count, and all allegations in them, identify only the same ten identified "RICO Defendants." *Id*. ¶¶ 117.  Other claims are alleged against "Defendant Backpage.com LLC and Individual Defendants," *id*. Counts I, VI, with the latter identified as Ferrer, Lacey and Larkin.  *Id*. ¶ 3.

## STANDARDS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "'[C]onclusory allegations ... are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations.'" *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (citation omitted); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted).  And as the Court alluded to in the Dismissal Order at 9, it does not suffice to file a "shotgun pleading" that "fails to articulate claims with sufficient clarity," *Kidwell v. Florida Comm'n on Human Relations*, 2017 WL 176897, at *6 (M.D. Fla. Jan 17, 2017), a practice for which "[c]ourts in the Eleventh Circuit have little tolerance."  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

## ARGUMENT

## I.   PLAINTIFFS' FIRST AMENDED COMPLAINT DOES NOT CURE THE PLEADING DEFICIENCIES THAT REQUIRED DISMISSAL.

Plaintiffs have used the opportunity to amend their complaint to add parties and claims, and to update their invective, but fail to adequately respond to the reasons the Court

dismissed the original Complaint.  The Court held the "pleading sufficiency" of the original Complaint suffered from being "of the 'shotgun' variety, in which each count incorporates all prior paragraphs, lumps all Defendants together in all allegations, and makes it difficult … to determine which allegations the Plaintiffs are relying on for each of their counts."  Dismissal Order 9.  Plaintiffs have not "remed[ied] their pleading deficiencies."  *Id*. 10.

The First Amended Complaint does not, for instance, remedy the "lump[ing of] all Defendants together."  *Id*. 9.  Each state claim carried over from the original Complaint (and the new one as well) continues to name "All Defendants," *see* FAC, Counts VII-XIII—which means all 18, including those newly added, not just the original four whose combination caused the Court to dismiss.  *See supra* 4-5.[9]  Other counts are against "Backpage.com and the Individual Defendants," *id*. Counts I, VI—in other words, the same group from the original Complaint that the Court held were improperly "lumped together."  Dismissal Order 9.

And this is not just a problem in the First Amended Complaint's Counts.  In numerous other places, allegations combine "the Individual Defendants and Backpage.com" in the same way so as encompass all the same original defendants.  *See*, *e.g.*, FAC ¶¶ 52,-54, 103-04, 106-07, 117.  The fact that Plaintiffs have added various new corporate defendants to lurk in the background does nothing to ameliorate the problem.  If anything, addition of the new defendants only exacerbates matters.  Putting aside how their sheer numerosity makes the "lumping together" problem worse, the First Amended Complaint acknowledges the split between Lacey, Larkin and the other Medalist Defendants on the one hand, and Ferrer, Back-

---

[9] Elsewhere, the First Amended Complaint adds most of the other defendants to allege claims against undifferentiated "RICO Defendants."  *See id*. Counts II-V (alleged against 10 of 18 defendants); *see also id*. ¶¶ 117-19, 124-29, 131-41.

page.com, LLC and the other entities Ferrer controls on the other, given the latter's pleas to federal charges. *See* FAC ¶¶ 5, 6, 121, 170-73.[10]

If anything, the First Amended Complaint alleges it was Ferrer who "led" practices by which all "Defendants" allegedly operated Backpage.com so as to cause Plaintiffs' harm.[11]   Meanwhile, the First Amended Complaint identifies Larkin and Lacey, alleges their asserted "beneficial ownership" of Backpage.com, and notes Ferrer's inculpation of them in relation to his federal criminal plea and the resulting indictment.   FAC ¶¶ 3, 6, 11, 20-21, 95, 170, 172.   Yet it says virtually nothing about specific conduct by either of them. *But see id.* ¶ 99 (Larkin warned Ferrer against Backpage.com's moderation practices being perceived as editing posts by users).   And that is particularly true with respect to the narrative regarding ads of Does #1 and #2, and the operations of Backpage.com that Florida Abolitionist alleges caused its harm, where there are *no* allegations tying those matters to Lacey or Larkin.   *See id.* ¶¶ 142-48, 150-56, 168 (all alleging "Backpage's conduct" or "Backpage's [] activity").

The same problems arise where Plaintiffs combine various corporate entities, despite the fact that some directly relate to Backpage.com, LLC, and are controlled by Ferrer, while the Medalist Defendants are separate.   *See* FAC ¶¶ 45, 85, 111, 207-31.   This is only high-lighted where Plaintiffs allege, without specifying who's who, that "[s]ome of these entities

---

[10]   In fact, Plaintiffs combine the "Individual Defendants" even in their description of those charges, citing a purported "indictment against Defendants Carl Ferrer, Michael Lacey, and James Larkin," FAC ¶ 3, even though, as Plaintiffs elsewhere acknowledge, Ferrer was never indicted. *See*, *e.g.*, FAC ¶¶ 5-6, 170.

[11]   FAC ¶ 7. *See also*, *e.g.*, ¶ 58 ("Backpage officials, including [] Ferrer, instructed" operation of the site's handling of ads); *id.* ¶ 68 (alleging "Ferrer set up th[e] moderation process"); *id.* ¶ 73 (alleging "Ferrer directed his employees"); *see also id.* ¶¶ 59, 74, 77-78.

were mere shell companies."  FAC ¶ 11.  Here, too, the First Amended Complaint does no more than name Medalist and Camarillo as defendants and describe them, without saying anything about their specific role in the asserted claims.  *Id.* ¶¶ 25, 31.  Plaintiffs do the same for Cereus, while also lumping it in as a "RICO Defendant" without otherwise specifying its role.  *See id.* ¶¶ 35, 117, 119, 121, 191 & Counts II-V.  *Compare Vibe Micro*, 878 F.3d at 1294 ("making no distinction between [] defendants" yields shotgun pleading).

These pleading deficiencies make it virtually impossible to "determine which allegations Plaintiffs are relying on" for which defendants.  Dismissal Order 9.  The Court should dismiss the First Amended Complaint for the same reasons it dismissed its predecessor.[12]

---

[12]  As all of Plaintiffs' claims ultimately turn on operation of the Backpage.com website and content posted by third-parties, and any defendant's liability (if any) is in connection with that hosted third-party content, all claims continue to be preempted by Section 230 immunity, for reasons stated in the motion to dismiss the original Complaint.  *See* Dkt. 42, § I.  The case law is well-established that Section 230 analyses must examine specific content alleged to have caused a plaintiff's injury, and the specific role—if any—a defendant inter-active computer service is alleged to have had in what made the content harmful.  *Id.* § I.C.2; *see also* Reply to Opp. to Mot. to Dismiss (Dkt. 58), § II.C.  The only exception among Plaintiffs' claims that is even *possibly* not preempted is that under 18 U.S.C. § 1595—but that relies on retroactive application of recently enacted legislation amending Section 230, *see* FAC ¶¶ 4, 99, 174-75, which raises new constitutional issues.

Nevertheless, because the First Amended Complaint includes essentially the same factual allegations as the original—and, importantly, its absence of facts specific to ads of Does #1 and #2—and the Court previously held Section 230 does not require dismissal, *see supra* 4, the Medalist Defendants do not reargue Section 230 immunity here (though the corporate Medalist Defendants adopt the prior Section 230 arguments by the individual Medalist Defendants).  However, if the First Amended Complaint (or any part of it) is not dismissed as to them, the Medalist Defendants reserve all rights to reassert their Section 230 defense if the case moves beyond pleading stage, as the Court indicated would be proper.  Dismissal Order 9 ("Plaintiffs have sufficiently alleged facts … overcoming a finding of CDA 'immunity' *at this stage of the case*.") (emphasis added).  *See also id.* (based on what "Plaintiffs have alleged," the "issue of CDA immunity cannot be resolved on a Rule 12(b)(6) motion").

## II.     PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

### A.     The Right-of-Publicity Claims Fail.

The right-of-publicity claims (Counts IX & X), premised solely on allegations that ads third-party traffickers posted to Backpage.com "displayed" the Doe Plaintiffs' "image[s], photograph[s] … and likeness[es]," FAC ¶¶ 144-45, 151-52, 219-20, fail to state a claim. Like its common law counterpart, Section 540.08 requires a plaintiff to show publication by the defendant for "trade or [a] commercial or advertising purpose."[13]  Florida courts "interpret[] the statute's commercial purpose requirement to require that a defendant's unauthorized use 'directly promote' a product or service." *Almeida*, 456 F.3d at 1325 (citations omitted).  Here, however, the First Amended Complaint contains no plausible allegations that Backpage.com published photos of Doe #1 or Doe #2 to "directly promote" its own product or service. *Id.*[14]  Rather, the Doe Plaintiffs allege that *third-party traffickers* used their photos "with an advertisement" to sell them for sex.  FAC ¶ 144; *see also id.* ¶ 151.

Doe #1 and Doe #2 therefore fail to state a legally cognizable claim for the same reasons the First Circuit rejected plaintiffs' right-of-publicity claims in *Doe v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017).  There, applying Massachusetts and Rhode Island law,[15] the court held "there is no basis for an inference that

---

[13]  Fla. Stat. § 540.08(1).  Florida's statutory and common law rights of publicity are "substantially identical." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320 n.1 (11th Cir. 2006); *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1260 (S.D. Fla. 2010).

[14]  Additionally, it is not alleged such use was to commercially benefit any Medalist Defendant—another manifestation of the First Amended Complaint's deficient pleading.

[15]  Under the law of all three states, which in all relevant respects is identical, (1) a right of publicity claim lies only when the defendant uses plaintiff's image or likeness for defen-

Backpage appropriated the commercial value of the [plaintiffs'] images. Although Backpage does profit from the sale of ad[s], *it is not the entity that benefits* from the misappropriation." 817 F.3d at 27 (emphasis added). Rather, "[a] publisher like Backpage is 'merely the conduit,'" while "the party who actually benefits … is *the advertiser*." *Id.* (citation omitted; emphasis added). *See also id.* ("There would be obviously deleterious consequences to a rule placing [] media, such as … websites, at risk of liability every time they sell an ad [] to a party who engages in misappropriation of another's likeness.").

The Eleventh Circuit's holding in *Almeida*—which affirmed dismissal of the same right-of-publicity claims under Florida law as are asserted here—is to similar effect. In that case, the plaintiff sought to hold Amazon.com liable for publishing a photo of her online that appeared on the cover of a book advertised for sale at the site. 456 F.3d at 1318-19. Rejecting arguments that this was actionable "commercial" use because Internet retailers use such content to promote sales and their "brand identity," *id.* at 1325, the court held the use was "merely incidental to, and customary for, the business of internet book sales." *Id.* at 1326.

**B.     The Defamation Claim Is Time-Barred, and the Doe Plaintiffs' Other Claims Based on Publication are Barred by the Single Action Rule.**

The defamation claim (Compl. Count VII) must be dismissed on the independent ground that it is time-barred as to both Doe #1 and Doe #2 under Florida's two-year statute of limitations. *See* Fla. Stat. § 95.11(4)(g); *Giordano v. Romeo*, 76 So. 3d 1100 (Fla. 3d DCA 2011). Events giving rise to the defamation claim as to Doe #1 allegedly took place

---

dant's *own commercial benefit*; (2) "incidental" use is not actionable; and (3) defendant's conduct as a profit-making enterprise is irrelevant. *Compare Doe*, 817 F.3d at 26-27 (Massachusetts and Rhode Island law) *with Almeida*, 456 F.3d at 1324-26 (Florida law).

March 30, 2013, the date on which the Doe #1 ad allegedly posted.  FAC ¶¶ 143-44.  The

original Complaint was filed *February 7, 2017*—almost two years too late.  Similarly, Doe

#2 alleges she "was trafficked on Backpage in January and February of 2016,"[16] yet did not

bring her claims until April 30, 2018, more than 2 years later, when they were added in the

First Amended Complaint.  This cannot be remedied based on subsequent publications or

continuing publication, *see* FAC ¶ 207 (alleging defendants "failed to remove the defamatory

matter"), nor salvaged by arguing either Doe Plaintiff discovered grounds for a defamation

claim only at a date later than initial publication.  Under Florida's single publication rule, the

two-year limitations period runs from first publication—*not* subsequent publication or sub-

sequent discovery of alleged defamatory matter.  *See* Fla. Stat. § 770.07; *Wagner, Nugent v.*

*Flanagan*, 629 So. 2d 113 (Fla. 1993).  This claim accordingly must be dismissed.  *See, e.g*.,

*LaGrasta v. First Union Secs., Inc*., 358 F.3d 840 (11th Cir. 2004).

   Plaintiffs' other causes of action predicated on the same allegations as the defamation

claim (*i.e*., allegedly defamatory posting of ads concerning the Doe Plaintiffs), also fail under

Florida's "single action rule."  *See Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. 4th

DCA 1983); *Fridovich v. Fridovich*, 598 So. 2d 65, 69-70 (Fla. 1992).  The rule "prevents

[plaintiffs] circumventing the short two-year statute of limitations by re-describing a slander

action to fit a different category of intentional wrong."  *Kamau v. Slate*, 2012 WL 5390001,

at *7 (N.D. Fla. Oct. 1, 2012), *adopted*, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012).  For

example, a defamation claim "cannot be re-characterized in additional, separate counts"

---

[16] FAC ¶ 39; *see also* FAC ¶ 14 (Doe #2 "was a victim of Backpage … in early 2016");
*id*. ¶¶ 150, 152-53.

including "intentional infliction of emotional distress" where "the claim arises from the same publication." *Id.  See also Trujillo v. Banco Cen. Del Ecuador*, 17 F. Supp. 2d 1334, 1339-40 (S.D. Fla. 1998) (dismissing false light invasion of privacy claim based on single action rule, even though defamation claims survived dismissal).  In this case, the Doe Plaintiffs' claims for false light invasion of privacy (*see* FAC ¶ 216), outrage (*id.* ¶ 211), right of publicity (*id.* ¶¶ 215, 219), conspiracy (*id.* ¶ 223), and negligence (*id.* ¶ 227), are all predicated on the same facts as the defamation claim—as is now made even clearer by the First Amended Complaint's inclusion of paragraph-number cross-citations in each Count —and those counts accordingly must be dismissed under the single action rule.

### C.    The Outrage and Negligence Claims are Not Sufficiently Pled.

Even were they not barred as predicated on the same facts as the defamation claim, the First Amended Complaint's counts for outrage and negligence fail to plead key elements of those torts.  For outrage in Count VIII, which is the same cause of action as intentional infliction of emotional distress, *Valdes v. GAB Robbins N. Am., Inc.*, 924 So. 2d 862, 865-66 (Fla. 3d DCA 2006), Florida law requires Plaintiffs to plead sufficient facts to allege extreme and outrageous conduct, intent to cause, or reckless disregard of the probability of, emotional distress, severe emotional distress, and that the conduct complained of caused plaintiff severe emotional distress.  *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1269 (S.D. Fla. 2017).  This Court has noted that Florida common law on the tort of outrage "has evolved an extremely high standard."  *Merrick v. Radisson Hotels Int'l, Inc*., 2007 WL 1576361 (M.D. Fla., May 30 2007).  Here, Does #1 and #2 (the only Plaintiffs advancing the outrage claim) do not allege any of the Medalist Defendants intended to cause emotional distress, or that

they recklessly disregarded the probability of it.  Plaintiffs do allege "intentional or reckless" hosting of ads, including ads alleged to involve Does #1 and #2, FAC ¶ 211, but that relates only to intent in operating Backpage.com, not intention that it have any particular impact, or reckless disregard of such impact coming to pass.  This cannot suffice to state a claim for outrage under the "rather stringent test" that "Florida courts have set forth." *Stanfield v. SunTrust Bank*, 2016 WL 899279, at *5 (M.D. Fla. Mar. 2, 2016).  *See also infra* 16-17 (discussing causation failings pertinent to both outrage and negligence claims).

For the negligence claim in Count XII, Plaintiffs must allege four elements:  a duty, breach of that duty, causation, and damages.  *Virgilio v. Ryland Grp.*, 680 F.3d 1329, 1339 (11th Cir. 2012).  Plaintiffs allege "Defendants [all of them, lumped together] have a duty to avoid facilitating human trafficking and a duty to follow Florida's anti-trafficking criminal statutes," FAC ¶ 226, but as explained *infra* §§ II.E & G, the Medalist Defendants cannot be held liable for violating federal trafficking laws, and the Plaintiffs do not even identify a state law purported to give rise to this duty.  *Cf. Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1162-63 (S.D. Fla. 2009) ("Plaintiffs must explain [each defendant]'s individual duty …, as well as their individual breaches of that duty, to state a claim for negligence against them.").

Moreover, "the general rule is that a party has no legal duty to prevent the misconduct of third persons."  *K.M. ex rel. D.M. v. Publix Super Markets, Inc.*, 895 So. 2d 1114, 1117 (Fla. 4th DCA 2005).  The First Amended Complaint makes clear that ***all*** of Plaintiffs' damages were produced by third-party conduct.  In the very next paragraph after attempting to assert a duty, Plaintiffs allege it was "traffickers" who "poste[ed] ad[s] selling trafficked adults and children."  FAC ¶ 227; *see also*, *e.g.*, *id.* ¶¶ 112-16, 142-45, 150-51.  Elsewhere in

the First Amended Complaint, they allege the direct causes of harm to the Doe Plaintiffs, and to Florida Abolitionist's clients, came from individuals who responded to ads by raping those who were trafficked therein. *Id*. ¶¶ 13-14, 38-39, 112-16, 145-48, 152, 155-56.[17]

The outrage and negligence claims also fail because each requires pleading Medalist Defendants caused the harm complained of, *see supra* 14 (citing *Blair*, 212 F. Supp. 3d at 1269); *supra* 15 (citing *Virgilio*, 680 F.3d at 1339), but Plaintiffs' allegations on that point are conclusory and thus fail to state a claim. *See supra* 7 (citing *Miljkovic*, 791 F.3d at 1297; *Irvin*, 496 F.3d at 1205-06). Specifically, they make only bare assertions that "Defendants' conduct caused emotional distress," that the individual Plaintiffs "suffered substantial … damage" and "were harmed and suffered damages" "[a]s a direct and proximate cause of Defendants' conduct," FAC ¶¶ 213-14, 229, and that "[a]s a direct and proximate cause of Defendants' conduct, [] Florida Abolitionist was harmed and suffered damages." *Id*. ¶ 228. No explanation is offered for *how* these harms were caused or—importantly—how the conduct of the Medalist Defendants could be the legal cause of Plaintiffs' harm given the illegal intervening conduct that directly caused their injuries, as outlined above. *See supra* 15-16. As courts considering torts alleged against online platforms that host third-party content have noted, "[c]ommunication services and equipment" are "highly interconnected with modern economic and social life, such that the[ir] provision … could be expected to cause ripples of harm to flow far beyond the defendant's misconduct." *Fields v. Twitter, Inc.*, 881 F.3d 739,

---

[17] Even insofar as "Florida recognizes the special relationship exception to the general rule of non-liability for third-party misconduct," *K.M.*, 895 So. 2d at 1117 (citing Restatement (Second) of Torts, §§ 314A-320), Plaintiffs do not allege that a special relationship with the Medalist Defendants existed, nor could they. *See id*. at 1117-19.

749 (9th Cir. 2018).  *See also Herrick v. Grindr, LLC*, 2018 WL 566457, at *11 (S.D.N.Y. Jan. 25, 2018).  However, only a "direct relationship [between] the injuries that Plaintiffs [] suffered" and the service provided can satisfy proximate cause.  *Twitter*, 881 F.3d at 749.  No such relationship is present here given the intervening malfeasance of third-party criminals.[18]

### D.    The Civil Conspiracy Claim Fails.

Plaintiffs also fail to plead a cognizable claim for civil conspiracy (Count XI), even if it were not barred by the single action rule.  Civil conspiracy "requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) … some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts [] under the conspiracy."  *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391, at *23-24 (M.D. Fla. Apr. 6, 2010) (quotation marks and citation omitted), *aff'd*, 451 F. App'x 862 (11th Cir. 2012).  Plaintiffs rest their conspiracy claims on vague allegations that "Defendants had an agreement between themselves and an agreement with trafficker co-conspirators to traffic children and coerced adults," FAC ¶ 222, but never identify the "who, what, when, where, and how" of this supposed agreement.

While the Complaint dubs various third-parties who allegedly committed sex crimes Defendants' "co-conspirators," *see id.* ¶¶ 112-16, Plaintiffs make no effort to identify any specific "agreement(s)" between defendants and these alleged co-conspirators.  Plaintiffs also identify supposed co-conspirator traffickers *other than* those involved with the injuries of

---

[18]  This failure of proximate cause applies equally to all of the Plaintiffs' causes of action that require causation.  *See* FAC ¶ 181 (Count I – sex trafficking), ¶¶ 186-87, 192-93, 196-97, 199-200 (Counts II-V – RICO), ¶ 205 (Count VI – aiding and abetting involuntary servitude), ¶ 210 (Count VII – publisher liability), ¶¶ 217-18, 221 (Counts IX-X – false light right to privacy/publicity), ¶ 224 (Count XI – conspiracy).

Does #1 and #2 and then describe, not agreement with the defendants, but simply various acts by traffickers.  FAC ¶¶ 112-15.  For Plaintiffs themselves, the First Amended Complaint offers a bare statement that "traffickers responsible for trafficking Plaintiff Doe #1, Plaintiff Doe #2, and Plaintiff Florida Abolitionist's clients on Backpage also constitute Defendants' co-conspirators."  *Id.* ¶ 116.  Such "[c]onclusory allegations of an agreement are not sufficient to state a cause of action for conspiracy."  *Pierson*, 2010 WL 1408391, at *23-24; *accord Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 2008 WL 1817294 (M.D. Fla. Apr. 22, 2008).[19]  For all of these reasons, the civil conspiracy claim must be dismissed.

### E.       The Sex Trafficking Claim Fails.

For similar reasons, the Doe Plaintiffs' sex trafficking claim under 18 U.S.C. § 1595 in Count I fails.  It is alleged that Backpage.com, LLC and the Individual Defendants (again, without alleging who did what, specifically) are liable for violating the statute because they knowingly hosted ads concerning Doe #1 and Doe #2.  *See* FAC ¶¶ 176-81.  But, as the government explained in defending amendments to Section 1591 in another case involving Backpage.com:  "Even if an ad[] for illegal sex trafficking appeared on [a] website," a violation does not exist "without proving that [it] *knew that the advertisement at issue* related to illegal sex trafficking of a minor or of a victim of force, fraud, or coercion."  DOJ's Reply in Supp. of Mot. to Dismiss at 11 ("DOJ Brief"), *Backpage.com, LLC v. Lynch*, No. 1:15-cv-

---

[19]  The First Amended Complaint also includes allegations with co-conspirators that fall well outside the statute of limitations for conspiracy.  FAC ¶¶ 111-15.  *See Hayward v. Lee Cty. Sheriff's Office*, 2017 WL 6550866, at *2 (M.D. Fla. Oct. 30, 217) (noting four-year statute of limitations for civil conspiracy).  To the extent that Plaintiffs attempt in the First Amended Complaint to tie the conspiracy and RICO claims, the RICO claims, too, have 4-year statute of limitations, *see, e.g.*, *A.L. v. Shorstein*, 2017 WL 526618, at *2 (M.D. Fla. Feb. 9, 2017), which is another reason they fail.  *See also infra* § F.

2155, ECF No. 13 (D.D.C. filed Apr. 15, 2016) (emphasis added)); *accord Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 109 (D.D.C. 2016).

Here, the First Amended Complaint has no plausible allegation that, of the millions of ads Plaintiffs allege posted on Backpage.com each month, *see* FAC ¶ 63, Defendants saw the ads involving Does #1 and #2 and specifically knew they "related to illegal sex trafficking of a minor or of a victim of force, fraud, or coercion."  DOJ Brief at 11; *see also* FAC ¶¶ 176-77.  And even if seen, nothing is alleged at all about the ads' content, let alone facts suggesting that anyone viewing them would know from the content alone that they necessarily "related to illegal sex trafficking," that the activity proposed arose from "force, fraud or coercion," or that a minor was depicted.  At most, Plaintiffs allege generic knowledge about ads at the site generally, and about how the website is alleged to have operated overall.  *See* FAC ¶¶ 177-80 & paras. cross-cited therein; *cf. id*. ¶ 202 (allegation based on "general awareness" of third parties' use of site).[20]

If anything, the volume of third-party postings at Backpage.com that Plaintiffs allege, and the routine processing of posted ads they describe, make it *less* likely—not more likely—that the defendants sued (and the Medalist Defendants in particular) had any awareness of the single specific ad involving Doe #1, or the single specific ad involving Doe #2, as alleged in the First Amended Complaint.  As Congress recently recognized in further amending Section

---

[20]  As a result, allegations of knowledge about the alleged ad involving Doe #1 and of the alleged ad involving Doe #2 presume *all* ads in Backpage.com's former "adult" category were for illicit sexual activity, but that premise has been repeatedly rejected.  *Backpage.com v. Dart*, 807 F.3d at 234 ("not all advertisements for sex are advertisements for illegal sex"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1279  (W.D. Wash. 2012) ("an advertisement for escort services may be just that"); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009); *Cohen v. Board of Supervisors*, 707 P.2d 840, 852 (Cal. 1985).

1591, the statute's knowledge requirement is difficult to prove because "online ad[s] rarely, if ever, indicate that sex trafficking is involved." H.R. Rep. No. 115-572, at 5 (Feb. 20, 2018) ("indicia of knowledge of criminality are typically lacking"). Plaintiffs Doe #1 and #2 give no hint that anything in the alleged ads involving them conveyed such knowledge (or that the Medalist Defendants saw them). Because this means the First Amended Complaint still lacks the requisite allegations of scienter, this claim must be dismissed.

### F.     The RICO and RICO Conspiracy Claims are Facially Flawed.

Plaintiffs fail to plead cognizable claims under RICO, which prohibits certain conduct involving a "pattern of racketeering activity." To state a civil RICO claim, Plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) injury to "business property" (6) that was by reason of the RICO violation. *Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1320 (M.D. Fla. 2017). Civil RICO claims must allege facts sufficient to support all statutory elements for at least two pleaded predicate acts. *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). Further, a civil RICO claim predicated on fraud must plead with the increased particularity that Rule 9(b) requires. *Ellis v. Warner*, 2017 WL 634287, at *9 (S.D. Fla. Feb. 16, 2017). Plaintiffs' claims fail under this framework on several grounds, including failure to allege RICO-cognizable injury, causation, and "operational or management control," as well as failures to plead with specificity where required.

### 1.     Plaintiffs Fail to Plead Cognizable RICO Injuries.

The RICO claims Plaintiffs advance fail because the statute's private right of action is available only to one "injured in his business or property by … a violation." 18 U.S.C.

§ 1964(c).  Also, while RICO conspiracies, and their damages, can be broad, the private right of action applies only if the alleged RICO violation was the proximate cause of Plaintiffs' injury.  *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).  Such proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged."  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010); *see also* 18 U.S.C. § 1964(c).  The First Amended Complaint asserts three types of RICO injuries—(1) injuries to the business and property of Florida Abolitionist, FAC ¶¶ 165-69, 186; (2) personal injuries to Does #1 and #2, *id*. ¶¶ 15, 146-48, 155-56, 187; and (3) personal injury to Ms. Roe based on her daughter's injuries; along with alleged money laundering activities as "but for" causes of the first three injuries, *id*. ¶ 187—but this is facially insufficient.

To adequately plead a RICO injury, Plaintiffs must allege (1) the defendants' alleged misconduct was a "but-for" cause of their injuries, (2) defendants' alleged misconduct was a proximate cause of their injury, and (3) the injury claimed is cognizable under RICO.  All three factors must be present under Section 1964(c).  *See Holmes*, 503 U.S. 267-68.[21]  Even if, reading the First Amended Complaint broadly, "but for" causation is alleged for all injuries enumerated above, Plaintiffs still fail to meet two of the three required pleading elements.

It is axiomatic that personal injuries—and damages flowing from them—are not injuries to "business or property" under RICO,[22] such that pecuniary losses due to personal

---

[21]  This test is sometime referred to as RICO standing, which is distinct from Article III standing.  Because the RICO claims appear for the first time in the First Amended Complaint, the court has not considered either Article III or RICO standing as to these claims.

[22]  *See Connor v. Halifax Hosp. Med. Ctr.*, 135 F. Supp. 2d 1198, 1209 (M.D. Fla. 2001), *aff'd*, 45 F. App'x 878 (11th Cir. 2002) (rejecting RICO claim against health care providers accused of intentionally administering excessive doses of morphine to patients receiving

injuries are not compensable under RICO. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565-66 (6th Cir. 2013) (*en banc*). "This means that even if plaintiffs lost wages or business opportunities because of [] personal injuries, those damages do not qualify under [] RICO[.]" *Lawson v. Rubin*, 2018 WL 2012869, at *9 (E.D.N.Y. Apr. 29, 2018). The injuries to the Doe Plaintiffs and Ms. Roe are all clearly personal injuries. The same legal principle applies to Florida Abolitionist, which alleges business or property injuries because an increase in trafficking victims meant it had to divert resources from other (non-trafficking) clients. *See* FAC ¶¶ 16, 157-69, 186, 192, 196, 199, 224, 228. Yet even Florida Abolitionist's injuries flow from the personal injuries of their constituency.[23] Moreover, speculative lost opportunities are not cognizable. *See, e.g., Magnum v. Archdiocese of Phila.*, 253 F. App'x 224 228-29 (3d Cir. 2007) (affirming dismissal of RICO claims where plaintiffs—victims of molestation and coordinated cover-up—lost opportunity to bring tort claims). And in that regard, Florida Abolitionist's estimates of those it aided whom it believes to have been trafficked through ads posted on Backpage.com, and the related diverted resources, *e.g.*, FAC ¶ 167-169, are wholly speculative, and thus cannot support a claim.

### 2.    Plaintiffs Plead No RICO Causation.

Even giving Plaintiffs' allegations the broadest deference, the First Amended Complaint also does not adequately plead causation under RICO. This is illustrated by the recent

---

hospice care); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999) (smokers could not prevail in a RICO action because their injuries were "personal in nature" even if they were "direct personal injuries").

[23] *See Jackson*, 731 F.3d at 565-66. Even where a plaintiff loses "business opportunities due to personal injuries, those damages do not qualify." *Lawson*, 2018 WL 2012869, at *9.

decision dismissing RICO claims in *Lawson*, which held that the kind of sex trafficking alleged here cannot satisfy proximate causation.   In that case, it was alleged defendants formed a RICO enterprise (and were part of a RICO conspiracy) through which they coerced plaintiffs (and others) to travel to New York to meet their assailant under the guise of fetish photography, modeling, and companionship.  *Lawson*, 2018 WL 2012869, at *1.  The enterprise's real agenda, however, it was alleged, was to transport women across state lines so that Rubin could intoxicate, beat, and rape them.  *Id*.  The defendants who made up the enterprise were alleged to have recruited the victims, transported them, drafted non-disclosure agreements they signed, and rented the location where the assaults occurred.  Plaintiffs alleged all the defendants benefitted, because they were paid to assist in carrying out the enterprise.  *Id*.  Yet the RICO claims against them failed to state a claim.  *Id*. at *10-14, *21.

As in *Lawson*, Plaintiffs here allege a criminal conspiracy to enable the crimes of sex traffickers.  But unlike *Lawson*, where it was alleged defendants actually interacted with the victims, the Medalist Defendants are not alleged to have met or ever actually communicated with any Plaintiff.  Yet in *Lawson*, even with direct contact, proximate causation could not be alleged.  The court explained that:

> All of plaintiffs' alleged injuries—including any … which forced them to take time off work or to stop [] permanently—were directly caused by [the person who committed the] physical assaults.  Any of the acts of fraud or trafficking or any other predicate that plaintiffs allege, even if proven, would be mere but-for causes, 'well beyond the first step' of causation and therefore too remote from the alleged harm to qualify under RICO.

*Id*. at *10 (citing *Hemi Grp.*, 559 U.S. at 8-10; *Holmes*, 503 U.S. at 268).  The same is true of any contribution of the Medalist Defendants to the "enterprise" Plaintiffs allege.  All alleged harms ultimately trace to the actions of traffickers and abusers of Does #1 and #2, and of

Florida Abolitionist's other clients, while the Medalist Defendants' role is too removed from those direct harms.  In fact, Florida Abolitionist's causation is even more attenuated, as their purported injuries come exclusively from treating personal injuries committed by the sex traffickers.  The RICO claims thus fail for inability to allege proximate causation.

### 3.   The RICO Claims Fail to Allege "Operational or Management Control."

The RICO claims against the Medalist Defendants also fail because the First Amended Complaint does not plead that they exerted operational or management control over the RICO enterprise.  A RICO defendant is only liable if it "participated in the operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). "Thus, '[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO.'"  *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996) (quoting *University of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993)).

In *Reves*, the Supreme Court held an accounting firm did not participate in the RICO defendant's management or operation, and thus was not liable under RICO, even though its accountants knowingly overvalued assets on the corporation's balance sheet to misrepresent the corporation as solvent.  507 U.S. at 175, 186.  Similarly, in *Lawson,* a RICO claim failed where a defendant was alleged to have drafted documents to attempt to silence victims of sex trafficking.  2018 WL 2012869, at *10-11.  Here, the allegations in the First Amended Complaint make clear that the Medalist Defendants lacked operational or management control of the alleged enterprise.  Their role was—at best—entirely ancillary to the alleged trafficking and assaults of Plaintiffs Doe #1 and Doe #2 (and Florida Abolitionist's clients).

*See* FAC ¶¶ 119, 121, 172(e), 191.  Regardless of what the Medalist Defendants are alleged

to have "known" of the activities of traffickers and their clientele, *see* FAC ¶¶ 121, 125, 128-

29, 134, 138, 141, 172(e), no RICO claim lies against them.

### 4.     The RICO Claims Fail to Satisfy Rules 9(b) and 9(f).

The RICO claims fail, especially with regard to the Medalist Defendants, insofar as

the First Amended Complaint relies on money laundering as a predicate, because Plaintiffs

fail to plead with the specificity required by Rules 9(b) and 9(f).  It has been held "[m]oney

laundering allegations underlying a civil RICO claim need not satisfy the heightened parti-

cularity standard in Rule 9(b) … *unless* the specified unlawful activity" triggers it.  *Ellis*,

2017 WL 634287, at *9 (emphasis added).[24]  "When the underlying allegations assert claims

… akin to fraud, the … standards of Rule 9(b) apply."  *Devine*, 233 F. Supp. 3d at 1320.[25]  In

such cases, there "must be a sufficient statement of each defendant's specific conduct."

*Viridis Corp. v. TCA Global Credit Master Fund, L.P.*, 155 F. Supp. 3d 1344, 1362 (S.D.

Fla. 2015); *see also id*. at 1361 (enumerating 9(b) pleading requirements).  Here, Plaintiffs

allege money laundering as fraudulently concealing the nature of transactions and the identity

---

[24] *Accord West 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *10 (S.D.N.Y. Sept. 29, 2004) ("plaintiff need not allege money laundering with [] particularity *where [it] is not premised on fraud*") (citing *Casio Computer Co. v. Sayo*, 2000 WL 1877516, at *16-17 (S.D.N.Y. Oct. 13, 2000)) (emphasis added).

[25] *See also Best Deals on TV, Inc. v. Naveed,* 2007 WL 2825652, at *7 (N.D. Cal. Sept. 26, 2007) ("Most courts have held that allegations of money laundering must satisfy Rule 9(b)'s requirements because [it] involves an element of fraud."); *Lorber v. Winston*, 962 F. Supp. 2d 419, 439 (E.D.N.Y. 2013) (to satisfy Rule 9(b) for pleading fraud in a RICO com-plaint, predicate criminal acts such as money laundering must be alleged with particularity); *Nunn v. Satrom*, 2012 WL 12914317, at *6 (D.N.D. Oct. 26, 2012) (dismissing RICO claims in part because Nunn "failed to plead with specificity claims for … money laundering").

of companies, FAC ¶¶ 138, 141, but not the "who, what, when, where, and how" of the relevant conduct, *compare*, *e.g.*, *Naveed*, 2007 WL 2825652, at *8-9, even though Rule 9(b) clearly requires it in this context. *See Ellis*, 2017 WL 634287, at *7-9.

Plaintiffs allege laundering occurred "to fool credit card companies into believing [] Backpage-associated charges were being incurred on different websites, to route Backpage-related payments and proceeds through bank accounts [of] seemingly unconnected entities." FAC Ex. B, ¶¶ 14-15; FAC ¶ 6 (alleging "launder[ing] money by tricking credit card companies") (quoting Ex. B) (internal quotation marks omitted). As to Cereus specifically, all money laundering allegations exclusively involve purported fraud. For example, in citing Ferrer's guilty plea, Plaintiffs note the Medalist Defendants' purported goal was to "fool credit card companies" by concealing the true nature of transactions, FAC ¶ 172.e, and in alleging its role with regard to proceeds of the enterprise, Plaintiffs describe "obscuring the source and destination of transactions." *Id.* ¶ 191. In fact, Plaintiffs allege that Medalist Defendant Cereus was established *solely* to conceal the true nature of transactions. *Id.* ¶¶ 119, 121. Yet these money laundering allegations are not pled with specificity, but only describe bare outlines of a fraudulent scheme, contrary to Rule 9(b)'s pleading require-ments.[26] Even the allegations of editing and moderation at the core of Plaintiffs' claims—including their RICO claims—center on fraud and deception, and thus must be pled with

---

[26] Additionally, although Plaintiffs sketch out Cereus' alleged role in the laundering as noted above, their RICO counts still "merely lump multiple defendants together," even though in the RICO fraud context "Rule 9(b) … requires plaintiffs to differentiate their alle-gations … and inform each defendant separately of … his alleged participation in the fraud." *Naveed*, 2007 WL 2825652, at *11 (internal editing omitted, new editing supplied); *see also Viridis Corp.*, 155 F. Supp. 3d at 1362 (lumping defendants together fails to satisfy Rule 9(b) heightened pleading). *Compare*, *e.g.*, FAC ¶ 191.

specificity.[27] And yet Medalist Defendants Medalist, Camarillo, Lacey, and Larkin are not alleged to have done anything in the money laundering allegations.  *See* FAC ¶¶ 117-23.[28]

Similarly, Plaintiffs fail to satisfy Rule 9(f), which provides that allegations of time are material when testing a pleading's sufficiency, and thus must be specially pled.  *See* Fed. R. Civ. P. 9(f).  Plaintiffs allege RICO causes of action spanning from 2009 to the present. FAC ¶ 182.  Not only did Cereus not exist in 2009 (or several years thereafter), nothing in the First Amended Complaint alleges *any* specific time for *any* of the Medalist Defendants' alleged conduct.  Against this backdrop, the First Amended Complaint's RICO claims are not sufficiently pled as to the Medalist Defendants and must be dismissed.

### G.      The Claim for Aiding and Abetting Involuntary Servitude Fails.

The claim in Count VI by Doe #1 for aiding and abetting against Backpage.com, LLC and the "Individual Defendants" (*i.e.*, the same group the Court earlier held were improperly "lumped together," Dismissal Order, 9) fails for much the same reasons as the sex trafficking claim.  Consistent with *Lynch*, 216 F. Supp. 3d at 109, which interpreted the federal sex trafficking law, where liability may affect First Amendment rights, scienter requirements necessitate specific knowledge of each element of an offense for liability to constitutionally attach. *See Smith v. California,* 361 U.S. 147, 151-53 (1959); *United States v. X-Citement Video,*

---

[27] *See*, *e.g.*, FAC Ex. B, p.14 (alleging "editing practices were only one component of an overall … culture and policy of concealing and refusing to officially acknowledge the true nature of … Backpage's … ads").

[28] The closest to an actual allegation is that Backpage.com, LLC "actively laundered money through various entities in order to keep it operational."  FAC ¶ 121.  While Plaintiffs allege through an organizational chart that those entities included Medalist and Camarillo, FAC ¶ 122, there are no allegations of *actions taken* by Medalist and Camarillo, but rather only those taken by Backpage.com.  This cannot satisfy Rule 9(b).

*Inc.*, 513 U.S. 64, 70 (1994); *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015). Here, that requirement is not met, as Doe #1's claim is based on the extent to which the named defendants were only "generally aware of their role" in any alleged involuntary servitude.[29]

To be sure, Doe #1 asserts defendants named in Count VI "knowingly and substantially assisted the violation," FAC ¶ 202, but she makes no allegations detailing what the knowledge specific to Doe #1 supposedly was, or what it rested on. It is similarly alleged those defendants "knowingly and repeatedly aided and abetted the illegal actions of their customers," *id.*, but again without allegation of knowledge specific to Doe #1's traffickers. It is further alleged defendants named in Count VI "conspired with their trafficker-customers, *id.* ¶ 204, but in addition to being stated only as to "customers" generally, and not specifically Doe #1's traffickers, this purported act of "conspiring" did not involve direct communication. Rather, the entire allegation of "conspiring" cites "features such as [Backpage.com's] 'Strip Term from Ad' filter" and how it supposedly "coach[ed] customers." *Id.* (citing FAC ¶¶ 69-70). As the cited portion of the First Amended Complaint makes clear, this is not "coaching customers" but just operation of "automatic filters" that "changed nothing about the true nature" of third-parties' ads. *Id.* ¶ 69. That is not "conspiracy," it is technology.

These failures not only preclude the necessary constitutional scienter for an offense involving expressive activity, they prevent Doe #1 from sufficiently pleading that "defendant[s] intended to aid … commission" of the involuntary servitude offense of Doe #1's traf-

---

[29] FAC ¶ 202. Count VI does make allegations about an ad with purportedly "obvious indications of trafficking and involuntary servitude," *see id.* ¶ 203, but this is specifically noted for an ad of *someone **other*** than Doe #1. The obvious implication of including this allegation in this Count is that the same *cannot* be said of the ad involving Doe #1.

fickers. *United States v. Seabrooks*, 839 F.3d 1326, 1333 (11th Cir. 2016). In this regard, "the aiding and abetting statute, 18 U.S.C. § 2, has been construed to require a specific intent to bring about [the] criminal act." *United States v. Newman*, 490 F.2d 139, 142 (3d Cir. 1974). No such intent specific to Doe #1 or her traffickers is alleged. This is fatal to the claim, as aiding and abetting requires that defendant "became associated with the endeavor and took part in it, intending to ensure its success." *United States v. Spinney*, 65 F.3d 231, 235 (1st Cir. 1995) (citing *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)).[30] For all these reasons, Plaintiffs fail to state an aiding and abetting claim.

### H.     The Loss of Consortium Claim Fails.

Because Doe #2 has not alleged viable claims against the Medalist Defendants as outlined above, Ms. Roe cannot hold them liable for loss of consortium with her daughter. Such claims are derivative actions that stem from the rights of another. *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971). Where a person has no right to recover against a defendant, her relative likewise possesses no right to recover in her loss of consortium claim. *Id.*; *Gomez*,

---

[30] The fact that the "central requirement" of becoming associated with an endeavor and intending its success is "that the defendant consciously shared the principal's knowledge," *Spinney*, 65 F.3d at 235, underscores how lack of allegations of specific knowledge as outlined in the text dooms this claim. *See Newman*, 490 F.2d at 142-43 ("Unknowing participation is not sufficient to constitute an offense under the aiding and abetting statute.").

The First Amended Complaint also does not describe how Medalist Defendants' alleged acts aided and abetted the involuntary servitude. The theory seems to be that traffickers held Doe #1 against her will, and Backpage.com somehow assisted in soliciting customers—but none of that alleges how any Medalist Defendant helped traffickers unlawfully hold Doe #1. *Cf. Hassell v. Bird*, --- P.3d ---, 2018 WL 3213933, at *19 (Cal. July 2, 2018) (rejecting argument "that Yelp is aiding and abetting … by failing to remove" offending third-party content to which it was alerted) (Kruger, J., concurring); *compare* FAC ¶¶ 202-03.

675 F. Supp. 2d at 1163-64; *Ainsworth v. Norris*, 469 F. App'x 775, 778 (11th Cir. 2012). Because the Does' claims must be dismissed, Ms. Roe's claim must be dismissed as well.

I.      **Plaintiffs' Requests for Injunctive Relief Must Be Stricken.**

The request by Plaintiffs in their Prayer for Relief for "preliminary and permanent injunctive relief" cannot be granted.  FAC p.73.  Such remedies are prospective only, and require a showing of (among other things) irreparable harm.  *See*, *e.g.*, *Marine v. Burch*, 2013 WL 5187302, at *2 (N.D. Fla. Sept. 12, 2013); *Church v. City of Huntsville*

, 30 F.3d 1332, 1337 (11th Cir. 1994).  The First Amended Complaint alleges no facts from which any such future irreparable harm can arise.  Plaintiffs admit as much in noting that "federal authorities seized the Backpage website and shut down all activity."  FAC ¶ 3; *see also id.* p.53.  In this connection, the First Amended Complaint attaches as an Exhibit Ferrer's plea with his agreement to shut down the Backpage.com website, surrender all logins and passwords necessary to operate the site, and forfeit all domain names, servers, and other assets necessary to its operation, FAC Ex. B, 3, all of which has occurred (and been trumpeted by the Department of Justice as "seizure" of Backpage.com and affiliated sites, *see* http://www.backpage.com).  There is thus no means by which Plaintiffs can plausibly show "real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury," *Church*, 30 F.3d at 1337, as is required to support a prayer for injunctive relief.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the First Amended Complaint in its entirety, with prejudice.

Respectfully submitted,

_____/s/ Robert Corn-Revere_____
Robert Corn-Revere *(pro hac vice)*
*Lead Trial Counsel*
Ronald G. London *(pro hac vice)*
**Davis Wright Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, DC  20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
            ronnielondon@dwt.com

James C. Grant *(pro hac vice)*
**Davis Wright Tremaine LLP**
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:  (206) 622-3150
Email:  jimgrant@dwt.com

Lawrence G. Walters
Florida Bar No.: 0776599
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (407) 774-6151
Email: Larry@FirstAmendment.com
Email: Paralegal@FirstAmendment.com

Attorneys for Defendants Michael Lacey,
James Larkin, Medalist Holdings, Inc.,
Camarillo Holdings, LLC, and Cereus
Properties, LLC

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed through the CM/ECF system on July 11, 2018, which will serve a copy by email on all counsel of record.  A true and correct copy is also provided via U.S. mail to Carl Ferrer at 2501 Oak Lawn Ave,, Dallas, TX 75219, and to Carl Ferrer and Backpage.com, LLC at 13601 Preston Road, Suite E801, Dallas, TX 75240.

                                      /s/ Robert Corn-Revere
                                 Robert Corn-Revere