# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FLORIDA ABOLITIONIST, INC.; JANE
DOE #1; JANE DOE #2; AND SUSAN
ROE,

                            Plaintiffs,

        -against-

BACKPAGE.COM LLC; CARL FERRER;
MICHAEL LACEY; JAMES LARKIN;
WEBSITE TECHNOLOGIES, LLC;
IC HOLDINGS, LLC; DARTMOOR
HOLDINGS LLC; CAMARILLO
HOLDINGS LLC; ATLANTISCHE
BEDRIJVEN CV; KICKAPOO RIVER
INVESTMENTS, LLC; AMSTEL RIVER
HOLDINGS, LLC; POSTFASTER, LLC;
CLASSIFIED SOLUTIONS LTD;
MEDALIST HOLDINGS, INC; AD TECH
BV; UGC TECH GROUP CV; POSTING
SOLUTIONS, LLC;  AND CEREUS
PROPERTIES LLC,

                            Defendants.

Case No. 6:17-cv-00218-JA-TBS

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO STAY PROCEEDINGS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..........................................................................................................2

LEGAL STANDARD.....................................................................................................5

ARGUMENT ...............................................................................................................7

I.   DEFENDANTS HAVE NOT SHOWN THAT THE FAILURE TO ISSUE A STAY
     WILL AUTOMATICALLY RESULT IN AN ADVERSE JUDGMENT........................7

II.  DEFENDANTS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THAT A
     STAY IS JUSTIFIED BASED ON ANY OTHER FACTORS .......................................10

     1.  Any Factual Overlap Between The Civil And  Criminal Cases Does Not Warrant A
         Stay. ...............................................................................................................11

     2.  The Status Of The Criminal Case Weighs Against A Stay. .........................................13

     3.  Plaintiffs Have Strong Interests In Proceeding Expeditiously And Would Be
         Prejudiced By A Stay.............................................................................................14

     4.  The Medalist Defendants Will Not Be Unduly Burdened Absent A Stay...................16

     5.  The Judiciary's Interests Weigh Against A Stay. ........................................................18

     6.  There Is A Strong Public Interest In Securing Justice For Sex Trafficking Victims....19

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A.B. ex rel. Baez v. Seminole Cty. Sch. Bd.*,
No. 05-cv-802, 2005 WL 2614622 (M.D. Fla. Oct. 14, 2005) ................................6

*Arden Way Associates v. Boesky*,
660 F. Supp. 1494 (S.D.N.Y. 1987) ........................................................................20

*Braswell v. United States*,
487 U.S. 99 (1988) ..................................................................................................10

*Court-Appointed Receive of Lancer Mgmt. Grp. v. Lauer*,
05-cv-60584, 2009 WL 800144 (S.D. Fla. Mar. 25, 2009)................................12, 18

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
685 F.2d 1284 (11th Cir. 1982)...............................................................................14

*Gonzalez v. Israel*,
No. 15-cv-60060, 2015 WL 4164772 (S.D. Fla. July 9, 2015)...............................11

*In re Fin. Federated Title & Tr., Inc.*,
252 B.R. 834 (Bankr. S.D. Fla. 2000).....................................................................16

*Microsoft Corp. v. Sales Int'l LLC*,
No. 06-cv-1672, 2007 WL 9702354 (N.D. Ga. 2007) .............................................12

*Mitchell v. Hunt*,
No. 15-cv-2603, 2016 WL 7396670 (M.D. Fla. Feb. 10, 2016) .........................7, 17

*Ortega Trujillo v. Conover & Co. Commc'ns*,
221 F.3d 1262 (11th Cir. 2000)...............................................................................14

*Pervis v. State Farm Fire & Cas. Co.*,
901 F.2d 944 (11th Cir. 1990)...................................................................................1

*Ray Capital Inc. v. M/V Newlead Castellano*,
No. 416-cv-093, 2017 WL 4819877 (S.D. Ga. Oct. 25, 2017) ...............................16

*Regions Bank v. Kaplan*,
No. 12-cv-1837, 2015 WL 5247809 (M.D. Fla. Sept. 8, 2015) ................7, 9, 12, 14

*S.E.C. v. Incendy*,
936 F. Supp. 952 (S.D. Fla. 1996)...........................................................................18

*S.E.C. v. Spinosa*,
   No. 13-cv-62066, 2015 WL 11181929 (S.D. Fla. Jan. 8, 2015) ........................1, 13

*S.E.C. v. Wright*,
   261 Fed. App'x 259 (11th Cir. 2008).........................................................................1

*Shell Oil Co. v. Altina Assocs., Inc.*,
   866 F. Supp. 536 (M.D. Fla. 1994) ......................................................................6, 8

*Sunbelt Bus. Grp., Inc. v. Coker*,
   No. 09-cv-1229, 2011 WL 1790179 (M.D. Fla. Apr. 19, 2011).........................8, 13

*Tompkins-Holmes v. Gualtieri*,
   No. 17-cv-52, 2017 WL 3065272 (M.D. Fla. July 19, 2017) .............................7, 12

*Transamerica Life Ins. Co. v. Brickman*,
   No. 615-cv-1919, 2016 WL 3552748 (M.D. Fla. June 30, 2016).. 5-8, 11, 12, 14, 19

*United States v. 2,000,000.00 in U.S. Currency*,
   No. 12-cv-1279, 2013 WL 5462320 (M.D. Fla. Oct. 2, 2013) ...............................10

*United States v. Lot 5, Fox Grove, Alachua Cty., Fla.*,
   23 F.3d 359 (11th Cir. 1994)................................................................5, 6, 10, 17

*United States v. Premises Located at Route 13*,
   946 F.2d 749 (11th Cir. 1991)................................................................6, 10, 11, 19

*W. Coast Life Ins. Co. v. Longboat*,
   No. 09-cv-2159, 2010 WL 4942146  (M.D. Fla. Nov. 29, 2010) .............................8

*Whitaker v. Miami-Dade Cty.*,
   No. 13-cv-24450, 2014 WL 12513590 (S.D. Fla. Apr. 23, 2014) .........................15

*Young v. Peraza*,
   No. 15-cv-60968, 2015 WL 4639736 (S.D. Fla. Aug. 4, 2015)..............................14

**Other Authorities**

164 Cong. Rec. H1278 (daily ed. Feb. 27, 2018) ......................................................19

164 Cong. Rec. S1860 (daily ed. March 21, 2018)....................................................20

**Rules**

Federal Rules of Civil Procedure 1 ............................................................................18

Plaintiffs Florida Abolitionist, Inc., Jane Doe #1, Jane Doe #2, and Susan Roe ("Plaintiffs") submit this Memorandum of Law in Opposition to the Motion to Stay Proceedings (the "Motion") filed by Defendants Medalist Holdings, Inc., Camarillo Holdings LLC, Cereus Properties LLC, Michael Lacey, and James Larkin (collectively, the "Medalist Defendants"), and state as follows:

## PRELIMINARY STATEMENT

Nearly a year after the Court denied their request to stay proceedings, certain defendants again seek to stay this case. This time, they invoke Lacey and Larkin's recent criminal indictments for facilitating prostitution and money laundering, claiming that their Fifth Amendment rights will be unduly impinged if this case goes forward. Courts have repeatedly rejected this argument, however, because "the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." *S.E.C. v. Wright*, 261 Fed. App'x 259, 262–63 (11th Cir. 2008). Instead, the Eleventh Circuit "has set a high bar" to delay a civil case during a criminal proceeding: a stay is only appropriate where the criminal defendant "faces *certain loss* of the civil proceedings on summary judgment if the civil proceeding were to continue." *S.E.C. v. Spinosa*, No. 13-cv-62066, 2015 WL 11181929, at *2 (S.D. Fla. Jan. 8, 2015) (citing *Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 946–47 (11th Cir. 1990)) (emphasis added). The Medalist Defendants do not seriously contend that their failure to testify in this matter would result in "certain loss" here, nor do they cite a single case from this district in which this standard has been met. Their Motion should be rejected on this basis alone.

To the extent the Court considers factors beyond this threshold question, a stay is

likewise unwarranted.  Indeed, additional delay is particularly inappropriate in this case because it would deny the Plaintiffs—two of whom are victims of sex trafficking—the ability to seek relief against men who facilitated and profited from their trafficking merely because those men also face prosecution for violating criminal laws.  Such delay is both prejudicial and contrary to the public policy behind the recently enacted the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA"), which expresses a federal interest in permitting victims to pursue prompt and complete justice from Backpage and its affiliates for the site's role in facilitating sex trafficking.

## **BACKGROUND**

Plaintiffs in this action are two sex trafficking victims who were offered for sale on Backpage.com, one victim's mother, and Florida Abolitionist, an organization that provides services to trafficking victims and whose mission includes eliminating human trafficking. The first victim, Jane Doe #1, was held captive by a group of men who had previously used Backpage to sell women.  (Dkt. 86, ¶ 13).  Without Jane Doe #1's permission, those men placed an ad for her on Backpage.  (*Id.*).  Five men responded to that ad and raped Jane Doe #1 repeatedly.  (*Id.*).  The second victim, Jane Doe #2, was 15 years old when she was advertised for sale on Backpage.com.  (*Id.* ¶ 14).  As a result of those Backpage ads, Jane Doe #2 was raped repeatedly over a two-week period.  (*Id.*).  The Medalist Defendants engaged in a course of conduct designed to facilitate the sex trafficking of women and children, including Jane Doe #1 and #2, from which they and their co-defendants earned millions of dollars in profits.  (*Id.* ¶¶ 11, 117).

Jane Doe #1 and Florida Abolitionist filed their original complaint on February 7,

2017, bringing claims against Lacey and Larkin, among others, for violations of laws prohibiting the facilitation of sex trafficking, invasion of privacy, negligence, and civil conspiracy.  On May 5, 2017, Defendants moved to dismiss the complaint, primarily arguing the claims were barred by Section 230 of the Communications Decency Act.  (Dkt. 42).

Soon thereafter, Defendants asked this Court to stay proceedings while their motion to dismiss was pending.  The Honorable Thomas B. Smith denied that request nearly a year ago, on August 11, 2017, noting that "Courts in this district have long disfavored motions to stay discovery because they impede the Court's duty to manage its cases and expedite discovery" and ordering that "[d]iscovery shall move forward in this case, in a single phase." (Dkt. 72, at 3).  Thereafter, Plaintiffs served Defendants with written discovery requests.  On February 21, 2018, Defendants Ferrer, Lacey and Larkin invoked their Fifth Amendment rights and refused to respond to those requests.  *See* Ex. A.  The same day, Backpage.com—a corporate entity with no Fifth Amendment rights (*see* note 4, *infra*)—responded to Plaintiffs' Interrogatories and Requests for Production.[1]  *See* Exs. B, C.

On March 28, 2018, Lacey and Larkin, along with others associated with Backpage, were indicted in the District Court of Arizona for charges related to Backpage's criminal enterprise, including conspiracy, money laundering, and facilitation of prostitution.  (Dkt. No. 86-1, the "Plea Agreement").  Shortly thereafter, on April 5, 2018, Ferrer and Backpage

---

[1] At the time of these discovery responses, counsel from Davis Wright Tremaine LLP ("DWT") and the Walters Law Group represented Backpage.com LLC, Ferrer, Lacey, and Larkin.  These attorneys have since withdrawn from their representation of Backpage.com and Ferrer.  (Dkts. 101-03).  It bears noting that, in at least one other case, DWT has been disqualified as counsel for all defendants due to the irreconcilable conflict between the defendants and the firm's prior access to privileged information from Backpage and Ferrer.  *See* Ex. D, at 13-15 ("[C]ontinued representation of the Medalist Defendants by Davis Wright Tremaine is impermissible pursuant to the Rules of Professional Conduct. . . . Davis Wright Tremaine is disqualified from continuing to represent any other parties in this litigation, including the Medalist Defendants.").

3

pled guilty to conspiracy charges in the District Court of Arizona, and Ferrer subsequently pled guilty to related state criminal charges in California and Texas.  (Dkt. No. 86-2, the "Indictment").  The Indictment describes Defendants Lacey and Larkin's significant ownership interest in Backpage and various related entities, and alleges that Lacey and Larkin engaged in elaborate financial transactions "designed to conceal their misconduct and evade seizure by law enforcement[,]" including moving many assets "offshore."  (*Id.* at ¶¶ 15; 28–30).  The Indictment also alleges that Lacey and Larkin knowingly facilitated prostitution.  (*Id.* at ¶¶ 31–121).  Defendant Ferrer's Plea Agreement similarly details his and his co-conspirators' knowing facilitation of prostitution, including the fact that they edited certain ads to create a "veneer of deniability for Backpage."  (Plea Agreement at 13).  The Plea Agreement also detailed how Ferrer and his co-conspirators, including both Lacey and Larkin, laundered money through Defendant Cereus Properties to circumvent financial institutions that did not want to do business with Backpage.  (*Id.* at 13–14).

On March 31, 2018, the Court issued its opinion on Defendants' motion to dismiss, rejecting Defendants' Section 230 argument but granting Plaintiffs leave to amend to remedy other pleading issues.  (Dkt. 85).  Plaintiffs filed their Amended Complaint on April 30, 2018, adding two new plaintiffs (a child trafficking survivor and her mother) and a number of new corporate defendants affiliated with Backpage, including movants Medalist Holdings, Inc., Camarillo Holdings LLC, and Cereus Properties LLC.  (Dkt. 86).  The Amended Complaint maintained Plaintiffs' prior claims for violations of federal law prohibiting the facilitation of sex trafficking (*id.* ¶¶ 176–81), distributor liability (*id.* ¶¶ 206–10), outrage (*id.* ¶¶ 211-14), invasion of privacy (*id.* ¶¶ 215–18), right of publicity (*id.* ¶¶ 219–21), civil

conspiracy (*id*. ¶¶ 222–25), and negligence (*id*. ¶¶ 226–29), and also brought new claims for

aiding and abetting involuntary servitude (*id*. ¶¶ 201–05), loss of consortium (*id*. ¶¶ 230–31),

and RICO violations (*id*. ¶¶ 182–200).  Additionally, the Amended Complaint contains new

allegations related to Ferrer and Backpage's admissions that a significant portion of

Backpage's revenue was derived from illicit activity and that Defendants routed Backpage-

related payments through companies that they controlled—including movants Cereus

Properties LLC and Camarillo Holdings—in order to circumvent restrictions by credit card

companies that no longer wished to do business with Backpage.  (*Id*. ¶¶ 117–41).

At their request, the Medalist Defendants received two extensions of time to respond

to the Amended Complaint.  On July 11, 2018, they filed the instant Motion and a motion to

dismiss Plaintiffs' Amended Complaint.  (Dkts. 112, 113).

## <u>LEGAL STANDARD</u>

The mere pendency of a criminal case does not justify the stay of civil litigation

because "[i]t is the rule, rather than the exception that civil and criminal cases proceed

together." *Transamerica Life Ins. Co. v. Brickman*, No. 615-cv-1919, 2016 WL 3552748, at

*2 (M.D. Fla. June 30, 2016) (Smith, M.J.) (citation omitted).  In this Circuit, "a court must

stay a civil proceeding pending resolution of a related criminal prosecution only when

'special circumstances' so require in the 'interests of justice.'"  *Id*. (quoting *United States v.*

*Lot 5, Fox Grove, Alachua Cty., Fla*., 23 F.3d 359, 364 (11th Cir. 1994)).  "The very fact of a

parallel criminal proceeding does not alone constitute 'special circumstances.'"  *Id*. (citation

omitted).  This is true even though the criminal defendant faces an adverse inference in civil

litigation for invoking his Fifth Amendment rights, because "[f]orcing an individual to risk

non-criminal disadvantage by remaining silent for fear of self incrimination in a parallel criminal proceeding does not rise to the level of an unconstitutional infringement." *Shell Oil Co. v. Altina Assocs., Inc.*, 866 F. Supp. 536, 540–41 (M.D. Fla. 1994) (citation omitted); *see also Transamerica*, 2016 WL 3552748, at *2 ("The Constitution does not require a stay of civil proceedings pending the outcome of related criminal proceedings.").

Where a defendant claims that his Fifth Amendment concerns create an exception to the usual rule that civil and criminal cases proceed concurrently, the Eleventh Circuit only mandates a stay if the invocation of the Fifth Amendment "would result in 'automatic entry of summary judgment.'" *United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir. 1991). In other words, a stay should only be granted if the party's invocation of the Fifth Amendment will "result in an adverse judgment, not merely the loss of 'the most effective defense.'" *Id.* (citation omitted); *see also Transamerica*, 2016 WL 3552748, at *2 ("Where the invocation of the Fifth Amendment privilege merely results in the loss of a defendant's most effective defense, not the automatic entry of summary judgment, the exception to the general rule does not apply.") (citation omitted). Courts have recognized that this standard is "more narrow" and "less subjective" than that of other circuits. *See, e.g.*, *A.B. ex rel. Baez v. Seminole Cty. Sch. Bd.*, No. 05-cv-802, 2005 WL 2614622, at *1 n.2 (M.D. Fla. Oct. 14, 2005).

Additionally, in determining whether "special circumstances" are present so as to warrant a stay, courts in this Circuit sometimes consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
>
> (2) the status of the case, including whether the defendants

have been indicted;

(3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;

(4) the private interests of and burden on the defendants;

(5) the interests of the courts; and

(6) the public interest.

*Transamerica*, 2016 WL 3552748, at *2.  These factors, however, do not replace this Court's obligation to answer the "ultimate question" to determine if a stay is warranted: "whether the [defendant's] assertion of [the] right against self-incrimination will result in the ***automatic entry of summary judgment***" for the plaintiff.  *Id.* (analyzing the six factors above, but refusing to stay case because this "ultimate question" was not satisfied) (emphasis added).

## ARGUMENT

## I.    DEFENDANTS HAVE NOT SHOWN THAT THE FAILURE TO ISSUE A STAY WILL AUTOMATICALLY RESULT IN AN ADVERSE JUDGMENT

As explained above, the key question here is whether the defendants' invocation of their Fifth Amendment rights will result in "automatic entry of summary judgment" for Plaintiffs.  *Id.* at *2.  Courts in this district have ***unanimously*** held that this standard cannot be met prior to the close of discovery, and have all accordingly refused to stay a civil case at this stage of litigation.[2]  The same result is appropriate here.

---

[2] *See, e.g.*, *Tompkins-Holmes v. Gualtieri*, No. 17-cv-52, 2017 WL 3065272, at *2–3 (M.D. Fla. July 19, 2017) (denying stay because "any negative inference that might be drawn against [the defendant] will not necessitate an adverse judgment against him"); *Transamerica*, 2016 WL 3552748, at *4 ("[T]here are no special circumstances or threat of substantial and irreparable prejudice warranting a stay of this action."); *Mitchell v. Hunt*, No. 15-cv-2603, 2016 WL 7396670, at *1 (M.D. Fla. Feb. 10, 2016) (denying stay because the "motion fails to demonstrate that invoking the Fifth Amendment privilege will automatically result in summary judgment against the defendants"); *Regions Bank v. Kaplan*, No. 12-cv-1837, 2015 WL 5247809, at *2–3 (M.D. Fla. Sept. 8, 2015) ("The possibility that the assertion of the Fifth Amendment privilege may impact the claims and defenses of [defendants] is not sufficient to justify an indefinite stay."); *Sunbelt Bus. Grp., Inc. v. Coker*, No. 09-cv-1229,

7

Although the Medalists Defendants assert that they would face "near-certain loss in the civil proceedings should they invoke their right against self-incrimination" (Mot. at 5–6), they offer no cogent explanation for why this would be true.  Instead, they merely argue that Lacey and Larkin "will invoke their Fifth Amendment rights against self-incrimination when questioned, in discovery and at trial, precisely about the facts critical to nearly all if not all the claims asserted by Plaintiff[s] here."  Mot. at 3.  But this is nothing more than blanket assertion of the defendants' intent to invoke the privilege, which is *not* grounds for a stay in this Circuit.  *See Wright*, 261 F. App'x at 262-63 (a "blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay."); *A.B.*, 2005 WL 2614622, at *2 (denying stay where defendant's "blanket assertion of her privilege against compulsory self-incrimination is insufficient to establish grounds for the issuance of a stay").

Rather than simply relying on the existence of his Fifth Amendment rights, a defendant seeking a stay must "explain[] why each specific claim and defense cannot be proven and substantiated through other testimony or evidence."  *Regions Bank*, 2015 WL 5247809, at *3; *see Lot 5*, 23 F.3d at 364 (movant's "failure to indicate with precision why she did not use other parties' testimony to substantiate her defense was fatal" to motion to stay).  The Medalist Defendants do not even attempt to meet this standard.  Indeed, the closest the Medalist Defendants come to providing any specificity as to why invoking the

---

2011 WL 1790179, at *2 (M.D. Fla. Apr. 19, 2011) ("[A] stay is not warranted in this case."); *W. Coast Life Ins. Co. v. Longboat*, No. 09-cv-2159, 2010 WL 4942146, at *1 (M.D. Fla. Nov. 29, 2010) (denying motion to stay where invocation of Fifth Amendment rights provided "only tenuous support for  a stay"); *A.B.*, 2005 WL 2614622, at *1–2 & n.2 (denying a stay under the "more narrow and less subjective" Eleventh Circuit standard); *Shell Oil*, 866 F. Supp. at 540–41 (denying stay because "[i]t does not appear from the record that the Defendant would be subject to summary disposition of this cause").

privilege would harm their case is a general statement that Lacey and Larkin's "knowledge and intent" is relevant in both this case and the pending criminal matter.  Mot. at 14.  This argument presupposes that the Medalist Defendants have no ability to pursue this defense without their own testimony, entirely ignoring that documents will be produced to shed light on what they knew and other witnesses can testify about what they have seen and heard.[3]  In reality, the Medalist Defendants will have the opportunity to tell their story and present their defense through—at a minimum—documents, other witnesses, and their co-defendants.

But even assuming that Lacey and Larkin's refusal to testify prevented them from substantiating their lack of knowledge or intent, the Medalist Defendants *still* have not shown their entitlement to a stay.  At best, the Medalist Defendants have argued that their lack of knowledge is their "most effective defense"—but the Eleventh Circuit has made clear that even the loss of a defendant's best defense does not justify a stay in these circumstances.  *See Route 13*, 946 F.2d at 756 (the invocation of a defendant's Fifth Amendment rights must "result in an adverse judgment, *not merely the loss of his most effective defense*") (citation omitted; emphasis added).  Indeed, the Medalist Defendants do not argue that this is the *sole* defense available to them, meaning that the loss of that defense cannot possibly result in *automatic* summary judgment for the Plaintiffs.[4]  In fact, their motion to dismiss raises a

---

[3] In fact, Backpage.com admits that in the past three years, it has produced evidence in at least four other actions that may relate to the claims and defenses here.  (Ex. B at 9–10).

[4] Even if these deficiencies could be overcome, there remains a separate problem concerning the Medalist Defendants other than Lacey and Larkin.  Because three of these defendants are corporate entities, they have no ability to seek Fifth Amendment protection.  *See Braswell v. United States*, 487 U.S. 99, 105 (1988); *United States v. 2,000,000.00 in U.S. Currency*, No. 12-cv-1279, 2013 WL 5462320, at *2 (M.D. Fla. Oct. 2, 2013) ("As a business entity, [defendant] does not have a Fifth Amendment right against self-incrimination.").  The Medalist Defendants appear to argue (without admitting) that these corporate defendants (*i.e.*, Medalist, Cereus, and Camarillo) could only be represented through the testimony of Lacey and/or Larkin, who presumably are the "officers and agents" referred to in footnote 12 of the Motion.  *See* Mot. at 14, n.12.  But they have provided no information about the corporate structure of these entities, and at the very least, Plaintiffs are entitled to probe the

number of defenses to Plaintiffs' claims that are entirely unrelated to Lacey and Larkin's

hypothetical testimony (or lack thereof), which they presumably will continue to pursue at

the summary judgment stage if this case is not dismissed.[5]

Defendants' inability to articulate why or how the invocation of the Fifth Amendment

will result in automatic entry of summary judgment means they cannot meet the Eleventh

Circuit's high standard for a stay.  Given the Medalist Defendants' failure to show that they

would inevitably suffer an adverse judgment absent a stay, their renewed motion to stay this

case must be denied.

## II.   DEFENDANTS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THAT A STAY IS JUSTIFIED BASED ON ANY OTHER FACTORS

Courts in this district sometimes weigh six interrelated factors to aid them in

resolving the "[u]ltimate question" of whether the invocation of a defendant's Fifth

Amendment privilege would result in "automatic entry of summary judgment."

*Transamerica*, 2016 WL 3552748, at *2 (quoting *Route 13*, 946 F.2d at 756).  Because the

Medalist Defendants failed to provide any basis to find that invoking Lacey and Larkin's

Fifth Amendment rights would require judgment against them, these factors have little

relevance here.  Nonetheless, should the Court choose to apply these factors, all weigh

---

ownership, structure, and past and present officers and agents of these corporate defendants to determine whether any of these defendants could be deposed through any persons besides Lacey and Larkin.

[5] *See* Dkt. 113, at 11 (arguing that Plaintiffs' right of publicity claim fails because it does not "directly promote" Backpage); *id.* at 12–14 (arguing certain state law claims are time-barred); *id.* at 15-16 (arguing conduct alleged is not sufficiently outrageous and that the Medalist Defendants owe Plaintiffs no duty); *id.* at 17–18 (arguing that allegations of a conspiracy are conclusory); *id.* at 18-20 (arguing that liability cannot attach because Defendants could not have known about the Plaintiffs' specific ads); *id.* at 20–27 (arguing the RICO claims fail due to lack of injury, causation, managerial control, and particularity); *id.* at 27–29 (arguing the involuntary servitude claim fails for lack of specific knowledge); *id.* at 29–30 (arguing the loss of consortium claim fails due to a lack of an underlying claim).

against a stay of this action.

**1.    Any Factual Overlap Between The Civil And
Criminal Cases Does Not Warrant A Stay.**

A stay is not warranted because there is insufficient overlap between this case and the

criminal proceeding against Defendants Lacey and Larkin.[6]   There is, of course, some

factual overlap between these matters given that the Medalist Defendants' conduct harmed

victims both in Arizona where Lacey and Larkin were indicted, and the Plaintiffs in this case.

There are also plenty of differences, given the issues in this case that are unique to Plaintiffs,

including but not limited to the role that Backpage.com played in their trafficking.  More

importantly, regardless of the degree of factual overlap between these proceedings, courts in

this Circuit regularly deny motions to stay civil proceedings even where there is significant

factual overlap between the civil and criminal trials.  *See, e.g.*, *Transamerica*, 2016 WL

3552748, at *2 (stay denied even though there was a "common nucleus of facts" and a "clear

overlap"); *Regions Bank*, 2015 WL 5247809, at *3 (stay denied even though there was "some

overlap" in the civil and criminal cases); *Spinosa*, 2015 WL 11181929, at *2 n.2 (stay denied

even though the civil and criminal cases overlapped "significantly"); *Court-Appointed*

*Receive of Lancer Mgmt. Grp. v. Lauer*, 05-cv-60584, 2009 WL 800144, at *2 (S.D. Fla.

Mar. 25, 2009) (denying motion to stay where "[t]he underlying facts giving rise to the

---

[6] The Medalist Defendant assert (at p. 11) that "this Circuit recognizes the overlap of civil and criminal claims as the 'most critical' factor," but do not cite an Eleventh Circuit case for that proposition—and none of the three out-of-district cases that they do use the language that appears in quotation marks.  *See* Mot. at 8, n.8.  For example, the defendants rely on *Gonzalez v. Israel*, No. 15-cv-60060, 2015 WL 4164772 (S.D. Fla. July 9, 2015), which identifies three "critical factors," including ***both*** the degree of overlap and "the specificity of the invocation of the Fifth Amendment privilege relative to the civil proceeding." *Id.* at *3.  Moreover, to the extent this factor is "critical," it is because overlap between the civil and criminal case is "threshold" requirement for a stay to even be possible since, as the Court noted in *Gonzalez*, "absent such overlap there would be no need for a stay." *Id.* (citation omitted).

11

indictment in the Criminal Action are the same as those alleged" in the civil action);

*Microsoft Corp. v. Sales Int'l LLC*, No. 06-cv-1672, 2007 WL 9702354, at *3 (N.D. Ga.

2007) (stay denied even though the facts and events in the civil and criminal cases were

"almost identical").[7]

      Moreover, while the Medalist Defendants make much of the factual overlap between

these cases, courts must focus on the ***legal*** overlap between the two. *See Tompkins-Holmes*,

2017 WL 638663, at *2 ("[T]he factual overlap between the cases does not mean that there is

a significant overlap in the legal analysis that will be used to resolve the criminal charge and

civil claim"). The Medalist Defendants admit that there are "differing levels of scienter" that

will apply in the criminal and civil proceedings (Mot. at 14), but make no attempt to analyze

the degree of overlap between the criminal charges against them and the claims in this case.

More importantly, the burden will remain on Plaintiffs to establish each element of their

claims, not merely Lacey and Larkin's scienter, and Plaintiffs cannot establish their

entitlement to relief ***solely*** through an adverse inference about scienter. A stay is therefore

not justified based on any overlap between the civil and criminal cases. *See Thompkins-*

*Holmes*, 2017 WL 3065272, at *3 (denying a stay where a potential adverse inference would

not be case-dispositive because "a party seeking summary judgment must establish

independently the elements of the claim") (citation omitted); *Sunbelt*, 2011 WL 1790179, at

*2 (denying a stay because the plaintiff "will still be required to prove each element of [its

---

[7]  Although the Medalist Defendants misleadingly argue that "the indictment [of Lacey and Larkin] is central to [Plaintiffs] claims" (Mot. at 10), the allegations in the Amended Complaint derive from and merely expand upon the original complaint, which was filed in February 2017—nearly a year before the grand jury indictment of Lacey and Larkin was unsealed.

claims] before a judgment can be entered").

> **2.     The Status Of The Criminal Case Weighs Against A Stay.**

A stay in these proceedings until Defendants Lacey and Larkin stand trial on criminal charges would cause a protracted and prejudicial delay.  Those defendants' criminal trial is currently scheduled to begin in 2020, and there is no way to know whether that trial date will be extended in the future.  In assessing whether the "status of the case" warrants granting a stay, courts examine both whether a defendant has been criminally indicted as well as the projected timeline for resolving that criminal prosecution.  Indictments and a pending trial date alone are not enough to warrant significantly delaying justice for Plaintiffs.  *See Spinosa*, 2015 WL 11181929, at *1 (holding that a criminal defendant who was indicted after civil litigation began failed to satisfy the Eleventh Circuit's "high bar" to justify a stay when his criminal trial was scheduled to begin in a year); *Regions Bank*, 2015 WL 5247809, at *3 (refusing to issue a stay despite the fact that criminal indictments were issued after litigation began because the "possibility that the assertion of the Fifth Amendment privilege may impact the claims and defenses of [defendants] is not sufficient to justify an indefinite stay" during the pendency of a criminal case).

When a criminal trial date is set far into the future or subject to additional continuances, courts have found the "status of the case" to weigh against a stay because stopping the civil case pending resolution of the criminal trial risks a protracted delay.  *See Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000) (a related criminal case, which was pending for over a year, was "not progressing quickly," thereby making the stay "indefinite in scope"); *Transamerica*, 2016 WL 3552748, at *2

(where a court does not know when a criminal case will be resolved, the plaintiff "is asking

for an indefinite stay which is a form of relief not favored by the Court").  Here, the criminal

trial against Defendants Lacey and Larkin does not begin for ***at least*** another sixteen months.

This action was filed in February 2017—long before the start of the criminal proceeding,

which has been underway for less than four months.  The respective status of the civil and

criminal proceedings therefore counsels against a stay.  *See Spinosa*, 2015 WL 11181929, at

*1 (refusing a stay when the criminal case was initiated "well after this litigation began").

### 3.      Plaintiffs Have Strong Interests In Proceeding Expeditiously And Would Be Prejudiced By A Stay.

Plaintiffs face a concrete risk of prejudice from delay that will only be magnified with

time.  Any delay here will make it increasingly unlikely that Plaintiffs will be able to recover

from the Medalist Defendants.  As revealed by the recent indictment, the Medalist

Defendants already engaged in a number of schemes to hide their substantial assets, and

giving them additional time to further transfer assets would substantially prejudice Plaintiffs.

*See* Dkt. 86-1 at ¶ 15 (describing defendants' "financial transactions designed to conceal their

misconduct and evade seizure by law enforcement").  In addition, dissipation of the

defendants' assets due to the expenses of a lengthy criminal prosecution and the shutdown of

their business means that staying the civil proceedings has the potential to render them

judgment-proof.  In short, the longer this proceeding is delayed, "the less likely it is that"

Plaintiffs "will be able to recover the assets that are sought."  *In re Fin. Federated Title &*

*Tr., Inc*., 252 B.R. 834, 839 (Bankr. S.D. Fla. 2000) (denying stay where defendant had been

indicted in a parallel criminal case because "a stay would severely prejudice" a trustee's

ability to recover assets); *see also Ray Capital Inc. v. M/V Newlead Castellano*, No. 416-cv-

093, 2017 WL 4819877, at *2 (S.D. Ga. Oct. 25, 2017) (denying stay unless defendant

posted a "bond that accounted for the frustration" of a potential deficiency judgement, as any

delay in pursuing any judgment would "allow for the dissipation of assets from which" a

judgment could be collected).

Moreover, the Medalist Defendants acknowledge that Backpage.com has been shut

down (Mot. at 5), and there is every reason to believe that percipient corporate witnesses will

move on from their now-defunct employer and seek new employment, making them harder

to locate and dulling any recollections they may have of Backpage's corporate practices and

communications they had with the defendants.  *See Young v. Peraza*, No. 15-cv-60968, 2015

WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) (noting that the memories of eyewitnesses

"fade[] with the passage of time"); *Whitaker v. Miami-Dade Cty.*, No. 13-cv-24450, 2014

WL 12513590, at *3 (S.D. Fla. Apr. 23, 2014) (denying a stay where there was a parallel

criminal investigation due to the prejudice to plaintiffs, including "witnesses' fading

memories and the disappearance of evidence").  Among them is defendant Ferrer himself,

who has not moved to stay, and certainly has the ability to provide critical evidence.  If a stay

is granted, Plaintiffs will be forced to wait months or years to depose Ferrer, allowing him

the opportunity to claim a fading recollection due to the intervening years. There is simply no

reason to prejudice Plaintiffs in such a serious way while benefitting Ferrer, who has already

pleaded guilty to criminal charges.

If this action is stayed, Plaintiffs will have no ability to subpoena or depose nonparty

ex-Backpage employees.  These witnesses would no longer be in Backpage's control and

thus would require service of process to collect their evidence, and would be under no

affirmative obligation to preserve evidence while a stay was in place.  Considering the gravity of the allegations against Backpage, these witnesses are likely to be highly motivated to distance themselves from their former employer with time, so months or years of delay will make their testimony even harder to obtain in the future.

The Medalists defendants argue that Plaintiffs will suffer no prejudice because "[t]he government seized Backpage's website and has custody of all of its servers" (Mot. at 13), but even assuming this is true, third-party data will inevitably be lost with the passage of time and deletion in the ordinary course of business. *United States v. Sweet*, No. 79-cv-940, 1980 WL 1507, at *3 (M.D. Fla. Jan. 28, 1980) (denying stay, as plaintiffs would "face serious injury if they [we]re forced to wait[,]" observing that "[a]s time passes, memories fade, witnesses become unavailable, evidence is lost"). Whatever data may or may not be on Backpage's servers, data held by third parties would be unprotected and at risk of loss for years.  And to the extent that certain Backpage data has not been obtained by the government, it remains at risk of deletion because Backpage admits that it routinely purges records in the ordinary course of business.  (Ex. C at 9).

**4.      The Medalist Defendants Will Not Be Unduly Burdened Absent A Stay.**

With respect to the interests of and burden on the defendants, the Medalist Defendants will not be unfairly disadvantaged in this case by proceeding in parallel with the criminal action against them.  The Medalist Defendants contend that they face a stark dilemma in this case: either waive the privilege against self-incrimination by testifying in their defense or lose on summary judgment.  (Motion at 13).  But this is a false choice, because as explained above, the Medalist Defendants have a range of options for defending

themselves other than the testimony of Lacey and Larkin—some of which they are exercising at this very moment.  *See* Section I, *infra*.

This includes the Medalist Defendants' ability to raise non-testimonial defenses, as they have done in their pending motion to dismiss.  *See* note 5, *supra*.  Their reliance on these defenses clearly demonstrates that Defendants' testimony is not the "sole identifiable defense" in this case.  *Mitchell*, 2016 WL 7396670, at *2.  Indeed, "[b]y continuing to raise alternative non-testimonial defenses to liability, the defendants undermine their unsupported assertion that summary judgment will automatically result from invoking the Fifth Amendment privilege."  *Id.* (quotation and citation omitted).  The Medalist Defendants have already, and presumably with continue to, attack all elements of Plaintiffs' claims.

The defendants do not seriously contend otherwise.  While they assert that the claims in the Amended Complaint "largely hinge" on Lacey and Larkin's conduct and "alleged knowledge of illegal activities" (Mot. at 14), they do not explain why **only** the testimony of Lacey and/or Larkin could speak to their knowledge and serve as the basis for a defense.  As detailed more fully in Section I, *supra*, there will be numerous of other sources of evidence in this case, including the testimony of other witnesses and document discovery.  At worst, Lacey and Larkin face the possibility of a disadvantage in this case in the form of a potential adverse inference, which as explained above is insufficient to justify a stay in the Eleventh Circuit.  *See* Section I, *supra*.  Given the Medalist Defendants' refusal to address this key issue, a stay is not warranted at this time.  *See Lot 5*, 23 F.3d at 364 ("Claimant contends that without her own testimony, she could not establish her defense to the forfeiture of her property.  We disagree because Claimant provided no explanation as to why she did not use

the testimony of other parties to substantiate her defense.").

**5.      The Judiciary's Interests Weigh Against A Stay.**

The judiciary's interests are furthered by the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  This policy is at odds with granting a stay until the resolution of a criminal trial that is not set to begin until 2020, and could be delayed for far longer.  *See Transamerica*, 2016 WL 3552748, at *3 (noting the Court's "concerns about staying this action indefinitely" because "[t]he Court has a heavy caseload to manage and delaying this case will only add to its burden").

There is no question that some portion of this action can move forward.  Defendants Ferrer and Backpage.com have not moved for a stay or appeared to answer the Amended Complaint, and have already pled guilty in the federal criminal action.  The Medalists Defendants concede that litigation against Backpage and Ferrer could proceed, but claim that "[s]taying the entire proceeding, as opposed to staying the matter only as to the Medalist Defendants, will allow for the most efficient use of this Court's resources."  Mot. at 15. While Plaintiffs agree that staying only part of this litigation is inefficient, this fact counsels strongly in favor of denying a stay.  *See, e.g.*, *Lancer*, 2009 WL 800144, at *3 (denying stay motion brought by five of 19 defendants, including numerous corporate defendants who the court recognized had no Fifth Amendment rights); *S.E.C. v. Incendy*, 936 F. Supp. 952, 956 (S.D. Fla. 1996) (denying stay and noting the "risk of multiple adjudications (one trial against the remaining defendants and another against [indicted defendant])" if a stay were granted).  The most efficient option is to move the entire case forward now, rather than issuing an indefinite stay.

6.      **There Is A Strong Public Interest In Securing Justice For Sex Trafficking Victims.**

The Medalist Defendants argue that a stay would be in the public interest because "no greater public interest exists than protecting . . . rights under the constitution."  Mot. at 16 (citation omitted).  While there is a strong public interest in protecting Defendants' Fifth Amendment rights, those rights remain fully protected here because Defendants can choose to invoke them as they see fit—indeed, they have already done so in response to Plaintiffs' first set of discovery requests.  It is black letter law that the Fifth Amendment is not implicated by the fact that defendants may suffer adverse consequences for electing to invoke those rights.  *See Route 13*, 946 F.2d at 756 ("The general rule provides that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.").

More importantly, defendants ignore the strong public interest in supporting the victims of sex trafficking and bringing to justice, both civilly and criminally, those who enable and profit from those crimes.  That indisputably includes websites like Backpage.com. Earlier this year, Congress enacted FOSTA, stating that "[i]t is the sense of Congress that … websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion."  Pub. L. No. 115-164, 132 Stat. 1253, at § 2 (2018). Given this problem, Congress designed FOSTA to provide victims with "more opportunity to obtain restitution" as well as more easily "establish successful civil pleadings."  H.R. Rep. 115-572, 6.  As one member of Congress explained, in light of prior court decisions allowing Backpage.com to escape liability for facilitating online sex trafficking, FOSTA created "a

legislative solution to hold these bad actors accountable and allow the victims to seek the damages that they deserve."  164 Cong. Rec. H1278 (daily ed. Feb. 27, 2018) (statement of Rep. Slaughter).  Similarly, in considering a companion bill to FOSTA, the Senate recognized a need to change existing laws that permitted "nefarious actors, such as the website BackPage.com," to escape civil liability.  *See* S. Rep. No. 115-199, at 2 (2017) (acknowledging that courts had used prior law "to shield from civil liability and State criminal prosecution nefarious actors, such as the website BackPage.com, that are accused of knowingly facilitating sex trafficking"); 164 Cong. Rec. S1860 (daily ed. March 21, 2018) (statement of Sen. Durbin) ("We need to protect victims of trafficking, and we need to hold websites like Backpage accountable for their exploitative, criminal actions.").  This case is the embodiment of the civil actions envisioned by Congress in enacting FOSTA, and there is a strong public interest in permitting Plaintiffs to litigate such a case without delay.

Furthermore, the public interest counsels against treating Defendants more favorably merely because they are the subjects of a criminal proceeding. As one court explained:

> It is plainly ludicrous for [the criminal defendant] to argue that it is "unfair" to compel him to face the civil law suits against him which are the creations of his own alleged misconduct.  The plight which he imagines that he is in stems solely from his own activities.

*Arden Way Associates v. Boesky*, 660 F. Supp. 1494, 1495 (S.D.N.Y. 1987).  Given these interests in equanimity, the court found—in accordance with all of the decisions from this district (see note 2, *supra*)—that the criminal defendant's interest in asserting his Fifth Amendment rights without consequence was an "inadequate ground" for a stay.  *Id.* at 1498.

## CONCLUSION

For the foregoing reasons, the Motion to Stay Proceedings should be denied.

Dated:  July 25, 2018                    Respectfully submitted,

                                     **BOIES SCHILLER FLEXNER LLP**

                                     By  */s/ Karen C. Dyer*
                                     Karen C. Dyer (Fla. Bar. No. 716324)
                                     121 South Orange Avenue, Suite 840
                                     Orlando, FL 32801
                                     Telephone: (407) 245-8793
                                     Facsimile: (407) 425-7047
                                     kdyer@bsfllp.com

                                     David Boies (admitted *pro hac vice*)
                                     *Lead Trial Counsel*
                                     333 Main Street
                                     Armonk, NY 10504
                                     Telephone: (914) 749-8200
                                     Facsimile: (914) 749-8300
                                     dboies@bsfllp.com

                                     Karen A. Chesley (admitted *pro hac vice*)
                                     Joanna Wright (admitted *pro hac vice*)
                                     Kate Ferguson (Fla. Bar. No. 0118653)
                                     575 Lexington Avenue
                                     New York, NY 10022
                                     Telephone: (212) 446-2300
                                     Facsimile: (212) 446-2350
                                     kchesley@bsfllp.com
                                     jwright@bsfllp.com
                                     kferguson@bsfllp.com

                                     Evan E. North (admitted *pro hac vice*)
                                     1401 New York Avenue, NW
                                     Washington, DC 20005
                                     Telephone: (202) 237-2727
                                     Facsimile: (202) 237-6131
                                     enorth@bsfllp.com

**LEGAL MOMENTUM**

Jennifer Becker (admitted *pro hac vice*)
Olympias Iliana Konidaris (admitted *pro hac vice*)
   *Special Counsel to Legal Momentum*
16 East 34th Street
New York, NY 10016
Telephone: (212) 413-7544
jbecker@legalmomentum.org
iliana@konidarislaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was electronically filed and

served on the parties by using the CM/ECF system on this 25th day of July, 2018.


/s/ Karen C. Dyer
Karen C. Dyer, Esq.

22