# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

FLORIDA ABOLITIONIST, INC.; JANE
DOE #1; JANE DOE #2; AND SUSAN
ROE,

                         Plaintiffs,

     -against-

BACKPAGE.COM LLC; CARL FERRER;
MICHAEL LACEY; JAMES LARKIN;
WEBSITE TECHNOLOGIES, LLC;
IC HOLDINGS, LLC; DARTMOOR
HOLDINGS LLC; CAMARILLO
HOLDINGS LLC; ATLANTISCHE
BEDRIJVEN CV; KICKAPOO RIVER
INVESTMENTS, LLC; AMSTEL RIVER
HOLDINGS, LLC; POSTFASTER, LLC;
CLASSIFIED SOLUTIONS LTD;
MEDALIST HOLDINGS, INC; AD TECH
BV; UGC TECH GROUP CV; POSTING
SOLUTIONS, LLC;  AND CEREUS
PROPERTIES LLC,

                         Defendants.

Case No. 6:17-cv-00218-JA-TBS

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS AND IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ..........................................................................................2

ARGUMENT ..............................................................................................5

I.   DEFENDANTS' UNTIMELY STAY MOTION SHOULD BE STRICKEN ..................5

II.  THE TVPRA DOES NOT REQUIRE A STAY .................................................7

III. THE VCAA DOES NOT REQUIRE A STAY ..................................................10

IV. FIFTH AMENDMENT CONSIDERATIONS DO NOT SUPPORT A STAY ...............11

   1.  Any Factual Overlap Between The Civil And  Criminal Cases Does Not Warrant A
       Stay. ..................................................................................................15

   2.  The Status Of The Criminal Case Weighs Against A Stay .........................................15

   3.  Plaintiffs Have Strong Interests In Proceeding  Expeditiously And Would Be
       Prejudiced By A Stay ................................................................................16

   4.  The Moving Defendants Will Not Be Unduly Burdened Without A Stay .................17

   5.  The Judiciary's Interests Weigh Against A Stay .......................................17

   6.  There Is A Strong Public Interest In Securing Justice For Sex Trafficking Victims...18

CONCLUSION.............................................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Am. Econ. Ins. Co. v. Traylor/Wolfe Architects, Inc.*,
No. 12-cv-1094, 2014 WL 3867642 (M.D. Fla. Aug. 6, 2014) ................................5

*Ara v. Khan*,
No. 07-cv-1251, 2007 WL 1726456 (E.D.N.Y. June 14, 2007) ...............................8

*C.M.A. v. Epstein*,
No. 08-80811, 2008 WL 11331828 (S.D. Fla. Dec. 16, 2008) ....................11, 13

*Court-Appointed Receive of Lancer Mgmt. Grp. v. Lauer*,
05-cv-60584, 2009 WL 800144 (S.D. Fla. Mar. 25, 2009)................................15, 18

*De'Omilia Plastic Surgery, PC v. Sweeton*
12-cv-06415, 2013 WL 6070037 (D.N.J. Nov. 18, 2013) ......................................13

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*,
561 F.3d 1298 (11th Cir. 2009)..................................................................................12

*Hicks v. Deepwater Glob. Distribution, Inc.*,
No. 17-cv-1472, 2018 WL 3427876 (M.D. Fla. July 16, 2018) ...............................6

*In re Club Assocs.*,
956 F.2d 1065 (11th Cir. 1992)....................................................................................6

*In re Fin. Federated Title & Tr., Inc.*,
252 B.R. 834 (Bankr. S.D. Fla. 2000) ......................................................................16

*Kamparri Trading Ltd. v. Match.com, L.L.C.*,
No. 12-cv-23573, 2012 WL 12865851 (S.D. Fla. Dec. 11, 2012) ...........................5

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
No. 10-cv-04124, 2011 WL 5188424 (W.D. Ark. Oct. 31, 2011). ...........................8

*Lane v. XYZ Venture Partners, L.L.C.*,
322 F. App'x 675 (11th Cir. 2009)..............................................................................5

*Muchira v. Al-Rawaf 9.)*,
850 F.3d 605 (4th Cir.)...........................................................................................8, 9

*Nat'l Tr. Ins. Co. v. Graham Bros. Const. Co.*,
916 F. Supp. 2d 1244 (M.D. Fla. 2013) ....................................................................6

iii

*Ortega Trujillo v. Conover & Co. Commc'ns,*
    221 F.3d 1262 (11th Cir. 2000) ..................................................................16

*Plaintiff A v. Schair,*
    744 F.3d 1247 (11th Cir. 2014). ..............................................................7, 8

*Regions Bank v. Kaplan,*
    No. 12-cv-1837, 2015 WL 5247809 (M.D. Fla. Sep. 8, 2015) ................................12

*Transamerica Life Ins. Co. v. Brickman,*
    No. 615-cv-1919, 2016 WL 3552748 (M.D. Fla. June 30, 2016)..........................15

*Two Men & a Truck/Int'l, Inc. v. Empire Moving & Storage Inc.*,
    No. 11-cv-62452, 2012 WL 12863124 (S.D. Fla. Nov. 14, 2012)..........................5

*United States v. Broussard,*
    767 F. Supp. 1536 (D. Or. 1991)..............................................................10

*United States v. Premises Located at Route 13,*
    946 F.2d 749 (11th Cir. 1991).............................................................11, 18

*Wagner v. Diaz,*
    No. 12-cv-01782, 2015 WL 3563026 (E.D. Cal. May 28, 2015) ...........................6

*Whitaker v. Miami-Dade Cty.*,
    No. 13-cv-24450, 2014 WL 12513590 (S.D. Fla. Apr. 23, 2014) .........................16

## Statutes

18 U.S.C. § 3509...............................................................................10

18 U.S.C. § 3509(k) ..........................................................................10

## Other Authorities

164 Cong. Rec. H1278 (daily ed. Feb. 27, 2018) ......................................18

H.R.Rep. No. 101–681, 101st Cong., 2d Sess., pt. 1 (1990) .......................10

H.R.Rep. No. 108–264, 108th Cong., 1st Sess., pt. 2 (2003) ......................7

H.R.Rep. No. 115–572, 115th Cong., 2d Sess., pt. 1 (2017)......................19

Public L. No. 101–647, 104 Stat. 4789 (Nov. 29, 1990) .............................10

Public L. No. 115–164, 132 Stat. 1253 (2018) ....................................9, 10

**<u>Rules</u>**

Federal Rules of Civil Procedure 1 ...............................................................................17

Federal Rules of Civil Procedure 12 .............................................................................5

Plaintiffs Florida Abolitionist, Inc., Jane Doe #1, Jane Doe #2, and Susan Roe ("Plaintiffs") submit this Memorandum of Law in Opposition to the Motion to Stay Proceedings (the "Third Stay Motion") filed by Defendants Backpage.com LLC, Carl Ferrer, Adtech B.V., Amstel River Holdings LLC, Atlantische Bedrijven C.V., Classified Solutions LTD, Dartmoor Holdings LLC, IC Holdings LLC, Kickapoo River Investments, LLC, Postfaster LLC, Posting Solutions LLC, UGC Tech Group, C.V., Website Technologies, LLC (collectively, the "Moving Defendants"), and in support of Plaintiffs' Motion to Strike, and state as follows:

## PRELIMINARY STATEMENT

Despite two previous denials of defendants' stay requests, the Moving Defendants *again* ask this Court to delay Plaintiffs' right to seek relief against Backpage and its former CEO for their role in facilitating Plaintiffs' sex trafficking.  This time around, the Moving Defendants' request is even more objectionable because it is made *months* after their time to answer the Amended Complaint has expired, and in lieu of a proper response under Federal Rule of Civil Procedure 12(a).  Because the Moving Defendants failed to seek leave from this Court to file an untimely response—and because they still have not responded to the Amended Complaint—the Third Stay Motion should be stricken and the Moving Defendants should be ordered to file a response to the Amended Complaint that complies with the Federal Rules of Civil Procedure.

Even if it were necessary to address the merits of the Third Stay Motion, nothing in the motion justifies a stay.  The two statutory bases that defendants invoke both require that a parallel criminal matter arise from the "same occurrence" as a pending civil matter, a

1

requirement that is not satisfied here: the federal investigation in Arizona does not touch upon any occurrence involving Jane Doe #1 or #2's trafficking, nor does it involve any occurrence in which a client of Florida Abolitionist was trafficked.  In fact, the criminal investigations occurring in Arizona, Texas, and California do not appear to involve any conduct that occurred in Florida at all.  The mere fact that Backpage and its associates engaged in conduct that also harmed children in other jurisdictions does not give the Moving Defendants the right to evade all civil liability here, particularly where the government has not intervened to request a stay.

As to the Fifth Amendment arguments raised in the Third Stay Motion, those should be rejected for largely the same reasons as set forth in Plaintiffs' prior briefing.  The fact that two of the Moving Defendants have pled guilty does not alter this calculus, nor is it altered by the fact that those defendants' documents are currently in the possession of the Medalist Defendants' counsel Davis Wright Tremaine LLP ("DWT") (where they can be easily obtained through the discovery process).  The Third Stay Motion should therefore be denied.

## **BACKGROUND**

Plaintiffs in this action are two sex trafficking victims who were offered for sale on Backpage.com, one victim's mother, and Florida Abolitionist, an organization that provides services to trafficking victims and whose mission includes eliminating human trafficking. The first victim, Jane Doe #1, was held captive by a group of men who had previously used Backpage to sell women.  (Dkt. 86, ¶ 13).  Without Jane Doe #1's permission, those men placed an ad for her on Backpage.  (*Id.*).  Five men responded to that ad and raped Jane Doe #1 repeatedly.  (*Id.*).  The second victim, Jane Doe #2, was 15 years old when she was

2

advertised for sale on Backpage.com.  (*Id.* ¶ 14).  As a result of those Backpage ads, Jane Doe #2 was raped repeatedly over a two-week period.  (*Id.*).  The Moving Defendants, together with the other defendants in this case, engaged in a course of conduct designed to facilitate the sex trafficking of women and children, including Jane Doe #1 and #2, from which they and their co-defendants earned millions of dollars in profits.  (*Id.* ¶¶ 11, 117).

Jane Doe #1 and Florida Abolitionist filed their original complaint on February 7, 2017, bringing claims against the Moving Defendants, among others, for violations of laws prohibiting the facilitation of sex trafficking, invasion of privacy, negligence, and civil conspiracy.  On May 5, 2017, Defendants moved to dismiss the complaint, primarily arguing the claims were barred by Section 230 of the Communications Decency Act.  (Dkt. 42).

Soon thereafter, Defendants asked this Court to stay proceedings while their motion to dismiss was pending.  The Honorable Thomas B. Smith denied that request ***more than a year ago***, noting that "Courts in this district have long disfavored motions to stay discovery because they impede the Court's duty to manage its cases and expedite discovery" and ordering that "[d]iscovery shall move forward in this case, in a single phase."  (Dkt. 72, at 3).  Thereafter, Plaintiffs served Defendants with written discovery requests.  On February 21, 2018, Defendants Ferrer, Lacey and Larkin invoked their Fifth Amendment rights and refused to respond to those requests.  (*See* Dkt. 137-1.)  The same day, Backpage.com—a corporate entity with no Fifth Amendment rights (*see* 11–12 *infra*)—responded to Plaintiffs' Interrogatories and Requests for Production.  (*See* Dkts. 137-2, 137-3).

On March 28, 2018, a number of individuals associated with Backpage, including Defendants Lacey and Larkin, were indicted in the District Court of Arizona for charges

3

related to Backpage's criminal enterprise, including conspiracy, money laundering, and facilitation of prostitution.  (Dkt. 86-1, the "Indictment").  Shortly thereafter, on April 5, 2018, Defendants Backpage and Ferrer pled guilty to conspiracy charges in the District Court of Arizona, and Ferrer subsequently pled guilty to related state criminal charges in California and Texas.  (Dkt. 86-2, the "Plea Agreement").

On March 31, 2018, the Court issued its opinion on Defendants' motion to dismiss, rejecting Defendants' Section 230 argument but granting Plaintiffs leave to amend to remedy other pleading issues.  (Dkt. 85).  Plaintiffs filed their Amended Complaint on April 30, 2018.  (Dkt. 86).  Defendants received a 45 day extension of time to reply to the Amended Complaint, making their response due on June 27, 2018.  (Dkt. 96.)  To justify such a lengthy extension, defendants represented that DWT intended to withdraw as counsel for the Moving Defendants and they would need additional time to retain counsel.  (Dkt. 92.) ("It is anticipated that Defendants Ferrer and Backpage.com, LLC will be engaging new counsel to represent them . . . and will require additional time to formalize representation.").  Nearly six weeks *before* their deadline to respond, on May 14, 2018, DWT withdrew as counsel for the Moving Defendants.  (Dkts. 101–103.)  Nonetheless, the Moving Defendants did not timely retain new counsel or file a response to the Amended Complaint.  Instead, they waited more than two months after the June 27, 2018 deadline to respond to the Amended Complaint to file the instant stay motion.  (Dkt. 149.)  The Moving Defendants did not seek leave of Court to file this untimely motion.

By the time the Moving Defendants filed the instant motion, their co-defendants had already moved for a stay of this case—a motion that this Court denied.  (Dkt. 143.)

## ARGUMENT

### I.     DEFENDANTS' UNTIMELY STAY MOTION SHOULD BE STRICKEN

The Moving Defendants have been aware of this litigation since it was filed on February 7, 2017, and actively participated in it by seeking dismissal of Plaintiffs' initial complaint.  (Dkt. 42.)  After Plaintiffs filed their Amended Complaint, the Moving Defendants ask for—and received—a *45-day* extension to respond, based in large part on their representation that time was needed to retain new counsel.  (Dkt. 96.)  Despite that substantial extension, the Moving Defendants waited another *two months* to file the Third Stay Motion—which is not a proper response under Federal Rule of Civil Procedure 12.[1]

Where a party elects not to file a responsive pleading or motion within the time provided for by the Court, any *untimely* filing may be appropriately stricken.  *See Two Men & a Truck/Int'l, Inc. v. Empire Moving & Storage Inc.*, No. 11-cv-62452, 2012 WL 12863124, at *2–3 (S.D. Fla. Nov. 14, 2012) (striking answer that was filed "twenty-seven days past the Court's own deadline and, therefore, woefully untimely").  Indeed, courts routinely strike motions to stay that are untimely filed.  *See, e.g. Am. Econ. Ins. Co. v. Traylor/Wolfe Architects, Inc.*, No. 12-cv-1094, 2014 WL 3867642, at *3 (M.D. Fla. Aug. 6, 2014) (denying motion to stay where it was filed after the "deadlines for both discovery and dispositive motions ha[d] long since passed"); *see also In re Club Assocs.*, 956 F.2d 1065,

---

[1] The Moving Defendants still have not properly responded to the Amended Complaint.  A motion to stay is not a responsive pleading to a complaint.  *See Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 678 (11th Cir. 2009) ("[A] motion to stay is neither a responsive pleading nor a motion made under Rule 12."); *Kamparri Trading Ltd. v. Match.com, L.L.C.*, No. 12-cv-23573, 2012 WL 12865851, at *1–2 (S.D. Fla. Dec. 11, 2012) (finding a motion to stay was not a "responsive pleading").  Thus, the Moving Defendants remain subject to default for failing to timely respond.

1070–71 (11th Cir. 1992) (affirming denial of untimely motion to stay, as the untimeliness was a "factor supporting a finding of inequity").  Accordingly, this untimely motion should be stricken pursuant to Federal Rule of Civil Procedure 12(f).

Furthermore, Defendants fail to show good cause for their untimely motion, as required by local rules.  *See* M.D. Fla. L.R. 3.09(c) (continuances will not be granted "except for good cause shown").  Absent such a showing of good cause, the Motion should be stricken.  *See, e.g.*, *Hicks v. Deepwater Glob. Distribution, Inc*., No. 17-cv-1472, 2018 WL 3427876, at *2 (M.D. Fla. July 16, 2018) (striking motion where "Plaintiff ha[d] not sought leave of the Court to file her response out of time, nor ha[d] she argued that good cause prevented her from complying with the deadline"); *Nat'l Tr. Ins. Co. v. Graham Bros. Const. Co.*, 916 F. Supp. 2d 1244, 1250–51 (M.D. Fla. 2013) (striking motion for summary judgment where party "failed to demonstrate good cause for the Court to consider its untimely summary judgment motion").  Retaining new counsel alone is insufficient to establish good cause.  *See Wagner v. Diaz*, No. 12-cv-01782, 2015 WL 3563026, at *13 (E.D. Cal. May 28, 2015) ("A defendant who desires to retain private counsel must act with diligence and may not demand a continuance if he or she is unjustifiably dilatory in obtaining counsel.").  Because the Moving Defendants continue to refuse to respond to the Amended Complaint and filed this Third Stay Motion over two months late—after defendants had ***already*** received a substantial extension to seek new counsel—a motion to strike is appropriately granted.

## II.      THE TVPRA DOES NOT REQUIRE A STAY

Beyond its untimeliness, the Moving Defendants' belated request to stay this action under § 1595(b) of the Trafficking Victims Protection Reauthorization Act ("TVPRA") should be denied for at least two additional reasons:  (1) the stay provision in §1595(b) is not a tool for defendants seeking to avoid accountability in civil actions, but instead protects the Government's ability to intervene to stay civil litigation that might interfere with a  criminal case; and (2) even if the Moving Defendants were the proper party to invoke a stay here, their own cited case law establishes that the stay provision of § 1595(b) does not apply under the present facts.

Section 1595(b)(1) provides that "[a]ny civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the ***same occurrence*** in which the claimant is the victim." (emphasis added).  As the Eleventh Circuit has recognized, this stay provision "was not designed to help a defendant delay a U.S. civil action for sex trafficking violations."  *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014).  Rather, the provision "was added to § 1595 to alleviate the U.S. Department of Justice's concern that civil suits could hinder a domestic prosecutor's ability to try criminal cases 'unfettered by the complications of civil discovery.'"  *Id*. (quoting H.R. Rep. No. 108–264(II), at 17 (2003)).  Other courts have recognized this principle as well: in *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc*., a court recognized that "[t]he case law on application of a stay under the TVPRA is scant" but held that "in the case law that the Court has found, stays have been imposed in cases where the government has intervened in a case, informed the Court of an ongoing investigation, and advised that the civil case was subject to a mandatory

7

stay under the TVPRA."  No. 10-cv-04124, 2011 WL 5188424, at *2 (W.D. Ark. Oct. 31,

2011).  Similarly, in *Ara v. Khan*, a stay was granted only after the government intervened

and moved to "stay all proceedings in the case pending the conclusion of its criminal

investigation."  No. 07-cv-1251, 2007 WL 1726456, at *1 (E.D.N.Y. June 14, 2007).  In

short, a stay under Section 1595(b) is meant to be invoked by the government where it is

concerned about the impact of a civil proceeding on an ongoing criminal investigation.[2]

Here, the government has neither intervened nor taken a position on the Moving

Defendants' requested stay, despite being apprised of the motion by Plaintiffs' counsel.

(Boyle Decl. ¶ 3.)  In the absence of any government intervention, the Moving Defendants

have no basis to invoke § 1595(b).  In fact, the Moving Defendants are seeking to use

§ 1595(b) for the very purpose the Eleventh Circuit forbade in *Plaintiff A*: to "delay a U.S.

civil action for sex trafficking violations."  *Plaintiff* A, 744 F.3d at 1254.  In the absence of

any indication that the government believes that this action would imperil the criminal cases,

the TVRPA should not be a tool for the Moving Defendants to delay accountability for their

actions.

And even if the stay provision found in § 1595(b) was meant to shield criminal

defendants, the plain language of the statute makes clear that it has no application in this

---

[2]  Contrary to the Moving Defendants' argument that the Fourth Circuit in *Muchira v. Al-Rawaf* made a holding related to Section 1595(b) (Mot. at 9), the appellate court was simply restating the procedural posture of the trial court action.  850 F.3d 605, 616 (4th Cir.).  The Moving Defendants fail to cite the decision below which actually stayed the case, which was limited in scope and duration and expressly ***did not apply*** to "outstanding discovery obligations or motions.*"  Muchira v. Al-Rawaf, et al*, No. 14-cv-770, Dkt. 98 (Jan. 15, 2015).  Moreover, the *Muchira* trial court stayed the action for less than a month on the eve of trial, and even there, the stay imposed allowed the action to move expeditiously to trial.

case.  Section 1595(b)'s stay provision is limited to criminal actions "arising out of the same occurrence" as a civil case.  Here, the Moving Defendants offer no evidence, and Plaintiffs have no reason to believe, that the government is investigating the defendants for the trafficking of Plaintiffs, or for any conduct at all in the state of Florida, and thus this case does not involved the "same occurrence" as the pending criminal charges (which largely relate to money laundering and prostitution, not sex trafficking specifically).

The Moving Defendants offer no authority to support their argument that a civil action brought under the TVPRA must be stayed during the pendency of a criminal action merely because the same defendants are involved.  To the contrary, the case defendants do cite (Mot. at 9), *Muchira v. Al-Rawaf*, is based on a district court decision that flatly rejects such a broad interpretation, because "the structure of Section 1595(b)(1), which juxtaposes 'any civil action' with 'any criminal action,' suggests that the referenced criminal action is enforcing the criminal sanctions under Chapter 77 for the ***same violation*** of Chapter 77 that generates the civil action."  No. 14-cv-770, Dkt. 119 (E.D.Va. Feb. 6, 2015), at 3 (emphasis added).  The court expressly rejected that position that "any criminal prosecution under any statute, state or federal, that could be brought based on those same facts would be the basis for a stay," finding that "such a reading would be strained and not the most natural reading within the context of Chapter 77 as a whole."  *Id*.  Given that Backpage.com and Ferrer did not plead guilty to any federal crime in Chapter 77, the stay provisions of §1595(b) are not triggered.  (Plea Agreement, at 12.)

### III.     THE VCAA DOES NOT REQUIRE A STAY

Defendants' argument that the Victims of Child Abuse Act ("VCAA") entitles them to a stay of these proceedings is not supported by either the plain text or purpose of the VCAA. The VCAA provides for a stay of an action where a pending criminal action "arises out of the same occurrence" as a civil action and "in which the child is a victim."  18 U.S.C. § 3509(k). This provision was enacted to address the "unique problems associated with child abuse prosecutions."  *United States v. Broussard*, 767 F. Supp. 1536, 1538–39 (D. Or. 1991) (citing H.R.Rep. No. 101–681, 101st Cong., 2d Sess., pt. 1 (1990)); *see also* Crime Control Act of 1990, PL 101–647, Nov. 29, 1990, 104 Stat 4789 (noting that the "investigation and prosecution of child abuse cases is extremely complex, involving numerous agencies and dozens of personnel[.]").  While the law applying this statute is scant, courts have recognized that at the heart of the statute is a concern for the "protection of child victims and witnesses from public exposure."  *Broussard* at 1542.  This is reflected in the structure of the statute, which is almost entirely focused on procedures for when children testify at trial.  *See* 18 U.S.C. § 3509.

As explained above, *supra* 8–9, this case does not arise out of the "same occurrence" as the criminal actions in Arizona, California, and Texas.  Plaintiff Doe #2, the only plaintiff who was underage at the time of Defendants' conduct and who is now an adult, is not specifically identified as a victim in the indictments, nor are her traffickers named as co-conspirators in those indictments.  (*See* the Indictment and the Plea Agreement.)  The VCAA was intended to protect victims who will potentially testify in ongoing criminal prosecutions, which is not a concern here.  Indeed, to the best of Plaintiffs' knowledge, no prosecutor or

investigator associated with the pending Arizona criminal prosecution has even *attempted* to contact either Doe Plaintiff in this case. Defendants' overbroad reading of the statute would prevent plaintiffs from seeking justice through civil litigation simply because a particular defendant's conduct harmed a number of other children as well.

The lone case cited by Defendants in support of their reading of the statute, *C.M.A. v. Epstein*, No. 08-cv-80811, 2008 WL 11331828, at *2 (S.D. Fla. Dec. 16, 2008), does not support their position. There, the court *declined* to institute a stay after looking at the plain meaning of the statute, which made clear that Congress intended for a narrower definition of a "pending criminal action," and held a deferred-prosecution agreement was not a pending criminal action under the VCAA. Similarly, here, a plain reading of the statute leads to the conclusion that where a plaintiff is not an identified victim in a pending criminal case nor a potential witness, a stay is not mandated.

## IV.   FIFTH AMENDMENT CONSIDERATIONS DO NOT SUPPORT A STAY

For largely the same reasons set forth in Plaintiffs' prior opposition to the Medalist Defendants' stay motion, the Moving Defendants' Fifth Amendment concerns do not justify a stay of this case. (Dkt. 137.) Because both the parties' prior briefing the Court's Opinion of August 23, 2018 already thoroughly addressed this issue, Plaintiffs briefly summarize their arguments below and explain the Moving Defendants' new arguments do not justify a stay.

Where a defendant claims that his Fifth Amendment concerns create an exception to the usual rule that civil and criminal cases proceed concurrently, the Eleventh Circuit only mandates a stay if the invocation of the Fifth Amendment "would result in 'automatic entry of summary judgment.'" *United States v. Premises Located at Route 13*, 946 F.2d 749, 756

(11th Cir. 1991).  As this Court has already explained in denying the Medalist Defendants'

stay motion, defendants cannot justify a stay on Fifth Amendment grounds if they fail to

"specify exactly how their case will be harmed or how their ability to present a proper

defense will be impaired by invocation of the privilege."  (Dkt. 143, at 2.)  Simply pointing

to "significant overlap in the civil and criminal cases" and stating that one's defense will be

harmed is equivalent to making a "vague 'blanket assertion' of the privilege," which "does

not provide adequate justification for a stay."  (*Id.*)

The Moving Defendants offer no persuasive reason for this Court to depart from its

ruling in the August 23 Order – particularly given that none of the entity defendants even

have Fifth Amendment rights.  *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc*.,

561 F.3d 1298, 1303 n.2 (11th Cir. 2009) ("We note that corporations do not have any Fifth

Amendment rights.").  Instead, the Moving Defendants repeat the Medalist Defendants'

failure to explain what questions or discovery topics they would refuse to answer by invoking

the privilege.  (Dkt. 143, at 3.)  The Moving Defendants make no effort to explain why they

cannot make a case through documents, corporate witnesses, or third-party discovery.  *See*

*Regions Bank v. Kaplan*, No. 12-cv-1837, 2015 WL 5247809, at *3 (M.D. Fla. Sep. 8, 2015)

(denying stay in part because movants had not "explained why each specific claim and

defense cannot be proven and substantiated through other testimony or evidence").  As this

Court recognized when denying the Medalist Defendants' motion to stay, the Moving

Defendants "have a whole panoply of alterative defenses available to them."  (Dkt. 143, at 3.)

The Moving Defendants' primary concern appears to be that they might be subject to

additional criminal penalties if Ferrer chooses ***not*** to invoke the Fifth Amendment and

responds here in a manner "inconsistent with his prior factual admission" in his plea agreement.  (Mot. at ¶ 2.)  But this is no basis for staying an action.  *See C.M.A. v. Epstein*, No. 08-cv-80811, 2008 WL 11331828, at *2 (S.D. Fla. Dec. 17, 2008) (refusing to stay civil matter due to the existence of defendant's deferred prosecution agreement, noting that the defendant was "in control of his own destiny—it is up to him (and him alone) whether the plea agreement reached with the State of Florida is breached").   The Moving Defendants assertion that Ferrer's status as a cooperator somehow makes his Fifth Amendment concerns more significant is also incorrect.  If anything, any Fifth Amendment concern is lessened when a defendant has already accepted a plea.  *See, e.g.*, *De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12-cv-06415, 2013 WL 6070037, at *3 (D.N.J. Nov. 18, 2013) (denying motion to stay in a civil action where the defendant had "accepted a plea agreement in the criminal case against her" as it was "unlikely that any answers she provides in the civil case against her would affect her liability in the criminal matter, and, in any event, the likelihood of further prosecution is small.").  The Fifth Amendment does not protect Ferrer from the consequences of giving inconsistent testimony.[3]

The Moving Defendants also argue that a stay is needed because "Backpage's files are held by [former counsel at] the law firm of DWT" and that the Moving Defendants "have no control over the company's records."  (Mot at ¶ 10.)  Elsewhere, the Moving Defendants

---

[3] Ferrer argues that a stay is justified by a letter from the government instructing him "to abide by [his] obligation not to discuss the substance of [his] assistance to any third party." (Dkt. 149-3.)  To the extent that Ferrer elects to forgo the invocation of his Fifth Amendment rights and is questioned about the nature of his assistance to the government, he is free to seek a protective order from the Court to avoid answering such questions.  These considerations do not merit a blanket stay of this action.

assert that "DWT is in sole possession of the only available copies of Backpage's documents."  (Mot. at ¶ 8.)  If anything, this presents a strong reason to move forward with this case:  DWT is presumably able to produce responsive documents to the parties' requests, either as an agent of the Medalist Defendants or as a third party.  As such, proceeding with discovery will permit the Moving Defendants to access any relevant documents that they believe are necessary to mount their defense.

Having failed to show that they would suffer an "automatic loss" of their case, the Moving Defendants argue, like their predecessors, that "special circumstances" exist based on the following six factors:

(1) the extent to which the issues in the criminal case overlap with those presented in the civil case;

(2) the status of the case, including whether the defendants have been indicted;

(3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;

(4) the private interests of and burden on the defendants;

(5) the interests of the courts; and

(6) the public interest.

*Transamerica Life Ins. Co. v. Brickman*, No. 15-cv-1919, 2016 WL 3552748, at *2 (M.D. Fla. June 30, 2016) (Smith, M.J.).  But as Plaintiffs already explained, these factors do not replace this Court's obligation to answer the "ultimate question" to determine if a stay is warranted: "whether the [defendant's] assertion of [the] right against self-incrimination will result in the ***automatic entry of summary judgment***" for the plaintiff.  *Id.*  (analyzing the six factors above, but refusing to stay case because this "ultimate question" was not satisfied) (emphasis added).  In any event, all six factors continue to weigh in favor of denying a stay.

14

1.      **ANY FACTUAL OVERLAP BETWEEN THE CIVIL AND CRIMINAL CASES DOES NOT WARRANT A STAY**

A stay is not warranted because there is insufficient overlap between this case and the criminal proceeding against the Moving Defendants.  The factual overlap here is simply the involvement of Backpage generally; there is nothing in the record suggesting that the criminal proceedings concern the Plaintiffs or even any wrongdoing that occurred in the state of Florida.  In any event, courts in this Circuit regularly deny motions to stay civil proceedings even where there is far more direct and significant factual overlap than seen here.  *See, e.g.*, *Transamerica*, 2016 WL 3552748, at *2 (stay denied even though there was a "common nucleus of facts" and a "clear overlap"); *Court-Appointed Receiver of Lancer Mgmt. Grp. v. Lauer*, 05-cv-60584, 2009 WL 800144, at *1–2 (S.D. Fla. Mar. 25, 2009) (denying stay where "[t]he underlying facts giving rise to the indictment in the Criminal Action are the same as those alleged" in the civil action).

2.      **THE STATUS OF THE CRIMINAL CASE WEIGHS AGAINST A STAY**

A stay in these proceedings until the resolution of all criminal charges would also cause a protracted and prejudicial delay.  Defendants Lacey and Larkin's criminal trial (at which Ferrer states he will be a cooperating witness) is currently scheduled to begin in 2020, and there is no way to know whether that trial date will be extended in the future.  This would mean a stay of ***at least*** sixteen months, as there is no reason to believe that the Moving Defendant's plea agreements and criminal proceedings would be formally accepted until at least that date.  When a criminal trial date is set far into the future or subject to additional continuances, courts have found the "status of the case" to weigh against a stay because

stopping the civil case pending resolution of the criminal trial risks a protracted delay.  *See*

*Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264–1265 (11th Cir. 2000) (a

related criminal case, which was pending for over a year, was "not progressing quickly,"

thereby making the stay "indefinite in scope").

### 3.     PLAINTIFFS HAVE STRONG INTERESTS IN PROCEEDING EXPEDITIOUSLY AND WOULD BE PREJUDICED BY A STAY

Plaintiffs face a real risk of prejudice from delay that will only be magnified with

time.  Any delay here will make it increasingly unlikely that Plaintiffs will be able to recover

from the Moving Defendants.  In addition, dissipation of the defendants' assets due to the

expenses of a lengthy criminal prosecution and the shutdown of their business means that

staying the civil proceedings has the potential to render them judgment-proof.  In short, the

longer this proceeding is delayed, "the less likely it is that" Plaintiffs "will be able to recover

the assets that are sought."  *In re Fin. Federated Title & Tr., Inc*., 252 B.R. 834, 839 (Bankr.

S.D. Fla. 2000) (denying stay where defendant had been indicted in a parallel criminal case

because "a stay would severely prejudice" a trustee's ability to recover assets).

In addition, Backpage.com has been shut down and there is every reason to believe

that percipient corporate witnesses will move on and seek new employment, making them

harder to locate and dulling any recollections they may have of Backpage's corporate

practices and communications they had with the defendants – which is particularly critical, as

Backpage itself has no Fifth Amendment rights and must provide corporate witnesses.  *See*

*Whitaker v. Miami-Dade Cty*., No. 13-cv-24450, 2014 WL 12513590, at \*3 (S.D. Fla. Apr.

23, 2014) (denying a stay where there was a parallel criminal investigation due to the

prejudice to plaintiffs, including "witnesses' fading memories and the disappearance of

evidence"). If this action is stayed, Plaintiffs will have no ability to subpoena or depose nonparty ex-Backpage employees. These witnesses would no longer be in Backpage's control and thus would require service of process to collect their evidence, and would be under no affirmative obligation to preserve evidence while a stay was in place. Considering the gravity of the allegations against Backpage, these witnesses are likely to be highly motivated to distance themselves from their former employer with time, so months or years of delay will make their testimony even harder to obtain in the future.

### 4. THE MOVING DEFENDANTS WILL NOT BE UNDULY BURDENED WITHOUT A STAY

The Moving Defendants will not be unfairly disadvantaged in this case by proceeding in parallel with the criminal action against them. It is unclear whether Ferrer will even invoke the Fifth Amendment (and the other Moving Defendants cannot), but even if Ferrer does so, the Moving Defendants will still have a range of options for defending themselves— as the Court recognized in the August 23, 2018 Order. At worst, Moving Defendants face the possibility of a disadvantage in this case in the form of a potential adverse inference, which this Court has already recognized is insufficient to justify a stay in the Eleventh Circuit. (Dkt. 143, at 3.)

### 5. THE JUDICIARY'S INTERESTS WEIGH AGAINST A STAY

The judiciary's interests are furthered by the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. This policy is at odds with granting a stay until the resolution of a criminal trial that is not set to begin until 2020, and could be delayed for far longer. There is no question that some portion of this action can move forward since the entity defendants have no Fifth Amendment rights and this Court has

already ruled that the case may proceed against the Medalist Defendants.  *See, e.g.*, *Lancer*, 2009 WL 800144, at \*3 (denying stay motion brought by five of 19 defendants, including numerous corporate defendants who the court recognized had no Fifth Amendment rights). The most efficient option is to move the entire case forward now, rather than issuing an indefinite stay.

### 6. THERE IS A STRONG PUBLIC INTEREST IN SECURING JUSTICE FOR SEX TRAFFICKING VICTIMS

The Moving Defendants argue that a stay would be in the public interest because "(a) there are no third parties harmed by a stay in this case, and (b) the public interest in unimpeded criminal law enforcement outweighs the civil interests here."  (Mot. at ¶ 11.) While there is a strong public interest in protecting an ongoing criminal prosecution, that interest is not implicated here because the government has not sought a stay.  The Fifth Amendment is not violated simply because a civil defendant suffers adverse consequences for invoking the right to remain silent.  *See Route 13*, 946 F.2d at 756 ("The general rule provides that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.") (internal citations omitted).

Like the Medalist Defendants, the Moving Defendants ignore the strong public interest in supporting the victims of sex trafficking and bringing to justice, both civilly and criminally, those who enable and profit from those crimes.  That indisputably includes websites like Backpage.com.  Earlier this year, Congress enacted FOSTA, stating that "[i]t is the sense of Congress that . . . websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the

18

trafficking of children and victims of force, fraud, and coercion."  Pub. L. No. 115-164, 132

Stat. 1253, at § 2 (2018).  Given this problem, Congress designed FOSTA to provide victims

with "more opportunity to obtain restitution" as well as more easily "establish successful

civil pleadings."  H.R. Rep. 115-572, 6.  As one member of Congress explained, in light of

prior court decisions allowing Backpage.com to escape liability for facilitating online sex

trafficking, FOSTA created "a legislative solution to hold these bad actors accountable and

allow the victims to seek the damages that they deserve."  164 Cong. Rec. H1278 (daily ed.

Feb. 27, 2018) (statement of Rep. Slaughter).  Similarly, in considering a companion bill to

FOSTA, the Senate recognized a need to change existing laws that permitted "nefarious

actors, such as the website BackPage.com," to escape civil liability.  *See* S. Rep. No. 115-

199, at 2 (2017) (acknowledging that courts had used prior law "to shield from civil liability

and State criminal prosecution nefarious actors, such as the website BackPage.com, that are

accused of knowingly facilitating sex trafficking").  This case is the embodiment of the civil

actions envisioned by Congress in enacting FOSTA, and there is a strong public interest in

permitting Plaintiffs to litigate such a case without delay.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Motion to Strike should be granted and the

Motion to Stay Proceedings should be denied.

Dated:  September 14, 2018                 Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: /s/ Karen C. Dyer_____
Karen C. Dyer (Fla. Bar. No. 716324)

19

121 South Orange Avenue, Suite 840
Orlando, FL 32801
Telephone: (407) 245-8793
Facsimile: (407) 425-7047
kdyer@bsfllp.com

David Boies (admitted *pro hac vice*)
*Lead Trial Counsel*
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com

Karen A. Chesley (admitted *pro hac vice*)
Joanna Wright (admitted *pro hac vice*)
Kate Ferguson (Fla. Bar. No. 0118653)
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
kchesley@bsfllp.com
jwright@bsfllp.com
kferguson@bsfllp.com

Evan E. North (admitted *pro hac vice*)
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
enorth@bsfllp.com

**LEGAL MOMENTUM**

Jennifer Becker (admitted *pro hac vice*)
Olympias Iliana Konidaris (admitted *pro hac vice*)
   *Special Counsel to Legal Momentum*
16 East 34th Street
New York, NY 10016
Telephone: (212) 413-7544
*Attorneys for Plaintiffs*

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs informed counsel for Defendants that they would challenge Defendants' stay motion as improper on August 31, 2018, and based on prior conversations with counsel for Defendants, understand that Defendants oppose this motion.

*/s/ Karen Dyer*
Karen C. Dyer

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system on this 14th day of September 2018.

*/s/ Karen Dyer*
Karen C. Dyer

21