**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

Case No. 6:17-cv-218-ORL-28-TBS

|  |  |  |
|---|---|---|
| FLORIDA ABOLITIONIST, INC.; JANE DOE #1; JANE DOE #2; and SUSAN ROE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -against- | ) ) | Local R. 3.01(h) – Dispositive Motion |
| BACKPAGE.COM LLC; CARL FERRER; MICHAEL LACEY; JAMES LARKIN; WEBSITE TECHNOLOGIES, LLC; IC HOLDINGS LLC; DARTMOOR HOLDINGS LLC; CAMARILLO HOLDINGS LLC; ATLANTISCHE BEDRIJVEN CV; KICKAPOO RIVER INVESTMENTS, LLC; AMSTEL RIVER HOLDINGS LLC; POSTFASTER LLC; CLASSIFIED SOLUTIONS LTD; MEDALIST HOLDINGS, INC; AD TECH BV; UGC TECH GROUP CV; POSTING SOLUTIONS LLC; AND CEREUS PROPERTIES LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEDALIST DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I.      PLAINTIFFS CANNOT SALVAGE THEIR STATE-LAW CLAIMS THAT
        ARE TIED TO ONLINE PUBLICATION OF ADS AT BACKPAGE.COM ............3

II.     PLAINTIFFS FAIL TO SHOW THE RICO CLAIMS ARE PLAUSIBLY
        PLED..............................................................................................................6

III.    DEFENSE OF THE SEX TRAFFICKING CLAIM BASED ON FOSTA
        FAILS .............................................................................................................9

IV.     "INFERRED" AGREEMENTS AND "GENERAL AWARENESS"
        CANNOT SAVE PLAINTIFFS' CONSPIRACY OR AIDING AND
        ABETTING CLAIMS .....................................................................................11

V.      THE INTENT, CAUSATION, AND OTHER FAILINGS OF THE
        OUTRAGE AND NEGLIGENCE CLAIMS CANNOT BE OVERCOME ..............13

CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aaron v. Durrani*,
2014 WL 996471 (S.D. Ohio Mar. 13, 2014) ....................................................2

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) ...................................................................3, 4

*Anza v. Ideal Steel Corp.*,
547 U.S. 451 (2006) ..........................................................................................8

*Aronson v. Advanced Cell Tech., Inc.*,
972 F. Supp. 2d 123 (D. Mass. 2013) ...............................................................2

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) ........................................................................................13

*Backpage.com, LLC v. Dart*,
807 F.3d 229 (7th Cir. 2015) ..........................................................................13

*Backpage.com, LLC v. Lynch*,
216 F. Supp. 3d 96 (D.D.C. 2016) ...............................................................9, 10

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262 (W.D. Wash. 2012) .......................................................13

*Baker v. Firestone Tire & Rubber Co.*,
793 F.2d 1196 (11th Cir. 1986) .........................................................................2

*Bilotta v. Citizens Info. Assocs.*,
2014 WL 12614499 (M.D. Fla. Dec. 20, 2014) ................................................4

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
36 F. Supp. 2d 560 (E.D.N.Y. 1999) ................................................................6

*Braun v. Soldier of Fortune Magazine, Inc.*,
968 F.2d 1110 (11th Cir. 1992) .......................................................................15

*Bright v. Firestone Tire & Rubber Co.*,
756 F.2d 19 (6th Cir. 1984) ..............................................................................2

*Brown v. Municipalities of 4th Jud. Cir.*,
2008 WL 2329418 (M.D. Fla. June 4, 2008) .................................................................11

*Burciaga v. Gold Club Tampa, Inc.*,
2016 WL 9526567 (M.D. Fla. Dec. 28, 2016) ..................................................................4

*Burgess v. Religious Tech. Ctr.*,
2014 WL 11281382 (N.D. Ga. Feb. 19, 2014) .................................................................9

*Chaset v. Fleer/Skybox Int'l*,
300 F.3d 1083 (9th Cir. 2002) ........................................................................................7

*Cook v. MillerCoors, LLC*,
829 F. Supp. 2d 1208 (M.D. Fla. 2011) ........................................................................15

*Corcel Corp. v. Ferguson Enters., Inc.*,
551 F. App'x 571 (11th Cir. 2014) ..................................................................................8

*Cox v. Adm'r U.S. Steel & Carnegie*,
17 F.3d 1386 (11th Cir. 1994) ..................................................................................12, 13

*Cubby, Inc. v. CompuServe, Inc.*,
776 F. Supp. 135 (S.D.N.Y. 1991) .................................................................................10

*Doe v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) .........................................................................................3, 4

*Edmondson v. Caliente Resorts, LLC*,
2016 WL 1756070 (M.D. Fla. May 3, 2016) .................................................................14

*Geller v. Von Hagens*,
2011 WL 2434217 (M.D. Fla. June 13, 2011) .............................................................5, 6

*Golden v. Complete Holdings, Inc.*,
818 F. Supp. 1495 (M.D. Fla. 1993) .............................................................................14

*Gritzke v. M.R.A. Holding, LLC*,
2002 WL 32107540 (N.D. Fla. Mar. 15, 2002) ..............................................................4

*Grogan v. Platt*,
835 F.2d 844 (11th Cir. 1988) ........................................................................................6

*Hamm v. Rhone-Poulenc Rorer Pharms.*,
187 F.3d 941 (8th Cir. 1999) .........................................................................................7

iii

*Harmon v. Orlando Fla. Sentinel*,
   1991 WL 128539 (M.D. Fla. Jan. 15, 1991).....................................................................11

*Hendricks v. Rambosk*,
   2011 WL 1429646 (M.D. Fla. Apr. 14, 2011)....................................................................4

*In re Sahlen & Assocs.*,
   773 F. Supp. 342 (S.D. Fla. 1991).............................................................................12, 13

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare*
   *Tr. Fund v. Philip Morris*,
   196 F.3d 818 (7th Cir. 1999)..............................................................................................7

*Italiano v. Jones Chems., Inc.*,
   1997 WL 118426 (M.D. Fla. Feb. 21, 1997).....................................................................14

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
   731 F.3d 556 (6th Cir. 2013)..............................................................................................6

*K.R. v. Backpage.com*,
   2017 WL 9471782 (M.D. Ala. June 26, 2017),
   *R&R adopted* 2017 WL 3578694 (Aug. 18, 2017).........................................................12

*Kimm v. Lee*,
   2005 WL 89386 (S.D.N.Y. Jan. 13, 2005).........................................................................7

*Kinsman v. Winston*,
   2015 WL 12839267 (M.D. Fla. Sept. 15, 2015)...........................................................5, 6

*Lawson v. Rubin*,
   2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018)...........................................................6, 7, 8

*Lee v. Illinois*,
   476 U.S. 530 (1986)...........................................................................................................3

*Levitan v. Patti*,
   2011 WL 1299947 (N.D. Fla. Feb. 8, 2011)......................................................................7

*Longbottom v. Swaby*,
   397 F.2d 45 (5th Cir. 1968)................................................................................................5

*Magnum v. Archdiocese of Phila.*,
   253 F. App'x 224 (3d Cir. 2007).......................................................................................7

*Maio v. Aetna*,
   221 F.3d 472 (3d Cir. 2000)...............................................................................................7

*McKally v. Perez*,
    87 F. Supp. 3d. 1310 (S.D. Fla. 2015) ...........................................................................14

*Mederos v. U.S.*,
    218 F.3d 1252 (11th Cir. 2000) .........................................................................................5

*Moore v. Dep't of Pub. Safety & Corrs.*,
    2018 WL 934617 (W.D. La. Feb. 15, 2018) .......................................................................5

*Murphy v. Cadillac Rubber & Plastics, Inc.*,
    946 F. Supp. 1108 (W.D.N.Y. 1996) ..................................................................................2

*National Org. for Women v. Scheidler*,
    510 U.S. 249 (1994) ...........................................................................................................7

*Pearce v. E.F. Hutton Grp., Inc.*,
    653 F. Supp. 810 (D.D.C. 1987) ........................................................................................2

*Perkins v. Silverstein*,
    939 F.2d 463 (7th Cir. 1991) .............................................................................................2

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
    2010 WL 1408391 (M.D. Fla. Apr. 6, 2010) ...........................................................1, 5, 12

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    214 F. Supp. 3d 808 (N.D. Cal. 2016) ...............................................................................6

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .........................................................................................................8-9

*Robinson v. Anheuser Bush, Inc.*,
    2000 WL 35432556 (M.D. Ala. Aug. 1, 2000) .................................................................15

*Roe v. Bernabi & Wachtel PLLC*,
    85 F. Supp. 3d 89 (D.D.C. 2015) .......................................................................................7

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989) ..............................................................................................2

*Rosemond v. U.S.*,
    572 U.S. 65 (2014) ...........................................................................................................13

*Sell v. Zions First Nation Bank*,
    2006 WL 322469 (D. Ariz. Feb. 9, 2006) ..........................................................................2

*Spence-Jones v. Rundle*,
  991 F. Supp. 2d 1221 (S.D. Fla. 2013) ............................................................................7

*U.S. v. Citigroup Smith Barney Acct. No. 600-00338*,
  2008 WL 2474642 (E.D.N.Y. June 19, 2008) ...................................................................2

*U.S. v. Encarnacion-Ruiz*,
  787 F.3d 581 (1st Cir. 2015) ...........................................................................................13

*U.S. v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...........................................................................2, 3

*U.S. v. Vera*,
  893 F.3d 689 (9th Cir. 2018) .............................................................................................3

*U.S. v. Williams*,
  553 U.S. 285 (2008) .........................................................................................................13

*University of Md. v. Peat, Marwick, Main & Co.*,
  996 F.2d 1534 (3d Cir. 1993) ............................................................................................8

*Valderrama v. Rousseau*,
  2012 WL 12925174 (S.D. Fla. Sept. 18, 2012) .........................................................11, 12

*Video Software Dealers Ass'n v. Webster*,
  968 F.2d 684 (8th Cir. 1992) ...........................................................................................13

*Williams v. Mohawk Indus., Inc.*,
  465 F.3d 1277 (11th Cir. 2006) .......................................................................................6, 8

*Zhang v. Baidu.com, Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y. 2014).................................................................................10

**State Cases**

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*,
  831 So. 2d 204 (Fla. 4th DCA 2002) ..............................................................................5, 6

*Demelus v. King Motor Co.*,
  24 So. 3d 759 (Fla. 4th DCA 2009) .................................................................................14

*Eastern Airlines, Inc. v. King*,
  557 So. 2d 576 (Fla. 1990)...............................................................................................14

*Fla. Dep't of Health & Rehab. Servs. v. S.A.P*,
  835 So. 2d 1091 (Fla. 2002).............................................................................................4

*Florida Fern Growers Ass'n v. Concerned Citizens of Putnam Cty.*,
    616 So. 2d 562 (Fla. 5th DCA 1993) .............................................................12

*Food Lion, Inc. v. Clifford*,
    629 So. 2d 201 (Fla. 5th DCA 1993) .............................................................14

*McCain v. Fla. Power Corp.*,
    593 So. 2d 500 (Fla. 1992)......................................................................14, 15

*People v. Ferrer*,
    No. 16FE024013, slip op. (Sup. Ct. Sac. Cty. Aug. 23, 2017) ...........................4

*U.S. v. Stevens*,
    994 So. 2d 1062 (Fla. 2008).....................................................................14, 15

*Winter Haven Hosp., Inc. v. Liles*,
    148 So. 3d 507 (Fla. 2d DCA 2014) ...............................................................14

**Constitutional Provisions**

U.S. Const., amend. I ................................................................................10, 12, 13

**Federal Statutes**

18 U.S.C. § 1591.........................................................................................................10

18 U.S.C. § 1591(a) ..................................................................................................10

18 U.S.C. § 1595.....................................................................................................9, 10

Fight Online Sex Trafficking Act, Pub. L. No. 115-164 (2018)........................9, 10

**State Statutes**

Fla. Stat. § 95.051(1)...................................................................................................5

Fla. Stat. § 540.08(1)...................................................................................................3

Fla. Stat. § 787.06 .....................................................................................................14

**Rules**

F.R.C.P. 10(c) ..............................................................................................................2

F.R.C.P. 15(c) ..............................................................................................................5

**Other Authorities**

Claire McCaskill, Minority Ranking Member PSI, *Our fight against sex*
   *trafficking website Backpage*, K.C. STAR, Feb. 14, 2017,
   http://www.kansascity.com/opinion/readers-opinion/guest-
   commentary/article132727529.html ...................................................................................2

*Human Trafficking Investigation: Hearing Before the Permanent Subcomm.*
   *on Investigations of the Senate Comm. On Homeland Security and*
   *Governmental Affairs*, 114th Cong. (2015) ....................................................................1, 2

*Woodhull Freedom Found. v. U.S.*,
   No. 1:18-cv-01552-RJL, ECF 21 (D.D.C. Aug. 6, 2018)...................................................10

Notwithstanding Plaintiffs' Opposition (ECF 144) ("Opp.") to the Motion to Dismiss (ECF 113) ("Mot."), they still fail to plead claims on which relief can be granted.[1]  To begin with, tweaking the First Amended Complaint ("FAC") to "enumerate[] paragraphs associated with each count" does not "address the Court's concern," Opp. 3, about "shotgun" pleading. *See* Mot. 4-7 & § I (quoting ECF 85 at 9-10).  The Motion acknowledged this minor fix, *e.g.*, Mot. 14, but Plaintiffs fail to address the Court's core concern about "lump[ing] Defendants together."  The FAC retains groupings from the prior Complaint in some counts, while others still name "all defendants."  *See id*. 8-10 (citing dozens of paragraphs in FAC).  If anything, added defendants and claims exacerbate the matter, and the FAC should be dismissed for that reason alone.  *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391, at *21 (M.D. Fla. Apr. 6, 2010) (dismissing repled claim where court gave "leave to replead so that Plaintiff could remedy the lumping together of Defendants, yet … Plaintiff [did] so again").

Improper reliance on matters outside the FAC compounds the pleading deficiencies. The Opposition turns repeatedly to a staff report of the Senate Permanent Subcommittee on Investigations ("*PSI Report*"), *e.g.*, Opp. 5, 8, 9, 22, 23—even though it is not part of the FAC[2]—in trying to prop up counts that do not "contain sufficient factual matter," to state a claim.  Mot. 7.  This attempt at incorporation is improper.  As shown, materials like the *PSI Report* are not "written instruments" that can be part of a pleading, Reply in Supp. of Mot. to Dism. (ECF 58), at 3-4, as they do not "evidenc[e] legal rights or duties or giv[e] formal expression to a legal act or agreement, such as a deed, will, bond, lease, [or] insurance

---

[1]  The Court granted the Unopposed Motion (ECF 151) for leave to file a Reply (ECF 150) of Medalist Holdings, Inc. ("Medalist"), Camarillo Holdings LLC ("Camarillo"), Cereus Properties LLC ("Cereus"), Michael Lacey, and James Larkin ("Medalist Defendants").  *See also* Mot. 1 n.1 (citing ECF 101-103).

[2]  It was attached in originally opposing dismissal (ECF 52-1), but not to the FAC or the Opposition here.

policy[.]"[3]  Congressional reports are excludable as "heated conclusions of a politically moti-vated hearing," *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986),[4] and courts do not generally consider whether they can be incorporated into or in sup-port of pleadings—but rather, whether they can be admitted into evidence *at all*.[5]  And that is apart from the most critical problem here:  that the *PSI Report* says *nothing* about the Doe Plaintiffs, or Florida Abolitionist, nor is it claimed it says anything about the latter's clients.

The same holds for materials that *are* attached to the FAC—though not incorpor-ated—*i.e.*, the federal indictment, *id*. Ex. A, and Ferrer's plea, *id*. Ex. B, on which Plaintiffs also rely heavily.  Opp. 2, 5-6, 7-8, 8-10, 17, 23.  Indictments are not legal instruments under Rule 10(c), but rather "simply a statement of [] Government[] allegations."  *U.S. v. Citigroup Smith Barney Acct. No. 600-00338*, 2008 WL 2474642, at *1 (E.D.N.Y. June 19, 2008).[6] Pleadings from other cases—including, specifically, indictments—are not properly incorpor-ated into a complaint that initiates a separate proceeding.  *Aaron v. Durrani*, 2014 WL 996471, at *4 (S.D. Ohio Mar. 13, 2014).  Similarly, pleas like Ferrer's, insofar as they are testimonial rather than, *e.g.*, a resolution of legal rights, are "functionally no different than [] affidavits" that are not written instruments that can be incorporated.  *Int'l Longshoremen*,

---

[3]  *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996).  *See Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3d Cir. 1989); *Sell v. Zions First Nation Bank*, 2006 WL 322469, at *5 (D. Ariz. Feb. 9, 2006) (court-appointed receiver's report "expanding" on pleadings "not a 'written instrument' [under] Rule 10(c)"); *Perkins v. Silverstein*, 939 F.2d 463, 467 n.2 (7th Cir. 1991) (same as to articles and commentary).

[4]  *See* Claire McCaskill, Minority Ranking Member PSI, *Our fight against sex trafficking website Backpage*, K.C. STAR, Feb. 14, 2017, http://www.kansascity.com/opinion/readers-opinion/guest-commentary/arti-cle132727529.html (expressing "hope" "our investigation will give [] cases against Backpage … ammunition").

[5]  *E.g.*, *Pearce v. E.F. Hutton Grp., Inc.*, 653 F. Supp. 810, 813-16 (D.D.C. 1987) ("the obviously political nature" makes it "questionable whether any report by a … subcommittee … could be admitted … against a private party"); *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22-23 (6th Cir. 1984) (*per curiam*).

[6]  *See also U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 462-64 (E.D.N.Y. 2007); *id*. at 465 (collecting cases); *Aronson v. Advanced Cell Tech., Inc.*, 972 F. Supp. 2d 123, 136-37 (D. Mass. 2013).

518 F. Supp. 2d at 466.[7]  Reliance on these materials to paper over pleading failures must be rejected, as must the Plaintiffs' defenses of each their claims, for the reasons that follow.

## I.   PLAINTIFFS CANNOT SALVAGE THEIR STATE-LAW CLAIMS THAT ARE TIED TO ONLINE PUBLICATION OF ADS AT BACKPAGE.COM

Plaintiffs concede their right-of-publicity claims must plausibly allege publication of the Doe Plaintiffs' images for a "commercial purpose" to advertise defendants' own service(s), Opp. 7-8 (citing Fla. Stat. § 540.08(1); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006)), but fail to cite any such allegation. *See id.* 7.  Rather the FAC alleges that third-party traffickers used the Does' photos in the ads.  FAC ¶ 144; *see also id.* ¶ 151. Plaintiffs try to sidestep this shortcoming by alleging Backpage made money from the ads. Opp. 7 (citing FAC Ex. B (Ferrer plea)).  But that is no different from what the First Circuit rejected in *Doe v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), on a similar claim, because "there [was] no basis for an inference that Backpage appropriated the commercial value of the appellants' images," even if it "profit[s] from the sale of ad[s]." *Id.* at 27.[8]

Plaintiffs never address how photos that users post are not ads for Backpage.com, but rather form the content of the site itself.  *Compare Almeida*, 456 F.3d at 1326.  Even to the extent Plaintiffs allege Backpage reposted ads across websites it controlled (and they do not allege it for ads of Does #1 or #2), Opp. 7, the postings are still the sites' content, not ads for

---

[7]  The Hyer plea, Opp. Ex. A, has the further problem of having not even been attached to the FAC (as it post-dated it), and thus cannot be a part thereof, though Plaintiffs cite it as if it were.  *E.g.*, Opp. 2, 17-18.  Using the Hyer plea to defend a motion to dismiss by the Medalist Defendants is particularly inappropriate because, while it mentions other entities and individuals, it does not mention any Medalist Defendant.  This is on top of the fact that (as is equally true of Ferrer's plea) the Supreme Court has held alleged accomplices' confessions and arrest statements are "presumptively unreliable," "presumptively suspect," and "less credible than ordinary hearsay." *Lee v. Illinois*, 476 U.S. 530, 541 (1986).  *See also*, *e.g.*, *U.S. v. Vera*, 893 F.3d 689, 692-93 (9th Cir. 2018) ("[A] plea agreement may adopt facts that the government wants to hear in exchange for some benefit ....").

[8]  Plaintiffs note this relied on "Massachusetts, not Florida, law," Opp. 8, but that is irrelevant.  As explained— and as Plaintiffs do not dispute—the law in *Doe* is materially identical to Florida law.  *See* Mot. 11-12 n.15.

3

Backpage's services.  *See People v. Ferrer*, No. 16FE024013, slip op. 15-16 (Sup. Ct. Sac. Cty. Aug. 23, 2017) (discussing content "on Backpage … displayed on [] affiliated websites" in connection with First Circuit's rejection of *Doe* misappropriation claims).  That practical reality is not overcome by inapposite cases involving, for example, use of a plaintiff's image or likeness to advertise the defendant's own product or service, including a case the Eleventh Circuit distinguished in *Almeida*.  *See* 456 F.3d at 1325-26 (distinguishing *Gritzke v. M.R.A. Holding, LLC*, 2002 WL 32107540 (N.D. Fla. Mar. 15, 2002) (cited Opp. 7)).[9]

Plaintiffs also concede they did not file their defamation claims within Florida's two-year statute of limitations, *see* Mot. at 12-13, and do not dispute it runs from first publication of allegedly defamatory matter, not subsequent discovery.  Opp. 8.  Plaintiffs instead invoke common law "equitable estoppel," on grounds Backpage allegedly "conceal[ed]" their role in moderating, editing, and allegedly authoring ads, *id*. 8-9, but that applies only "where one, by word, act or conduct, *willfully caused* another to believe in … a certain state of things, and thereby *induces* him to act … or to alter his own previous condition to his injury."  *Fla. Dep't of Health & Rehab. Servs. v. S.A.P*, 835 So. 2d 1091, 1097 (Fla. 2002) (emphasis added).  The FAC contains no such allegations:  it is devoid of any claims that any defendant "willfully caused" Does #1 or #2 to believe anything, much less "induce[d]" them to refrain from bringing suit.  Moreover, under the FAC's shotgun approach, Plaintiffs never connect any plausible allegation of "concealment" to actions of any Medalist Defendant.  *See, e.g*., FAC ¶¶ 69, 95.  Courts routinely reject such attempts to circumvent the statute of limitation.  *E.g*., *Hendricks v. Rambosk*, 2011 WL 1429646, at *7 (M.D. Fla. Apr. 14, 2011).

---

[9]  *See also* Opp. 7 n.5 (citing *Burciaga v. Gold Club Tampa, Inc*., 2016 WL 9526567, at *4 (M.D. Fla. Dec. 28, 2016); *Bilotta v. Citizens Info. Assocs.*, 2014 WL 12614499, at *1 (M.D. Fla. Dec. 20, 2014)).

Nor may Plaintiffs rely on equitable tolling, Opp. 9-10, because, in Florida, Section 95.051(1) "list[s] events that toll … limitations, and equitable tolling is not among them." *Pierson*, 2010 WL 1408391, at *15. "Relation back" under F.R.C.P. 15(c), invoked only for Doe #2, Opp. 10, fares no better: "amendments … relate back to the date of the original pleading" only if "the claim [] in the amended pleading arises out of the same conduct, trans-action, or occurrence [as] in the original pleading." *Mederos v. U.S.*, 218 F.3d 1252, 1254 (11th Cir. 2000)). That is not the case here. The alleged defamation of Doe #2 was a separate publication, and related to events years apart from those involving Doe #1.[10]

Finally, Plaintiffs cannot avoid how Florida's single action rule bars their claims predicated on the same allegations as their defamation count, by citing FAC allegations that add color to the claims,[11] but do not differentiate them from defamation, contrary to Plaintiffs' argument. Opp. 10-11. Plaintiffs cite *Geller v. Von Hagens*, 2011 WL 2434217, at *4 (M.D. Fla. June 13, 2011), to argue the single action rule bars counts that are "simply a restatement of the defamation claim," Opp. 10, but, at bottom, all claims identified in note 11, *supra*, rest on the same publishing acts that allegedly constituted defamation, triggering the single action rule. *See, e.g.*, *Kinsman v. Winston*, 2015 WL 12839267, at *5 (M.D. Fla. Sept. 15, 2015) (rule applies if "all … claims arise from the same defamatory publication"); *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).[12]

---

[10] *Compare* FAC ¶¶ 143-45 (Doe #1 ad posted 2013), *with id.* ¶¶ 150-51 (Doe #2 ad posted 2016). *See Moore v. Dep't of Pub. Safety & Corrs.*, 2018 WL 934617, at *5-6 (W.D. La. Feb. 15, 2018) ("relation back will not apply to … add[] a new party") (citing *Longbottom v. Swaby*, 397 F.2d 45 (5th Cir. 1968) (cited Opp. 10)).

[11] These include the extent to which their claims for false light invasion of privacy, outrage, right of publicity, conspiracy, and negligence are re-packaged versions of their defamation claims. *See* Mot. 13-14

[12] Claims need not even rest on identical facts for the single action rule to apply. Rather, "[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged

5

Regardless of any divergent legal nuances these claims may involve, they rest on the "same publication[s]" as the defamation claims, *Callaway*, 831 So. 2d at 208, and at a minimum, rest on "analogous underlying facts." *Kinsman*, 2015 WL 12839267, at *5. The Plaintiffs' argument recharacterizes the *claims*, but not the *conduct* on which they are based. *See* Opp. 10-11. Even the *Geller* case, which they cite, identifies the underlying conduct as the critical determinant under the single action rule. *See* 2011 WL 2434217, at *4 (cited Opp. 10).

## II.    PLAINTIFFS FAIL TO SHOW THE RICO CLAIMS ARE PLAUSIBLY PLED

Plaintiffs seek to overcome lack of RICO-cognizable injury by having the FAC "liberally construed," Opp. 18, but as the case they quote makes clear (in the next sentence), this Court still "must determine whether the plaintiffs have a 'business or property' interest … injured under RICO." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1286 (11th Cir. 2006) (cited Opp. 18). Florida Abolitionist argues it "suffered unique injuries not derivative of [those] it serves" in the form of "increased expenses on responding to sex trafficking victims" resulting in "inability to serve its [] clientele," but not only is this circular, it is legally incorrect. Opp. 18-19. It is axiomatic that such harms are personal injury under RICO and do not qualify as loss to a business or property interest, as recognized even in case law Plaintiffs themselves cite.[13] This is not injury to a business or property interest, even if

---

harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication[.]" *Kinsman*, 2015 WL 12839267, at *5 (citation and internal quotation marks omitted). Such is the case here.

[13] *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 821 (N.D. Cal. 2016) (cited Opp. 19). *See also, e.g., Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565-66 (6th Cir. 2013) (*en banc*); *Lawson v. Rubin*, 2018 WL 2012869, at *9 (E.D.N.Y. Apr. 29, 2018). Plaintiffs still argue otherwise, Opp. 18-19, but the other case they cite expressly rejected contrary Eleventh Circuit law—which is binding here—that derivative personal injury claims do not qualify. *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999) (discussing *Grogan v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988)). And other courts have declined to apply *Philip Morris* as "a thinly disguised refusal to accept

viewed as lost opportunities to serve other/additional clients or goals.[14]  In *Magnum v. Arch-diocese of Phila.*, 253 F. App'x 224, 228-29 (3d Cir. 2007), for example, the Third Circuit affirmed dismissal where victims of sex abuse and of a coordinated cover-up lost opportunities to file tort claims.  *See also Lawson*, 2018 WL 2012869, at *9 (lost business opportunities not RICO injury).  The cases Plaintiffs cite on this issue only reinforce the point.[15]

Does #1 and #2 meanwhile now claim RICO injury—though the FAC does not allege it—from misuse of their images for commercial purposes, Opp. 19, but as above, the law is to the contrary.[16]  This is clear in that harms alleged on these claims, "mental suffering, shame, and humiliation," and "physical and psychological injuries," FAC ¶¶ 216-18, are on their face personal, not business or property injuries under RICO.[17]  Plaintiffs even recognize their federal RICO claims must be dismissed for lack of business or property harm, insofar as they seek leave to amend to replead under Florida's RICO statute instead.  Opp. 19 n.14.

Authority cited by Plaintiffs also undermines their argument that they adequately pled RICO causation.  As the "'central question'" on proximate causation "is whether the alleged

---

and follow [its own] circuit's holding" that personal injuries cannot be RICO loss.  *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris*, 196 F.3d 818, 827 (7th Cir. 1999).

[14]  *See, e.g.*, FAC ¶¶ 157, 164 (alleging that, while Florida Abolitionists' mission is "creating preventative and restorative solutions to end human trafficking," the harm to its clientele tied to Backpage.com caused it to focus more on restorative than preventative measures); *id.* ¶ 168 (alleging that, because Florida Abolitionist provides full services to child victims, its ability to offer "comprehensive case management" has "decreased").

[15]  *See National Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (cited Opp. 18) (loss to business interest where clinic patients sought services elsewhere, unlike here); *Maio v. Aetna*, 221 F.3d 472, 488 (3d Cir. 2000) (causing reduced quality of care was improperly pled unless care was "'worth less' than … paid for").

[16]  Although Plaintiffs misleadingly cite various paragraphs in the FAC, *see* Opp. 19 (citing FAC ¶¶ 13-14, 130), none of them refer to RICO injuries based on intellectual property rights.

[17]  *See, e.g.*, *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1254 (S.D. Fla. 2013); *Levitan v. Patti*, 2011 WL 1299947, at *18-19 (N.D. Fla. Feb. 8, 2011 (defamation, related claims not RICO injuries); *Kimm v. Lee*, 2005 WL 89386, at *4-5 & n.7 (S.D.N.Y. Jan. 13, 2005) (collecting cases); *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.3d 941, 954 (8th Cir. 1999).  *Cf. Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1086-87 (9th Cir. 2002).  *See also Roe v. Bernabi & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 (D.D.C. 2015) (partial quote at Opp. 19) ("misuse of intellectual property can suffice" but "Plaintiff [must] show … how she would have exploited" it).

violation led directly to the plaintiff's injuries,'" *Mohawk*, 465 F.3d at 1287 (quoting *Anza v. Ideal Steel Corp.*, 547 U.S. 451, 461 (2006)), the Court at the pleadings stage must scrutinize the FAC for such a direct relation.  *Id*.  While the proximate cause need not be the sole cause, there must be "some direct relation" between the injury and conduct alleged.  *Id*. at 1288. The tortious or injurious conduct must be "a substantial factor in the sequence of responsible causation," *Corcel Corp. v. Ferguson Enters., Inc*., 551 F. App'x 571, 576 (11th Cir. 2014) (cited Opp. 20), but at the point Medalist Defendants became involved, Does #1 and #2 (and presumably any other Florida Abolitionist client) already had been trafficked (and all ensuing abuse was committed by third parties with whom Medalist Defendants never had contact).[18] Alleged editing of ads and being paid for them cannot be a substantial factor in this harm.[19]

The Opposition also has no substantive response to the fact that Medalist Defendants exerted no control over the RICO enterprise, Mot. § II.F.3, besides simply arguing they controlled companies they owned.  Opp. 22.  In addition to ignoring that two Medalist Defendants (Medalist, Camarillo) are not named in the RICO counts, this misses the point, which is that "[s]imply because one provides … services that ultimately benefit the enterprise does not mean that one becomes liable under RICO."  *University of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993)).  It also is contrary to *Reves v. Ernst & Young*, 507

---

[18] FAC ¶¶ 7-8, 58-70, 71-79, 86-110.  Plaintiffs allege Medalist Defendants' *general* knowledge of such harms, but not specific knowledge.  *See* Opp. 20 (alleging "Defendants knew sex traffickers sold women and girls *like* Doe #1 and #2" on Backpage.com) (emphasis added).  *See also infra* 10-11, 12-13.  In any case, knowledge is not interchangeable with proximate causation.

[19] Plaintiffs downplay *Lawson*, 2018 WL 2012869, at *9 (cited Mot. 22-24), as out-of-jurisdiction authority, Opp. 21, without even trying to address how, in that case, the plaintiffs alleged a conspiracy to enable sex traffickers but, even with defendants' direct contact with the victims, the court ruled that proximate causation could not exist.  *See Lawson*, 2018 WL 2012869, at *10.  Plaintiffs only argue that the Medalist Defendants, who are not alleged to have had contact with (or knowledge of) Plaintiffs, are more culpable than the *Lawson* defendants, without citing any authority (or logic) for how that can be so.  Opp. 21.

U.S. 170, 186 (1993), which held an accounting firm did not participate in the RICO defendant's management or operation, even though its accountants knowingly overvalued assets.  Plaintiffs do not explain how Medalist Defendants' "control" rose to even that level.

Finally, regarding pleading particularity applicable to RICO claims, Mot. § II.F.4, Plaintiffs incorrectly argue that none of the predicate offenses alleged "sound[] in fraud." Opp. 22.  On a purely facial level, the FAC's list of RICO predicate offenses uses the term "fraud" multiple times, FAC ¶ 140, and the FAC repeatedly alleges the enterprise's purpose was to "conceal" evidence of "criminality" from authorities, *id.* ¶¶ 5, 11, 69-70, 95, 172.d, 178, 179, 204, which also sounds in fraud.  *Burgess v. Religious Tech. Ctr.*, 2014 WL 11281382, at *6 (N.D. Ga. Feb. 19, 2014) ("alleg[ing] a unified course of fraudulent conduct and rel[ying] entirely" on it "sounds in fraud") (citation, internal quotation marks omitted). Plaintiffs cite the general rule that the money laundering predicate does not sound in fraud, Opp. 23, but ignore cases explaining that when, as here, it is alleged to occur *through* fraud, FAC ¶¶ 138, 141, 184, 195, heightened pleading is required.  *See* Mot. 25 & n.25.

## III.   DEFENSE OF THE SEX TRAFFICKING CLAIM BASED ON FOSTA FAILS

Invocation of the Fight Online Sex Trafficking Act ("FOSTA"), Opp. § V, cannot save the Doe Plaintiffs' sex trafficking claims from failure to plead specific knowledge as is required statutorily, constitutionally, and under, *inter alia*, *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96 (D.D.C. 2016).  *See* Mot. § II.E.  In quoting 18 U.S.C. § 1595, Plaintiffs admit that any section of it under which they may proceed requires knowledge.  *See* Opp. 15 & n.12.  They then concede alleging only general knowledge, *id*. 15-17 & n.13, but argue it is "more than sufficient" because FOSTA relaxed the *mens rea* standard.  *Id*. 16-17 & n.13.

But the government's constitutional defense of FOSTA insisted that "[b]oth before and after … FOSTA a violation of section 1591 requires specific knowledge of sex trafficking."[20]  The Department of Justice also stressed that there can be no suggestion that, with FOSTA, "Congress … 'loosened' the applicable mens rea requirement in 18 U.S.C. § 1591," and that the House Report "does not say anything about 'loosening' the mens rea element."  Gov't *Woodhull* Reply at 14 n.12.  Per DOJ, even after FOSTA, Section 1591 requires "knowing the person is a minor or … subject[ed] to force, fraud, or coercion and … caused to engage in [] commercial sex."  *Id*. at 19 (citing 18 U.S.C. § 1591(a); *Lynch*, 216 F. Supp. 3d at 104)).[21]

But culling presumably their strongest claims about what "Defendants were aware" of, Opp. 16, the most Plaintiffs say is "Backpage was used to facilitate human trafficking," it did not "prevent[ that] conduct," and it "assisted traffickers" generally.  *Id*. 16-17.  They also cite allegations that Doe #1's traffickers previously used Backpage to traffic others, that Doe #2 was a minor—though not that Backpage knew this at the time she was trafficked—and that it "did not remove or report ads featuring trafficked children like" her.  *Id*. 17.  None of

---

[20]  Defs. Reply in Supp. of Mot. to Dism., *Woodhull Freedom Found. v. U.S.*, No. 1:18-cv-01552-RJL, ECF 21, at 24 (D.D.C. Aug. 6, 2018) ("Gov't *Woodhull* Reply").  *See id*. at 7 n.4 ("The Archive cannot [] fear criminal **or civil** liability because it has no *specific* knowledge about … any … material it obtains") (emphases added).  Plaintiffs, for their part, glide right past what is *constitutionally* required to impose liability for expressive activity, which they brush off elsewhere by suggesting that cases holding specific knowledge of each element of an offense is required apply only in the criminal context.  Opp. 25 (citing Mot. 32 (citing Supreme Court precedent)).  However, the First Amendment applies the same way regardless of whether an attempt to impose liability for expressive activity is criminal or civil.  *E.g.*, *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 442 (S.D.N.Y. 2014) (citing cases); *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 139-40 (S.D.N.Y. 1991) (discussing constitutional scienter requirements in context of online third-party content).  Though Plaintiffs fault doing so, *see* Opp. 13, it is not inconsistent to argue here that the First Amendment requires specific knowledge while also suing to have FOSTA invalidated insofar as it is vague in suggesting general knowledge can suffice.

[21]  Plaintiffs discount the specific knowledge requirement *Lynch* articulated on grounds that it is a pre-FOSTA case, Opp. 15-16 & n.13, and by claiming it involved only "**criminal** liability" under Section 1591 and "did not address Section 1595, which provides … for **civil** liability."  *Id*. 15.  But that is nonsensical.  As the Opposition states in the immediately preceding paragraph, Section 1595 civil claims require a violation of Section 1591.  *Id*. *See also* Gov't *Woodhull* Reply at 14 ("any conduct subject to a civil action under 18 U.S.C. § 1595 must be illegal under 18 U.S.C. § 1591, and specifically, must involve the knowing advertisement of sex trafficking").

this alleges specific knowledge of the circumstances of either Doe's exposure to the "force, fraud or coercion" that is key to this claim, *see*, *e.g.*, FAC ¶¶ 176-77, 180, knowledge of which is required by the sex trafficking statute, and by any constitutional application of it.[22]

Nor does reliance on Ferrer's plea help.  *See* Opp. 17-18; FAC Ex. B.  Apart from the procedural impropriety and lack of reliability, *see supra* 2-3, for all the *strum und drang* of the indictment and related pleas, even the government did not charge sex trafficking—rather, it alleged facilitation of prostitution.  *See* FAC Exs. A-B, Opp. Ex. A.  The Ferrer plea thus says nothing about the specific knowledge required to bring federal sex trafficking claims.

## IV.   "INFERRED" AGREEMENTS AND "GENERAL AWARENESS" CANNOT SAVE PLAINTIFFS' CONSPIRACY OR AIDING AND ABETTING CLAIMS

Plaintiffs brush aside how their conspiracy claims involve traffickers and Medalist Defendants without alleging communication, let alone express "agreement," *see* Mot. 17, by arguing that having to allege as much would impose "heightened pleading," and that any required agreement can be "inferred."  Opp. 14.  Agreement is the core of conspiracy, *see*, *e.g.*, *Valderrama v. Rousseau*, 2012 WL 12925174 (S.D. Fla. Sept. 18, 2012) (cited Opp. 14), and stating facts plausibly alleging it is not "heightened pleading," but the essential "meeting of the minds" on the conspiracy's conduct and purpose.  *See*, *e.g.*, *Harmon v. Orlando Fla. Sentinel*, 1991 WL 128539, at *3 (M.D. Fla. Jan. 15, 1991).  It is required because "the linch-pin of conspiracy is agreement, which presupposes communication."  *Brown v. Municipalities of 4th Jud. Cir.*, 2008 WL 2329418, at *3 (M.D. Fla. June 4, 2008) (citation omitted).

Citing *Rousseau*, Plaintiffs claim "the FAC provides ample detail to infer an implied agreement."  Opp. 14.  But the *Rousseau* defendants worked to violate the plaintiff's rights in

---

[22] Even as to general knowledge that *is* alleged, the FAC ties it only to "Backpage," not Medalist Defendants.

each other's presence, through concurrent conduct in concerted action.  2012 WL 12925174, at *7-8.  It thus says nothing about "inferred" conspiracies between those who are never alleged to have come in contact with, or even aware of, one another.[23]  Plaintiffs cite *Pierson* to argue courts allow conspiracy claims to rest on inferences to "expand liability," Opp. 14 (citing 2010 WL 1408391, at *23), but even so, *Pierson* explains, specific acts and agreements of each defendant are necessary to state a viable claim.  2010 WL 1408391, at *23-24.

Doe #1 defends her claim for aiding and abetting involuntary servitude by similarly arguing (like on sex trafficking) that liability can attach even absent specific knowledge of the particular servitude or victim.  Opp. § VII.  Her claim rests on "general awareness" of uses and operations of Backpage.com, and generic hosting, filtering and moderating—but nothing specific to Doe #1, FAC ¶¶ 202-04; *see* Opp. 24 (citing same and many other FAC paragraphs lacking facts about Doe #1)—and thus fails for lack of the specific knowledge required to impose liability for the expressive activity of operating an ad-hosting website. *See* Mot. § II.G.  Plaintiffs cite *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994), and *In re Sahlen & Assocs.*, 773 F. Supp. 342, 360 (S.D. Fla. 1991), to argue aiding and abetting defendants need only be "generally aware" of their "role as part of an overall improper activity," Opp. 23, while at the same time reciting—but ignoring—those cases' requirements for "knowing[] and substantial[] assist[ance]" and "actual awareness."

---

[23] *Florida Fern Growers Ass'n v. Concerned Citizens of Putnam Cty.*, 616 So. 2d 562 (Fla. 5th DCA 1993) (cited Opp. 14), similarly does not relieve Plaintiffs from alleging some means of conspirators "agreeing" with each other, but rather simply rejects heightened pleading requirements of a "'sham' test" where concerted conduct involves First Amendment petitioning activity.  *Id*. at 565-66.  Plaintiffs, meanwhile, misrepresent *K.R. v. Backpage.com*, 2017 WL 9471782 (M.D. Ala. June 26, 2017), *R&R adopted* 2017 WL 3578694 (Aug. 18, 2017), in suggesting it held allegations of "Backpage's practices and procedures" "sufficiently supported claims" of conspiracy.  Opp. 14 n.10.  Those decisions did not involve the sufficiency of claims, but rather only removal and remand (which mooted a pending motion to dismiss), and the complaint pled no conspiracy claim.

*Id.* 24 (quoting same).[24]  *Cox* and *Sahlen* do not involve expressive activity, and are thus non-responsive to the constitutional scienter requirements that apply.  *Cf. Encarnacion-Ruiz*, 787 F.3d at 595 (citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002)); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) (laws imposing liability "for dissemination of unprotected speech must contain a knowledge requirement").[25]  Plaintiffs cannot avoid this simply because they seek civil rather than criminal liability.  *See supra* note 20.  And in any case, as previously shown, the FAC also fails to allege the specific intent required for aiding and abetting, *see* Mot. 28-29 (citing cases), and Plaintiffs do not address this at all, leaving an independent ground for dismissing this claim.

## V.   THE INTENT, CAUSATION, AND OTHER FAILINGS OF THE OUTRAGE AND NEGLIGENCE CLAIMS CANNOT BE OVERCOME

Plaintiffs admit their outrage claim does not allege intent, *see* Mot. 14-15, and instead relies on "reckless disregard" of a "probability" of emotional distress.  Opp. 11.  They ask the Court to draw a "logical inference" that, because Medalist Defendants "knew or should have known [] emotional distress would likely result" from their actions, there was a "high degree

---

[24]  As the Supreme Court recently clarified, aiders and abettors must have advance knowledge of all elements constituting the offense, even those not involving expressive activity.  *E.g.*, *U.S. v. Encarnacion-Ruiz*, 787 F.3d 581, 584, 588 (1st Cir. 2015) (applying *Rosemond v. U.S.*, 572 U.S. 65, 76-78 (2014)).

[25]  Plaintiffs are wrong that "the First Amendment is not implicated" because Doe #1 was a victim of "illegal activity" that she alleges Backpage.com promoted.  Opp. 25 (citing *U.S. v. Williams*, 553 U.S. 285, 297 (2008)).  *Williams* did hold "[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection."  553 U.S. at 297.  But that case did not involve liability for publishing third-party speech, but rather criminalization of child obscenity or pornography—and even there, the Court upheld the statute at issue only after noting it is limited to that unprotected speech, *id*. at 293, *and* finding it has requirements that a defendant knows of and intends to promote, distribute or solicit the obscenity or child pornography at issue.  *Id.* at 294-96.  *Compare*, *e.g.*, *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281 (W.D. Wash. 2012) ("third-party publication of offers to engage in illegal transactions does not fall within 'well-defined and narrowly limited classes of speech'" that "fall outside [the] First Amendment.").  Publishing third-party speech is presumptively protected by the First Amendment, until the contrary is found as to specific content.  *E.g.*, *Free Speech Coal.*, 535 U.S. at 255.  "[N]ot all advertisements for sex are [] for illegal sex," *Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015), and the First Amendment requires proving a defendant had specific knowledge of the illegal nature of a particular ad.  *E.g.*, *McKenna*, 881 F. Supp. 2d at 1278.

of probability" sex trafficking would cause Does #1 and #2 emotional distress. *Id.* But there is no explanation how this is possible without alleging specific outrageous acts—which Plaintiffs fail to identify—by the Medalist Defendants that supposedly created this "high degree of probability," let alone without plausible facts supporting causation. *See Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1498 (M.D. Fla. 1993). The cases Plaintiffs cite as supporting their position actually *rejected* outrage claims.[26] This failure is significant because, without identifying supposedly outrageous acts by Medalist Defendants, Plaintiffs do not show (or plead) conduct so extreme "as to go beyond all possible bounds of decency, … atrocious, and utterly intolerable in a civilized community." *Golden* at 1499; *Liles* at 515.

On the negligence claim, Plaintiffs cannot defeat "the general rule [] that a party has no legal duty to prevent [] misconduct of third persons," Mot. 15, by arguing liability still lies if a defendant's affirmative acts create an unreasonable risk of harm such that third-party criminal conduct is foreseeable.[27] This duty is not limitless, and "it is not enough that a risk merely exists or that a particular risk is foreseeable; rather, the defendant's conduct must *create* or *control* the risk." *Demelus v. King Motor Co.*, 24 So. 3d 759, 761 (Fla. 4th DCA 2009). The FAC is devoid of allegations on this point. A party generally has no legal duty to

---

[26] *See Food Lion, Inc. v. Clifford*, 629 So. 2d 201 (Fla. 5th DCA 1993) (outrage judgment reversed); *Eastern Airlines, Inc. v. King*, 557 So. 2d 576 (Fla. 1990) (outrage count failed to state claim); *Winter Haven Hosp., Inc. v. Liles*, 148 So. 3d 507 (Fla. 2d DCA 2014) (reversing jury verdict on outrage) (all cited Opp. 11).

[27] Opp. 12, 13 (citing *U.S. v. Stevens*, 994 So. 2d 1062, 1069 (Fla. 2008); *McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992)). Plaintiffs attempt to cure their failure to identify "Florida's anti-trafficking criminal statutes" claimed to create a duty, *see* Mot. 15; Opp. 12 (both citing FAC ¶ 226), by newly citing Fla. Stat. § 787.06. Opp. 12. However, briefing cannot substitute for what must be in the complaint. *See McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015); *Italiano v. Jones Chems., Inc.*, 1997 WL 118426, at *4 (M.D. Fla. Feb. 21, 1997) (dismissal for failure to specifically identify basis for negligence *per se* based on statutory violation). In any event, while alleged violations of statutory law may be "evidence of negligence," Plaintiffs "must establish, other than by claiming a violation of a statute, the existence of a common law duty." *Edmondson v. Caliente Resorts, LLC*, 2016 WL 1756070, at *4 (M.D. Fla. May 3, 2016).

14

control a third-party's conduct to prevent that person from harming others, and "foreseeable zone of risk" analysis under, *e.g.*, *Stevens* and *McCain*, is inapplicable absent a "defendant's exclusive knowledge of the risk" and an "inability of potential victims to protect themselves." *Cook v. MillerCoors*, *LLC*, 829 F. Supp. 2d 1208, 1217 (M.D. Fla. 2011).

Finally, on the causation failings in both the outrage and negligence claims, the only authority Plaintiffs cite is *Braun v. Soldier of Fortune Magazine, Inc*., 968 F.2d 1110 (11th Cir. 1992), which found a print magazine publisher liable under Georgia law for an ad that led to a murder for hire, but is inapposite for several reasons. The Eleventh Circuit affirmed liability only after concluding the district court properly insisted the jury find the specific print ad "on its face would have alerted a reasonably prudent publisher to the clearly identifiable unreasonable risk of harm." *Id.* at 1115. Here, however, Plaintiffs neither allege details in the FAC regarding the content of any ad (or offer such details in the Opposition), nor do they allege any ad, on its face, would have alerted Medalist Defendants to a clearly identifiable risk. As other courts have recognized, "*Braun* does not stand for the proposition that an ad[] which creates a harm always creates a duty," *Robinson v. Anheuser Bush, Inc*., 2000 WL 35432556, at *4 (M.D. Ala. Aug. 1, 2000), and, tellingly, Plaintiffs do not respond at all to the special causation problems posed in the online context. *See* Mot. 16-17.

## CONCLUSION

For the reasons provided above and in Defendants' Motion, this Court should dismiss the Complaint in its entirety.[28]

---

[28] Plaintiffs resist dismissal of their claims for loss of consortium and injunctive relief. Opp. §§ VIII-IX. However, they do not dispute that, as goes Doe #2's claims, so goes Roe's loss of consortium claim. *See* Mot. § II.H. Nor do they deny that the utility of any claim for preliminary injunction has passed, *id*. § II.I, or argue that *any* injunctive relief can issue if their claims are dismissed on the merits.

Dated:  September 18, 2018

Respectfully submitted,


_____/s/ Robert Corn-Revere_____
Robert Corn-Revere *(pro hac vice)*
*Lead Trial Counsel*
Ronald G. London *(pro hac vice)*
**Davis Wright Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, DC  20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
       ronnielondon@dwt.com

Lawrence G. Walters
Florida Bar No.: 0776599
**Walters Law Group**
195 W. Pine Avenue
Longwood, FL  32750-4104
Telephone: (407) 975-9150
Facsimile: (407) 975-6151
Email: Larry@FirstAmendment.com
Email:  Paralegal@FirstAmendment.com

Attorneys for Defendants Michael Lacey,
James Larkin, Medalist Holdings, Inc.,
Camarillo Holdings, LLC, and Cereus
Properties, LLC

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed through the CM/ECF system on September 18, 2018, which will serve a copy by email on the all counsel of record.

_____/s/ Robert Corn-Revere_____
Robert Corn-Revere

16